**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNIVERSITY AT BUFFALO YOUNG AMERICANS FOR FREEDOM**; **JUSTIN HILL**; **JACOB CASSIDY**; and **AMELIA SLUSARZ**, | **CASE NO.: 1:23-CV-00480-LJV** |
| *Plaintiffs,* | **FIRST AMENDED VERIFIED COMPLAINT** |
| v. | |
| **UNIVERSITY AT BUFFALO STUDENT ASSOCIATION INC.**; **BRIAN HAMLUK** in his official capacity as the UB Vice President for Student Life; **ELIZABETH LIDANO** in her official capacity as the UB Interim Dean of Students; and **PHYLLIS FLORO** in her Official Capacity as the UB Director of Student Engagement, | |
| *Defendants.* | |

## INTRODUCTION

1.       It has been well-established since at least 1972 that affiliation with a national organization is "an impermissible basis upon which to deny First Amendment rights" of association to student organizations at public universities. *Healy v. James*, 408 U.S. 169, 186 (1972).

2.       But this spring, University at Buffalo Staff and the UB Student Association acting under authority from the University did just that: Defendants derecognized Young Americans for Freedom because they are a chapter of a national organization—Young America's Foundation.

3.       Associating together to engage in expression is fundamental to the rights of free speech and assembly protected by the First Amendment. After all, "[i]f

the government were free to restrict individuals' ability to join together and speak, it could essentially silence views that the First Amendment is intended to protect." *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 68 (2006).

4. Unfortunately, instead of protecting an open and free marketplace of ideas, Defendants attempted to close the market for students who wish or need to affiliate with others in order to speak and/or amplify their message.

5. Defendants' National Affiliation Ban violated Young Americans for Freedom and its members' rights under the First and Fourteenth Amendments to the United States Constitution.

6. After Plaintiffs filed a motion for preliminary injunction, the Student Association revoked the National Affiliation Ban on July 3, 2023.

7. However, the Student Association replaced it with a requirement that student organization leaders certify that they will give up their rights in order to be a recognized student organization.

8. Specifically, leaders have to give up their, and their organizations', rights to file a lawsuit to secure their legal rights, to exist as a legal entity under state law, to have financial accounts as an organization, and to enter into agreements with other individuals or organizations (the Legal Status Ban).

9. The Constitution requires that comprehensive viewpoint neutral criteria be in place to protect against this type of abuse of power.

10.     But instead of exercising its duty, the University has granted the Student Association free reign to implement unconstitutional policies like the National Affiliation Ban and Legal Status Ban.

11.     These policies violate the First and Fourteenth Amendment rights to expressive association, free speech, and assembly.

12.     Plaintiffs thus seek injunctive and declaratory relief and nominal damages to vindicate and safeguard these fundamental rights.

## JURISDICTION AND VENUE

13.     This civil rights action raises federal questions under the First and Fourteenth Amendments of United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

15.     This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–2202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

## PLAINTIFFS

17.     Plaintiff University at Buffalo Young Americans for Freedom (UB Young Americans for Freedom) is an expressive student organization at the State

University of New York at Buffalo (UB) and an unincorporated association of students at UB.

18.    For the last two years UB Young Americans for Freedom has maintained over 100 members and it holds weekly meetings on campus regularly attended by approximately 20 students.

19.    UB Young Americans for Freedom has existed on the UB campus as a registered student organization since 2017 and is a chapter of the national non-profit organization, Young America's Foundation.

20.    As a chapter of Young America's Foundation, UB Young Americans for Freedom's purpose is to provide an environment for the students of UB to learn about United States history, the United States Constitution, individual freedom, a strong national defense, free enterprise, and traditional American values through student activities, on-campus lectures by local and national speakers, and service efforts for local US military and veterans.

21.    UB Young Americans for Freedom fulfills its purpose primarily by being an expressive organization. It engages in a wide variety of expressive activities, including posting flyers and signs, hosting tables with information, inviting speakers to campus, and talking with fellow students.

22.    When engaging in these expressive activities, UB Young Americans for Freedom and its members discuss political, religious, social, cultural, and moral issues and ideas.

23.    Plaintiff UB Young Americans for Freedom brings this action on behalf of itself and its members by and through its president, Justin Hill.

24.    Plaintiff Justin Hill is a rising senior student at UB and the president of UB Young Americans for Freedom.

25.    Plaintiff Hill brings this action on behalf of himself as a student and in his official capacity as the president of UB Young Americans for Freedom.

26.    Plaintiff Jacob Cassidy is a rising sophomore student at UB and a member of the UB Young Americans for Freedom executive board.

27.    Plaintiff Amelia Slusarz is a rising sophomore student at UB and a member of the UB Young Americans for Freedom executive board.

**DEFENDANTS**

28.    Defendant University at Buffalo Student Association Inc. (SA or Student Association) is a non-profit membership corporation under the laws of the State of New York.

29.    The Student Association's membership is comprised of all UB undergraduate students (as determined by the University).

30.    Students are automatically considered members of the Student Association regardless of whether the students wish to participate or not.

31.    The Student Association is a "recognizing agent" of the University and is authorized to act as the University's agent to recognize or derecognize student organizations.

32.     The Student Association is funded by a mandatory Student Activity Fee collected by the University from all undergraduate students and which the University distributes as directed by the Student Association.

33.     Defendant Brian Hamluk is the UB Vice President for Student Life.

34.     Defendant Hamluk is Defendant Lidano's supervisor.

35.     Defendant Hamluk is sued in his official capacity.

36.     Defendant Elizabeth Lidano is the UB Interim Dean of Students.

37.     Defendant Lidano is Defendant Floro's supervisor.

38.     Defendant Lidano is sued in her official capacity.

39.     Defendant Phyllis Floro is the UB Director of Student Engagement.

40.     Defendant Floro is sued in her official capacity.

41.     On information and belief, Defendants Hamluk, Lidano, and Floro, are responsible for the approval, rejection, amendment, repeal, and enforcement of the UB Recognition Policy and related practices challenged in this lawsuit.

42.     On information and belief, Defendants Hamluk, Lidano, and Floro, have the authority to revise the UB Recognition Policy and related practices challenged in this lawsuit and to implement regulations prohibiting the Student Association from refusing to recognize Plaintiffs' association or from derecognizing or penalizing it for unconstitutional reasons such as the Legal Status Ban.

43.     If it were not for the policies implemented by Defendants Hamluk, Lidano, and Floro, the Student Association would not have the authority to

derecognize UB Young Americans for Freedom, or to implement the Legal Status Ban.

**FACTUAL BACKGROUND**

**UB Young Americans for Freedom**

44.     From its inception in 1960, Young Americans for Freedom (later Young America's Foundation) has provided a forum for American high school and college students to come together to cultivate and grow their shared ideas and commitment to individual freedom, limited government, a strong national defense, free enterprise, and traditional values.

45.     Young America's Foundation accomplishes this in part through chartering chapters on campuses across the country, which are designated as Young Americans for Freedom.

46.     In or around 2017, students at UB formed their own Young Americans for Freedom Chapter on campus.

47.     Since its formation, UB Young Americans for Freedom has actively promoted debates on important cultural, political, and moral topics on campus.

48.     In the last few years alone, it has hosted Lt. Col. (Ret.) Allen West to discuss whether America is systemically racist, and popular cultural commentator Michael Knowles to discuss cultural responses to gender ideology.

49.     UB Young Americans for Freedom annually hosts the campus's "9/11 Never Forget Project."

50.     Last year, it hosted an event to collect school supplies to donate to those in need, and it regularly sets up a table on campus and in the Student Union

to promote these events as well as provide information on traditional American values.

51.     During the school year, UB Young Americans for Freedom hosts weekly meetings where the members discuss political, social, and moral issues.

**The Student Organization Forum and its Benefits**

52.     UB set up a forum for student organizations to engage in expression and regulates that forum through recognizing (or not) certain student organizations.

53.     This forum is operated by the Office of Student Life, which is overseen by Defendants Hamluk and Lidano, and the Office of Student Engagement which is overseen by Defendant Floro.

54.     On information and belief, Defendants Hamluk, Lidano, and Floro implemented the "Student Club and Organization University-Wide Recognition Policy" (the UB Recognition Policy). The UB Recognition Policy is attached as Exhibit 1.

55.     The UB Recognition Policy governs the benefits that come with recognition.

56.     The benefits include:

(A)     "Acknowledgement of the group as an affiliated organization of the University. Use of the University's name to indicate location of organization."

(B)     "Access to funding from the Mandatory Student Activity Fee (if recognized by a student government)."

(C)     "Utilization of UBLinked – the University's Interactive Student Organization web service."

(D)     "Ability to reserve/rent space on campus for events and meetings."

(E)     "Access to vendor and lobby tables in the Student Union."

(F)     "Privilege to apply for temporary office space in the Student Union."

(G)     "Privilege to conduct fundraising activities on campus."

(H)     "Eligibility to access a University at Buffalo Foundation Account for official organization business (only for organizations not recognized by student government)."

(I)     "Eligibility to participate in all membership recruitment opportunities offered through Student Engagement, as well as other campus resources and involvement activities."

(J)     "Access [to] Student Engagement resources including advising, leadership and diversity training programs, event planning, problem solving and referrals."

57.     Without recognition, student organizations do not have access to these resources.

**The University's Student Organization Recognition Policies**

58.     The UB Recognition Policy requires that a student organization receive recognition from a "University Recognizing Agent" to become a recognized student organization and access the benefits granted to such organizations.

59.   A University Recognizing Agent is "[a]ny student government, formal university department, or approved affiliated entity that will assist with the annual registration process and act as a liaison for appropriate university policies."

60.   The UB Recognition Policy authorizes Defendant Student Association to be an official University Recognizing Agent.

61.   Although university departments and other entities can act as a University Recognizing Agent, only student organizations that are recognized by the UB Student Association are eligible to access the Mandatory Student Activity Fees distributed to student organizations by the UB Student Association.

62.   The UB Recognition Policy includes some requirements for recognizing student organizations but leaves it up to each University Recognizing Agent to implement its own recognizing process and additional criteria.

63.   The UB Recognition Policy requires that "[a]ll Recognized Student Organizations must abide by the Rules and Regulations of their University Recognizing Agent."

64.   The UB Recognition Policy is implemented and enforced against Plaintiffs under the authority of the office of Student Engagement and Defendants Hamluk, Lidano, and Floro.

**The Student Association's Student Organization Recognition Policies and Legal Status Ban**

65.   Under the authority granted by the UB Recognition Policy and Defendants Hamluk, Lidano, and Floro, Defendant Student Association publishes additional club recognition policies.

**A. The Student Association attempts to de-recognize Young Americans for Freedom by banning some groups (including YAF, but not others) from affiliating with national organizations.**

66.     On March 27, 2023, Defendant Student Association revised the policies that govern club recognition (the SA Recognition Policy).

67.     This policy revision (the National Affiliation Ban) prohibited Young Americans for Freedom from being recognized because it is a chapter of a national organization—Young America's Foundation.

68.     It allowed other student organizations that addressed similar content to YAF but from different viewpoints to maintain affiliation with national organizations, but "automatically" derecognized YAF.

69.     Plaintiffs filed their Verified Complaint on June 1, 2023, primarily challenging the unbridled discretion that UB Defendants grant the Student Association and the Student Association's abuse of that discretion to discriminate against and derecognize YAF through the National Affiliation Ban.

70.     The National Affiliation Ban policy is attached as Exhibit 2.

71.     On June 26, 2023, Plaintiffs filed a motion for preliminary injunction against those policies. Dkt. 15.

**B. The Student Association repeals the National Affiliation Ban in response to Plaintiffs' Motion for Preliminary Injunction and implements a certification requirement for student organization leaders.**

72.     After Plaintiffs filed a motion for preliminary injunction, on July 3, 2023, Defendant Student Association via its executive committee revoked the

National Affiliation Ban, stating that it was "hereby repealed and deemed never to have taken effect." SA Executive Committee Resolution – 2022-2023 - #7.

73.     The prior policy was "replaced with a different requirement," stating that "commencing 9/11/2023, prior to taking any act as an SA club officer— including but not limited to the use of SA club funds, facilities, or other resources— a student officer of an SA club must sign the attached document, entitled 'Acknowledgement of Club Officer Responsibilities.'"

74.     The new acknowledgement requires officers to "certify" that they will comply with the Legal Status Ban including that, "No SA club may be a separate legal entity from SA; SA-recognized clubs may not have any accounts or financial activities outside of SA," and "SA club officers may not sign contracts or otherwise enter into agreement on behalf of any SA club."

75.     A true and correct copy of the minutes incorporating this resolution is attached as Exhibit 3.

76.     The Legal Status Ban is also codified in the Student Association's bylaws which state that,

> the terms "club" and "student organization" shall be interchangeable. A club is a group of Members of SA acting as a group of Members; each club is part of SA. No club shall be a separate legal entity from SA. Recognized clubs may not have any accounts or financial activities outside of SA. Recognized clubs may not enter into contracts, take legal actions, commence litigation or undertake legal obligations; only SA itself may enter into contracts, take legal actions, commence litigation and/or undertake legal obligations.

77.     A true and correct copy of the Student Association Bylaws is attached as Exhibit 4.

78.     The newly revised "New Club Recognition Policy" states that "[a]ny agreement for a Student Association club to be recognized as a chapter of any outside organization is subject to review pursuant to SA contract policy(ies)."

79.     A true and correct copy of the updated "New Club Recognition Policy" (the current SA Recognition Policy) as amended on July 3, 2023, is attached as Exhibit 5.

**Defendants' Policies Harm Plaintiffs**

80.     No University at Buffalo policy includes a comprehensive list of objective criteria for recognizing student organizations.

81.     No Student Association policy includes a comprehensive list of objective criteria for recognizing student organizations.

82.     Both the UB Recognition Policy and the SA Recognition Policy give discretion to University Officials and Student Association officials to deny student organizations recognition based on the content and viewpoint of the organization's speech, including through the contract review process.

83.     The Student Association has used the discretion it has been granted to discriminate against Plaintiffs by passing (then repealing) the National Affiliation Ban.

84.     The Student Association has used the discretion it has been granted to pass the Legal Status Ban which burdens Plaintiffs' legal association status, independent financial status, and right to contract.

### A. Defendants' policies, in contradiction of state law, purport to strip Plaintiffs, individually and corporately, from their right to associate.

85.     Each plaintiff wishes to associate together with all the rights and obligations of an unincorporated association.

86.     Because YAF has a president and treasurer it is defined by state law as an unincorporated association. N.Y. Gen. Ass'ns Law § 13 ("Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section.").

87.     State law provides that unincorporated associations may maintain legal actions to vindicate their rights by and through the association's president or treasurer. N.Y. Gen. Ass'ns Law § 12.

88.     Yet, the Student Association purports to declare that in order to access the benefits of student recognition, YAF "shall [not] be a separate legal entity from SA," and "may not enter into contracts, take legal actions, commence litigation or undertake legal obligations."

89.     Thus, SA purports to declare that YAF does not have the legal status that state law declares it has.

90.     Further, this lawsuit itself, to vindicate constitutional rights, is in violation of SA policy.

91.     YAF is subject to penalties, including derecognition, simply for bringing this legal action, through its president, to vindicate its rights.

**B. Defendants' policies strip Plaintiffs, individually and corporately from their right to contract and hold funds for expressive events.**

92.     In order to effectively carry out their expressive mission, Plaintiffs need to enter into contracts and agreements, raise funds, and expend funds.

93.     For example, in order to exist as a chapter of Young America's Foundation, YAF must agree to abide by the chapter requirements of Young America's Foundation.

94.     In order to sponsor a speaking event, contracts are normally required with the speaker and sometimes with other vendors.

95.     Speakers and events also cost money which YAF needs to raise and spend on its expressive activities.

96.     The Student Association's policy prohibits YAF or individual plaintiffs as executive officers of YAF from entering into these agreements or contracts.

97.     The Student Association's policy prohibits YAF or individual plaintiffs as executive officers of YAF from holding any financial assets for the organization.

98.     Instead, in order to enter into an agreement to host a speaking event (or any other event), YAF officers must submit proposed contracts to the Student Association.

99.     The Student Association has discretion to sign, not sign, modify, or delay the contract or agreement until it is too late.

100.    Likewise, all financial transactions must be approved by the Student Association.

101.     The process for asking SA to sign contracts on a Student

Organization's behalf is listed on the SA's website.

102.     SA's website states that the contract review "process generally takes 2-

3 weeks."

103.     There are no written criteria listed which SA uses to approve, to not

approve, to modify, or to delay, a contract.

104.     The "Contract Timeline" listed includes:

(A)     "Initial submission via this form."

(B)     "Initial review by SA Staff."

(C)     "Markups and/or changes made (5-7 business days)."

(D)     "Submitted to SA's lawyer for review if necessary (minimum of

one week)."

(E)     "Submitted to Campus Life for review if over $2,500 (may take

up to two weeks)."

(F)     "A contract may be executed on behalf of SA (including for any

SA club) ONLY if such contract is executed by the SA Treasurer and

either the SA President or SA Vice President. No one else may sign

any contract on behalf of SA or any SA club. SA E-Board approval is

not guaranteed. * All given times frames are estimates. No turnaround

time is guaranteed."

105.     A copy of the SA's "Contracts Overview" website is attached as Exhibit

6.

106.   Notably absent are any comprehensive and viewpoint neutral guidelines for approval, an appeal process, recording process, or guarantee of timeline (which is expressly disclaimed).

107.   The Student Association has used this discretion to delay contract approval in order to burden Plaintiffs' expressive events in the past.

108.   For example, in order to host Michael Knowles as a speaker in the Spring of 2023, a speaker agreement was required.

109.   YAF planned to host the event on March 9, 2023.

110.   YAF's president submitted a contract to the Student Association for review on January 12, 2023.

111.   After not hearing any response for over three weeks, YAF's president followed up via email on February 4, 2023.

112.   Receiving no reply, on February 6, 2023, YAF's president went to the SA Vice President's office.

113.   The SA Vice President told YAF's president that he had violated SA's policy by signing the speaker agreement before submitting it to them and that SA would not sign the speaker agreement.

114.   Instead, over three weeks after it submitted the initial agreement for review YAF was told it had to use a generic "artist contract" form the SA had used previously.

115.   YAF's president attempted to negotiate some changes in terms but they were all denied.

116.   On February 14, 2023, YAF's president submitted the SA's model artist contract to SA for approval without any substantive changes for approval.

117.   This contract was substantively identical to an agreement that SA approved for a previous speaker—the only relevant difference being that the speaker, this time, was Michael Knowles.

118.   SA refused to approve or sign the artist agreement for the Michael Knowles event until March 6, 2023 (almost two months after the original contract was submitted, and only 3 days before the event was scheduled to take place).

119.   SA's refusal to sign the contract created substantial logistical difficulties and burdens for planning the event.

120.   Each and all of the acts alleged in this complaint were done by Defendants, or their agents or persons under their control, under the color and pretense of state law, statutes, ordinances, regulations, customs, usages, or policies of the State of New York.

## CLAIMS

121.   Defendants' policies as described herein violate the First and Fourteenth Amendments and cause irreparable harm to plaintiffs.

122.   Plaintiffs have no adequate or speedy remedy at law to correct the deprivation of their rights by Defendants.

123.   Defendants' actions and policies, as set forth above, do not serve any rational, legitimate, or compelling state interest and are not narrowly tailored to serve any such interests.

124.     Because of Defendants' actions, Plaintiff UB Young Americans for Freedom and its members, including Plaintiffs Hill, Cassidy, and Slusarz have suffered, and continue to suffer, economic injury and irreparable harm, and are entitled to an award of nominal damages and equitable relief.

125.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their rights under the United States Constitution and to an injunction against Defendants' policy and actions.

126.     Additionally, Plaintiffs are entitled to nominal damages and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

**Claim One:**
**Violation of Plaintiffs' First Amendment Right to Expressive Association;**
**42 U.S.C. § 1983**

127.     Plaintiffs repeat each of the allegations in paragraphs 1–126.

128.     Implicit in the free exercise, speech, and assembly rights the First Amendment guarantees is a corresponding right to associate with others in the pursuit of a wide variety of religious, political, social, economic, educational, and cultural ends.

129.     Plaintiffs engage in expression and expressive activities as a group.

130.     But the Student Association used the discretion given it by the UB Defendants to condition recognition, and access to benefits of recognition, on compliance with its Legal Status Ban.

131.     Under the Legal Status Ban, in order to access recognition benefits, Plaintiffs must give up their right to associate and exist as an unincorporated

association, to enter into agreements, or even to take legal action to secure their rights.

132.   The Legal Status Ban is ultra vires under New York Law.

133.   As enforced, the Legal Status Ban violates the constitutional right to expressive association.

134.   In addition, the UB Defendants implemented policies that give unbridled discretion to the SA to discriminate in recognizing student organizations, including through the Legal Status Ban and through the SA Recognition Policies.

135.   SA used that discretion to discriminate against YAF.

136.   To further their expression and expressive activities, Plaintiffs have affiliated with Young America's Foundation for six years.

137.   Without associating with Young America's Foundation, the amount and effectiveness of Plaintiffs' speech will be diminished and they cannot exist as UB Young Americans for Freedom.

138.   Because Plaintiffs affiliate with Young America's Foundation, Defendants policies stated that they were "automatically" derecognized by the UB Student Association.

139.   This derecognition was because of Defendant UB Student Association's National Affiliation Ban amendment to its SA Recognition Policy.

140.   This derecognition and exclusion was authorized by the UB Recognition Policy, enacted, overseen and enforced by Defendants Hamluk, Lidano, and Floro.

141.    Because UB Student Association designated UB Young Americans for Freedom as a "Special Interest" club while those organizations designated as "Academic," "Engineering," or "Sports" related were allowed to be chapters of national organizations, Defendants' exclusion was based on the content of Plaintiffs' speech and expressive association.

142.    Because UB Young Americans for Freedom promotes educational content on similar topics as other organizations that are allowed to affiliate with national organizations, but does so from a conservative viewpoint, Defendants' exclusion was based on the viewpoint of Plaintiffs' speech and expressive association.

143.    Defendants' Recognition Policies and Legal Status Ban violate Plaintiffs' right to Expressive Association under the First Amendment to the United States Constitution, both facially and as-applied.

### Claim Two:
### Violation of Plaintiffs' First Amendment Right to Freedom of Speech by Engaging in Content and Viewpoint Discrimination
### 42 U.S.C. § 1983

144.    Plaintiffs repeat each of the allegations in paragraphs 1–126.

145.    When a university opens a forum for student organization recognition, it cannot discriminate against groups because of the group's content without demonstrating that the discrimination is narrowly tailored to achieve a sufficiently compelling government interest. *See Widmar v. Vincent*, 454 U.S. 263, 270 (1981).

146.    Neither can it discriminate against a group because of its viewpoint.

147.    Unbridled discretion to discriminate is a type of viewpoint discrimination.

148.    Defendants have opened a forum for student organizations to engage in expression and thus must ensure it is operated in a viewpoint-neutral manner without any unconstitutional conditions.

### Defendants Legal Status Ban and Recognition Policies are Viewpoint Discriminatory

149.    The UB Defendants delegate to the SA the ability to implement rules and regulations for student organizations to access the benefits of recognition.

150.    This includes delegating to the Student Association the authority to recognize student organizations and control access to student activity fees.

151.    The Student Association has used the discretion granted it to discriminate against Plaintiffs' viewpoint directly, and to implement additional layers of viewpoint-discriminatory rules and regulations on student organizations, including the SA Recognition Policies and the Legal Status Ban.

*The Recognition Policies*

152.    The Student Association used its unbridled discretion (granted to it by the UB Recognition Policy) to discriminate against Plaintiffs' viewpoints by passing the National Affiliation Ban and by designating Plaintiffs to the disfavored "Special Interest" category while other organizations that address similar content were designated to groups that are permitted to affiliate with national organizations.

153.    The First Amendment requires UB Defendants to implement comprehensive neutral criteria to ensure that the Student Association (or any other designee) recognizes organizations in a viewpoint neutral manner.

154.    UB Defendants have not implemented such criteria.

155.    Thus, UB Defendants' policies violate the First Amendment.

156.    Further, the Student Association has implemented its revised "New Club Recognition Policy" that also fails to include comprehensive viewpoint neutral criteria.

157.    The New Club Recognition Policy does not require that a club that meets the listed criteria be recognized.

158.    The New Club Recognition Policy allows Student Association executive committee members to deny recognition to a club based on its viewpoint.

159.    The New Club Recognition Policy allows Student Association executive committee members to deny a club's national-chapter agreement for any reason.

*The Legal Status Ban*

160.    The Student Association has used the discretion granted it by the UB Defendants to pass the Legal Status Ban.

161.    The Legal Status Ban unconstitutionally conditions access to the speech forum by requiring plaintiffs to give up their right to associate as a legal entity, or petition for legal redress in the courts.

162.   The Legal Status Ban unconstitutionally conditions access to the speech forum by requiring plaintiffs to give up their right to enter into agreements or contracts with other individuals or organizations.

163.   The Legal Status Ban unconstitutionally conditions access to the speech forum by granting unbridled discretion to the Student Association Executive Board to approve, deny, or delay the signing of contracts that are essential to Plaintiffs' expression.

164.   The Student Association used its discretion to automatically derecognize YAF because of its affiliation with Young America's Foundation.

165.   The Student Association used its discretion to burden YAF's speech by delaying approval of contracts necessary to its expression.

166.   Defendants' Recognition Policies and Legal Status Ban violate Plaintiffs' right to Free Speech under the First Amendment to the United States Constitution, both facially and as-applied.

## Claim Three:
## Violation of Plaintiffs' First Amendment Right to Assembly
### 42 U.S.C. § 1983

167.   Plaintiffs repeat each of the allegations in paragraphs 1–126.

168.   The First Amendment protects the right to peaceable assembly.

169.   This right includes the right to assemble with other groups or individuals without government interference.

170.   This right includes the right to associate with other groups or individuals without government interference.

171.    This right includes the right to petition for redress of grievances, including in the court system.

172.    When the government refuses to recognize a student group it is a prior restraint that requires the government to meet a "heavy burden" to justify its exclusion. *See Healy v. James*, 408 U.S. 169, 184 (1972).

173.    Defendants' National Affiliation Ban violates the right to assembly by prohibiting YAF from affiliating with Young America's Foundation.

174.    Defendants' Legal Status Ban violates the right to assembly by prohibiting YAF from petitioning for redress of grievances, or entering into agreements as an assemblage of persons.

175.    Defendants cannot meet their heavy burden to justify the prior restraint on Plaintiffs' right to assembly.

176.    Defendants violated the First Amendment right of assembly by refusing to recognize Plaintiffs' student organization solely because it affiliates with Young America's Foundation, and violates the First Amendment right of assembly by implementing and enforcing its Legal Status Ban.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgement against Defendants and provide Plaintiffs with the following relief:

a.    A declaratory judgment that the UB Recognition Policies, to the extent they fail to include comprehensive viewpoint neutral

recognition criteria, violate Plaintiffs' rights under the First and Fourteenth Amendments facially and as-applied;

b.  A declaratory judgment that the SA Recognition Policies, to the extent they fail to include comprehensive viewpoint neutral recognition criteria violate Plaintiffs' rights under the First and Fourteenth Amendments facially and as-applied to ban YAF from affiliating with Young America's Foundation;

c.  A declaratory judgment that the Legal Status Ban violates Plaintiffs' rights under the First and Fourteenth Amendments.

d.  A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing Defendants' Student Organization Recognition Policies without implementing comprehensive viewpoint neutral criteria;

e.  A preliminary and permanent injunction prohibiting Defendants from denying recognition to, or penalizing Plaintiffs in any way for, existing as a legal entity, filing a lawsuit to vindicate their rights, having financial accounts, or entering into agreements to the extent permitted by state law;

f.  Nominal damages against the Student Association Defendant for the violation of Plaintiffs' constitutional rights;

g.     Plaintiffs' reasonable attorneys' fees, costs, and other costs and

disbursements in this action pursuant to 42 U.S.C. § 1988; and

h.     All other further relief to which Plaintiffs may be entitled.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted this 26th day of July, 2023.

Denis Kitchen
DENIS A. KITCHEN, P.C.
8899 Main Street
Williamsville, NY 14221
(716) 631-5661
denis@kitchenlaw.com

s/ *Jonathan Caleb Dalton*
Jonathan Caleb Dalton*
VA Bar No. 83790
Tyson Charles Langhofer*
VA Bar No. 95204
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
tlanghofer@ADFlegal.org
cdalton@ADFlegal.org

*Attorneys for Plaintiffs*

***Admitted Pro Hac Vice**

## DECLARATION UNDER PENALTY OF PERJURY

I, Justin Hill, a citizen of the United States and a resident of the State of Georgia, have read the forgoing complaint and hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 26 day of July , 2023, at Washington, D.C. .

Justin Hill

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2023, I electronically filed the foregoing using the CM/ECF system, which automatically sends an electronic notification with this filing to the following attorneys of record:

> Ryan K. Cummings
> Aaron M. Saykin
> Hodgson Russ, LLP
> The Guaranty Building
> 140 Pearl Street
> Suite 100
> Buffalo, NY 14202
> 716-848-1665
> 716-849-0349 (fax)
> rcumming@hodgsonruss.com
> asaykin@hodgsonruss.com
>
> *Counsel for Defendant*
> University at Buffalo Student Association Inc.

I will serve the same on the following defendants via first class mail, postage prepaid:

> Brian Hamluk
> University at Buffalo
> 520 Capen Hall
> 160 Founders Plaza
> Buffalo, NY 14260
>
> Elizabeth Lidano
> University at Buffalo
> 315 Student Union
> 50 Lee Road
> Buffalo, NY 14260
>
> Phyllis Floro
> University at Buffalo
> 150 Student Union
> 50 Lee Road
> Buffalo, NY 14260

Dated: July 26, 2023                    s/ *Jonathan Caleb Dalton*
                                        _____

                                        Jonathan Caleb Dalton

                                        *Attorney for Plaintiffs*