# EXHIBIT 1

**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNIVERSITY AT BUFFALO YOUNG AMERICANS FOR FREEDOM; JUSTIN HILL; JACOB CASSIDY**; and **AMELIA SLUSARZ**, | |
| *Plaintiffs*, | |
| v. | **CASE NO.: 1:23-cv-00480** |
| **UNIVERSITY AT BUFFALO STUDENT ASSOCIATION, INC.; BRIAN HAMLUK** in his official capacity as the University at Buffalo Vice President for Student Life; **TOMÁS AGUIRRE** in his official capacity as the University at Buffalo Dean of Students; and **PHYLLIS FLORO** in her Official Capacity as the University at Buffalo Director of Student Engagement, | **THE HONORABLE LAWRENCE J. VILARDO,** **Jury Trial Demanded** |
| *Defendants*. | |

Deleted: ¶

Deleted: FIRST AMENDED VERIFIED COMPLAINT

Deleted: B

Deleted: ELIZABETH LIDANO

Deleted: her

Deleted: Interim

**SECOND AMENDED VERIFIED COMPLAINT**

**INTRODUCTION**

1. For over five decades, it has been clearly established that the Constitution protects the rights of university students to speak freely on campus and to associate with like-minded individuals to advance shared views.

2. It is also clearly established that government officials violate the Constitution if they enact policies designed to target and restrict the expression of views that they or others disfavor.

3. It has been well-established since at least 1972 that affiliation with a national organization is "an impermissible basis upon which to deny First Amendment rights" of association to student organizations at public universities. *Healy v. James*, 408 U.S. 169, 186 (1972).

4. After all, associating together to engage in expression is fundamental to the rights of free speech and assembly protected by the First Amendment. "If the government were free to restrict individuals' ability to join together and speak, it

could essentially silence views that the First Amendment is intended to protect." *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 68 (2006).

5.      But ever since this spring, officials at the University at Buffalo and the University of Buffalo Student Association (acting under authority from the University) have ignored and violated these long-established constitutional principles.

6.      Unfortunately, instead of protecting an open and free marketplace of ideas, Defendants attempted to close the market for students who wish or need to affiliate with others to speak or to amplify their message.

7.      Shortly after Plaintiffs hosted a lecture featuring cultural commentator Michael Knowles, Defendants adopted a national affiliation ban that applied only to select student organizations, including UB Young Americans for Freedom.

8.      After Plaintiffs filed this lawsuit and a motion for preliminary injunction, Defendants revoked this national affiliation ban on July 3, 2023.

9.      But Defendants did not abandon their goal of restricting expression that they or others disliked. Rather, they merely decided to restrict it in a different way.

10.      Under the new policy (*i.e.*, reinvigorated enforcement of a legal status ban), the Student Association forces student groups to choose between being recognized on campus as a student organization and retaining their legal existence, separate identity as an entity, and even their civil rights.

11.      Specifically, leaders have to give up their, and their organizations', rights to file a lawsuit to secure their legal rights, to exist as a separate legal entity under state law, to have financial accounts as an organization, to own property as an organization, and to enter into agreements with other individuals or organizations.

12.      Under this legal status ban, a student organization ceases to exist as its own organization once it is recognized. At that point, it becomes part of the Student Association. Any events it holds and any views it expresses are not its own; they are the Student Association's. For the group has no separate existence.

2

13. This legal status ban also compels student organizations to associate with other organizations with whom they would not voluntarily associate and that may hold diametrically opposite views. Indeed, Defendants do not merely force such groups to associate; they merge them all into one and the same organization: the Student Association. And in doing so, they restrict and compel expression.

14. The Constitution requires that comprehensive viewpoint neutral criteria be in place to protect against this type of abuse of power.

15. But instead of exercising its duty, the University has granted the Student Association free rein to implement unconstitutional policies like the national affiliation ban and legal status ban.

16. These policies violate the First and Fourteenth Amendment rights to expressive association, free speech, and assembly, as well as the unconstitutional conditions doctrine.

17. Plaintiffs thus seek injunctive and declaratory relief and nominal damages to vindicate and safeguard these fundamental rights.

**JURISDICTION & VENUE**

18. This civil rights action raises federal questions under the First and Fourteenth Amendments of United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

19. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

20. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–2202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

21. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

3

Deleted: g

Deleted: AND

**PLAINTIFFS**

22.    Plaintiff University at Buffalo Young Americans for Freedom (UB Young Americans for Freedom) is an expressive student organization at the State University of New York at Buffalo ("University" or "UB") and an unincorporated association of students at UB.

23.    For the last two years, UB Young Americans for Freedom has maintained over 100 members, and it currently has 22 members. It holds weekly meetings on campus regularly attended by approximately 20 students.

24.    UB Young Americans for Freedom has existed on the UB campus as a registered student organization since 2017 and is a chapter of the national non-profit organization, Young America's Foundation.

25.    As a chapter of Young America's Foundation, UB Young Americans for Freedom's purpose is to provide an environment for the students of UB to learn about United States history, the United States Constitution, individual freedom, a strong national defense, free enterprise, and traditional American values through student activities, on-campus lectures by local and national speakers, and service efforts for local US military and veterans.

26.    UB Young Americans for Freedom fulfills its purpose primarily by being an expressive organization. It engages in a wide variety of expressive activities, including posting flyers and signs, hosting tables with information, inviting speakers to campus, and talking with fellow students.

27.    When engaging in these expressive activities, UB Young Americans for Freedom and its members discuss political, religious, social, cultural, and moral issues and ideas.

28.    UB Young Americans for Freedom brings this action on behalf of itself and its members by and through its president, Plaintiff Justin Hill.

4

**Deleted:** and i

**Deleted:** Plaintiff

29.    Plaintiff Justin Hill is a senior student at the University and the president of UB Young Americans for Freedom.

30.    Plaintiff Hill brings this action on behalf of himself as a student and in his official capacity as the president of UB Young Americans for Freedom.

31.    Plaintiff Jacob Cassidy is a sophomore student at the University and a member of the UB Young Americans for Freedom executive board.

32.    Plaintiff Amelia Slusarz is a sophomore student at the University and a member of the UB Young Americans for Freedom executive board.

### DEFENDANTS

33.    Defendant University at Buffalo Student Association, Inc. ("SA" or "Student Association") is a non-profit membership corporation under the laws of the State of New York.

34.    The Student Association's membership is comprised of all UB undergraduate students (as determined by the University).

35.    Students are automatically considered members of the Student Association regardless of whether the students wish to participate or not.

36.    The Student Association is a "recognizing agent" of the University and is authorized to act as the University's agent to recognize or derecognize student organizations.

37.    The Student Association is funded by a mandatory student activity fee collected by the University from all undergraduate students and which the University distributes as directed by the Student Association.

38.    Defendant Brian Hamluk is the University's Vice President for Student Life.

39.    Defendant Tomás Aguirre is the University's Dean of Students.

40.    Defendant Hamluk is Defendant Aguirre's supervisor.

5

41.     Defendant Phyllis Floro is the University's Director of Student Engagement.

42.     Defendant Aguirre is Defendant Floro's supervisor.

43.     Defendants Hamluck, Aguirre, and Floro (collectively, "University Defendants") are each sued in his or her official capacity.

44.     On information and belief, Defendants Hamluk, Aguirre, and Floro, are responsible for the approval, rejection, amendment, repeal, and enforcement of the UB Recognition Policy (see infra ¶ 57) and related practices challenged in this lawsuit.

45.     On information and belief, Defendants Hamluk, Aguirre, and Floro, have the authority to revise the UB Recognition Policy and related practices challenged in this lawsuit and to implement regulations prohibiting the Student Association from refusing to recognize Plaintiffs' association or from derecognizing or penalizing it for unconstitutional reasons, as was done through the National Affiliation Ban (see infra ¶ 76) and the Legal Status Ban (see infra ¶ 107).

46.     If it were not for the policies implemented by Defendants Hamluk, Aguirre, and Floro, the Student Association would not have the authority to adopt and implement the National Affiliation Ban (thereby derecognizing UB Young Americans for Freedom) or to adopt and implement the Legal Status Ban.

**FACTUAL BACKGROUND**

I.      **UB Young Americans for Freedom promotes its views on campus.**

47.     From its inception in 1960, Young Americans for Freedom (later Young America's Foundation) has provided a forum for American high school and college students to come together to cultivate and grow their shared ideas and commitment to individual freedom, limited government, a strong national defense, free enterprise, and traditional values.

6

Moved down [2]

Deleted: <#>Defendant Lidano is sued in her official capacity.¶

Deleted: <#>UB

Moved (insertion) [2]: Defendant LidanoAguirre is Defendant Floro's supervisor.¶

Deleted: Lidano

Deleted: is

Deleted: Lidano

Deleted: Lidano

Deleted:

Deleted: such as

Deleted: Lidano

Deleted: derecognize

Deleted: ,

Deleted: or to

48.    Young America's Foundation accomplishes this in part through chartering chapters on campuses across the country, which are designated as Young Americans for Freedom.

49.    In or around 2017, students at the University formed their own Young Americans for Freedom chapter on campus.

50.    Since its formation, UB Young Americans for Freedom has actively promoted debates on important cultural, political, and moral topics on campus.

51.    In the last few years alone, it has hosted Lt. Col. (Ret.) Allen West to discuss whether America is systemically racist, and popular cultural commentator Michael Knowles to discuss cultural responses to gender ideology.

52.    UB Young Americans for Freedom annually hosts the campus's "9/11 Never Forget Project."

53.    Last year, it hosted an event to collect school supplies to donate to those in need, and it regularly sets up a table on campus and in the Student Union to promote these events as well as provide information on traditional, conservative American values.

54.    During the school year, UB Young Americans for Freedom hosts weekly meetings where the members discuss political, social, and moral issues.

## II.    Defendants created a student organization forum.

### A.    The University Defendants adopted a recognition policy that governs access to the student organization forum.

55.    The University set up a forum for student organizations to engage in expression and regulates that forum through recognizing (or not) certain student organizations.

56.    This forum is operated by the Office of Student Life (which is overseen by Defendants Hamluk and Aguirre) and the Office of Student Engagement (which is overseen by Defendant Floro).

7

Deleted: UB

Deleted: C

Deleted: The

Deleted:  and its Benefits

Deleted: UB

Deleted: ,

Deleted: Lidano

Deleted: ,

57.    On information and belief, Defendants Hamluk, Aguirre, and Floro implemented the "Student Club and Organization University-Wide Recognition Policy" (*i.e.*, the UB Recognition Policy). A true, accurate, and complete copy of the UB Recognition Policy is attached as Exhibit 1.

58.    The UB Recognition Policy governs the benefits that come with recognition.

59.    Under the UB Recognition Policy, the benefits of obtaining recognition include:

    a.  "Acknowledgement of the group as an affiliated organization of the University. Use of the University's name to indicate location of organization."

    b.  "Access to funding from the Mandatory Student Activity Fee (if recognized by a student government)."

    c.  "Utilization of UBLinked—the University's Interactive Student Organization web service."

    d.  "Ability to reserve/rent space on campus for events and meetings."

    e.  "Access to vendor and lobby tables in the Student Union."

    f.  "Privilege to apply for temporary office space in the Student Union."

    g.  "Privilege to conduct fundraising activities on campus."

    h.  "Eligibility to access a University at Buffalo Foundation Account for official organization business (only for organizations not recognized by student government)."

    i.  "Eligibility to participate in all membership recruitment opportunities offered through Student Engagement, as well as other campus resources and involvement activities."

8

i.  "Access [to] Student Engagement resources including advising, lead-
ership and diversity training programs, event planning, problem
solving and referrals."

Ex. 1 at 2.

60.    Without recognition, student organizations do not have access to these
resources.

**B. Defendants created a recognition policy that grants unlimited dis-
cretion to other entities to create conditions for recognition.**

61.    The UB Recognition Policy requires that a student organization receive
recognition from a "University Recognizing Agent" to become a recognized student
organization and access the benefits granted to such organizations. Ex. 1 at 1–2.

62.    A University Recognizing Agent is "[a]ny student government, formal
university department, or approved affiliated entity that will assist with the annual
registration process and act as a liaison for appropriate university policies." Ex. 1 at 2.

63.    The UB Recognition Policy authorizes Defendant Student Association to
be an official University Recognizing Agent.

64.    Although University departments and other entities can act as a Uni-
versity Recognizing Agent, only student organizations that are recognized by the UB
Student Association are eligible to access the mandatory student activity fees distrib-
uted to student organizations by the UB Student Association.

65.    The UB Recognition Policy includes some requirements for recognizing
student organizations but leaves it up to each University Recognizing Agent to im-
plement its own recognizing process and additional criteria.

66.    The UB Recognition Policy requires that "[a]ll Recognized Student Or-
ganizations must abide by the Rules and Regulations of their University Recognizing
Agent." Ex. 1 at 1.

9

**Deleted:** <#>The University's Student Organization Recognition Policies¶

**Deleted:** u

**Deleted:** M
**Deleted:** S
**Deleted:** A
**Deleted:** F

67.    The UB Recognition Policy is implemented and enforced against Plaintiffs under the authority of the Office of Student Engagement and the Office of Student Life, as well as Defendants Hamluk, Aguirre, and Floro.

68.    The UB Recognition Policy places no limits on the discretion University Recognizing Agents possess as they create, interpret, and enforce rules and regulations student organizations must satisfy to obtain recognition.

69.    On information and belief, no University policy places any limits on the discretion University Recognizing Agents possess as they create, interpret, and enforce rules and regulations student organizations must satisfy to obtain recognition.

70.    Under the authority granted by the UB Recognition Policy and Defendants Hamluk, Aguirre, and Floro, Defendant Student Association publishes and enforces additional club recognition policies.

III.    **The Student Association uses the discretion University Defendants gave it to target disfavored speech.**

   **A. As a recognized student organization, UB Young Americans for Freedom hosts events to promote its views.**

71.    Since at least 2017, UB Young Americans for Freedom has been a recognized student organization under the University's and Student Association's policies.

72.    During those years, UB Young Americans for Freedom has hosted many lectures and conducted many events on campus.

73.    In early March 2023, UB Young Americans for Freedom hosted cultural commentator Michael Knowles, who lectured on campus about cultural responses to gender ideology.

74.    Mr. Knowles' lecture garnered much attention and some protests on campus.

10

**B. The Student Association de-recognized UB Young Americans for Freedom by banning it and some other groups from affiliating with national organizations.**

75.   Approximately two weeks after Mr. Knowles' lecture, on March 27, 2023, Defendant Student Association revised its policies that govern club recognition to adopt a National Affiliation Ban.

76.   The resolution proposing this National Affiliation Ban was submitted by Student Association President Becky Paul-Odionhin, Vice President Sammi Pang, and Treasurer Alana Lesczynski. A true, accurate, and complete copy of this National Affiliation Ban (*i.e.*, Resolution 2022–2023—#28) is attached as Exhibit 2 to this Complaint.

77.   In adopting this revision at this time, the Student Association President told the Student Association Senate, "We all know why we're doing this," thereby admitting that those who proposed these revisions were targeting Plaintiffs and their views.

78.   This National Affiliation Ban added the following criteria to the Student Association's recognition policy: "Except for clubs in the Academic, Engineering, or Sports Council, and clubs whose sole purpose is to engage in inter-collegiate competition, no SA club may be a chapter or otherwise part of any outside organization." Ex. 2 at 1.

79.   The National Affiliation Ban passed by a vote of seven in favor, one against, and five abstentions.

80.   The National Affiliation Ban was also codified in Student Association's New Club Recognition Policy. A true, accurate, and complete copy of Student Association's New Club Recognition Policy is attached as Exhibit 3.

81.   In a different resolution (*i.e.*, Resolution 2022–2023—#32), the Student Association required all student organizations to comply with the National Affiliation Ban by May 31, 2023, and mandated that failure to do so would result in automatic

11

**Deleted:** attempts to

**Deleted:** (including YAF, but not others)

**Deleted:** ¶
O

**Formatted:** Font: Not Bold

**Deleted:** the

**Deleted:** (the SA Recognition Policy)

**Moved (insertion) [3]:** The National Affiliation Ban policy is attached as Exhibit 2.

**Deleted:** The National Affiliation Ban policy is attached as Exhibit 2.

loss of recognition. A true, accurate, and complete copy of this resolution is attached as Exhibit 4.

82. In Resolution 2022–2023—#32, the Student Association stated: "[A]ll existing SA-recognized clubs shall have until May 31, 2023 to come into compliance with point 7 of the section entitled 'Gaining Recognition' of the New Club Recognition Policy, and that any clubs' failure to do so will result in the automatic derecognition of that club." Ex. 4 at 1.

83. Since 2017, UB Young Americans for Freedom has had a contract with Young America's Foundation to be a chapter of that national organization and to use the name "Young Americans for Freedom," which is a trademark owned by Young America's Foundation.

84. Without this contract with Young America's Foundation, UB Young Americans for Freedom cannot exist as the organization it was formed to be and that its members want it to be.

85. After the Student Association passed the National Affiliation Ban, Plaintiffs did not disaffiliate with Young America's Foundation.

86. Thus, on or about June 1, 2023, the Student Association automatically derecognized UB Young Americans for Freedom because it remains a chapter of Young America's Foundation.

87. Due to that automatic derecognition, UB Young Americans for Freedom could no longer receive any of the benefits afforded to recognized student organizations, and it was no longer eligible to receive the budget it was allocated from the mandatory student activity fee.

88. Without these benefits, UB Young Americans for Freedom could not effectively communicate its messages on campus.

12

89.    For example, without these benefits, UB Young Americans for Freedom could not reserve table space in the Student Union, could not reserve classroom space for its weekly meetings, and could not reserve meeting space for guest speakers.

90.    Plaintiffs Hill, Cassidy, and Slusarz, as well as members of UB Young Americans for Freedom, desire to associate together under the name of Young Americans for Freedom to advance their shared views.

91.    Plaintiffs Hill, Cassidy, and Slusarz, as well as members of UB Young Americans for Freedom, desire to associate with Young America's Foundation and to remain a chartered student chapter of that national organization to advance the views they hold in common with that national organization.

92.    Defendants' National Affiliation Ban punished UB Young Americans for Freedom and its members by automatically derecognizing the group because it and its members associated with a national organization, as it had been doing for six years.

93.    But Defendants' National Affiliation Ban allowed other student organizations that addressed content similar to that UB Young Americans for Freedom discusses but from different viewpoints to maintain affiliation with national organizations, without automatically derecognizing them.

94.    Under the National Affiliation Ban, organizations that were assigned to the "Academic, Engineering, or Sports Councils, and clubs whose sole purpose is to engage in inter-collegiate competition" were allowed to continue to be chapters of outside organizations. Ex. 3 at 1.

95.    For example, the National Affiliation Ban allowed (1) the Economics Club; (2) the Environmental Network Club; (3) the Philosophy, Politics, and Economics Club; and (4) the Political Science Undergraduate Student Association to affiliate with a national organization if they so wished.

96.    Each of these clubs addresses economic, philosophical, or political content involving issues of the day.

13

**Deleted:** <#>This policy revision (the National Affiliation Ban) prohibited Young Americans for Freedom from being recognized because it is a chapter of a national organization—Young America's Foundation.¶
It

**Deleted:** <#>similar

**Deleted:** <#>YAF

**Deleted:** <#>but "automatically" derecognized YAF.

97.     Neither the University nor the Student Association maintains a comprehensive list of objective criteria for assigning student organizations to specific councils.

98.     Thus, Defendant Student Association possessed authority and unfettered discretion to decide which organizations would be subject to the National Affiliation Ban by assigning them to specific councils that either are or are not subject to the ban.

**C.  Defendant Student Association repealed the National Affiliation Ban and re-recognized UB Young Americans for Freedom in response to this lawsuit.**

99.     Plaintiffs filed their Verified Complaint on June 1, 2023, primarily challenging the unbridled discretion that UB Defendants grant the Student Association and the Student Association's abuse of that discretion to discriminate against and derecognize UB Young Americans for Freedom through the National Affiliation Ban. *See* V. Compl. Doc. 1.

100.    On June 26, 2023, Plaintiffs filed a motion for preliminary injunction against those policies. *See* Pl.'s Mot. for Prelim. Inj., Doc. 15.

101.    On July 3, 2023, after Plaintiffs filed a motion for preliminary injunction, Defendant Student Association via its executive committee revoked the National Affiliation Ban, stating that it was "hereby repealed and deemed never to have taken effect." A true, accurate, and complete copy of the minutes incorporating the resolution that repealed the National Affiliation Ban (*i.e.*, Student Association Executive Committee Resolution 2022–2023—#7) is attached as Exhibit 5.

102.    The Student Association and its Executive Committee lack the power to revise history or undo past events.

103.    Thus, the Student Association and its Executive Committee lack the power to deem that past events never actually took place.

14

Moved up [3]

Deleted: <#>The National Affiliation Ban policy is attached as Exhibit 2.¶

Deleted: <#>Dkt.

Deleted: The Student Association repeals the National Affiliation Ban in response to Plaintiffs' Motion for Preliminary Injunction and implements a certification requirement for student organization leaders.¶
¶
A

Deleted:  on July 3, 2023,

Deleted:  –

Deleted: -

Deleted:  -

104.   The July 3, 2023 resolution merely restored recognition to all student groups (including UB Young Americans for Freedom) that had lost it due to the National Affiliation Ban on or about June 1, 2023, and had lacked it ever since.

**D. Defendant Student Association adopts a new policy that dissolves all student groups and merges them into the Student Association.**

105.   In the same resolution that repealed the National Affiliation Ban, Student Association replaced that repealed policy "with a different requirement." Ex. 5 at 5.

106.   This "different requirement" mandated that "commencing 9/11/2023, prior to taking any act as an SA club officer—including but not limited to the use of SA club funds, facilities, or other resources—a student officer of an SA club must sign the attached document, entitled 'Acknowledgement of Club Officer Responsibilities.'" Ex. 5 at 5.

107.   The new acknowledgment form requires officers to "certify" that they will comply with Student Association's Legal Status Ban, which states: "No SA club may be a separate legal entity from SA; SA-recognized clubs may not have any accounts or financial activities outside of SA," and "SA club officers may not sign contracts or otherwise enter into agreement on behalf of any SA club." Ex. 5 at 5.

108.   Student Association adopted this "different requirement," and it accomplished the same objective as the National Affiliation Ban, using different means (*i.e.*, reinvigorated enforcement of the Legal Status Ban).

109.   The Legal Status Ban is also codified in the Student Association's by-laws, which state:

> the terms "club" and "student organization" shall be interchangeable. A club is a group of Members of SA acting as a group of Members; each club is part of SA. No club shall be a separate legal entity from SA. Recognized clubs may not have any accounts or financial activities outside of SA. Recognized clubs may not enter into contracts, take legal actions, commence litigation or undertake legal obligations; only SA itself may enter into contracts, take legal actions, commence litigation and/or undertake legal obligations.

**Deleted:** The prior policy was

**Deleted:** replaced with a

**Deleted:** ,

**Deleted:** stating

**Deleted:** e

**Deleted:** the

**Deleted:**  including that,

**Deleted:** <#>A true and correct copy of the minutes incorporating this resolution is attached as Exhibit 3.¶

**Deleted:** <#> that,

A true, accurate, and complete copy of the Student Association bylaws is attached as Exhibit 6.

110.   The Legal Status Ban is also codified in the "New Club Recognition Policy," which states: "Any agreement for a Student Association club to be recognized as a chapter of any outside organization is subject to review pursuant to SA's contract policy(ies)." A true, accurate, and complete correct copy of the updated "New Club Recognition Policy" as amended on July 3, 2023, is attached as Exhibit 7.

111.   Under Student Association's policies, the term "contract" applies to all "agreements of any nature and promises of any kind," not just those that "involve the exchange of money." A true, accurate, and complete copy of Student Association's Contracts Policy is attached as Exhibit 8.

112.   Student Association's Contract Policy does not contain any criteria, let alone a comprehensive list of objective criteria, for deciding whether a specific club should be allowed to be recognized as a chapter of any outside organization.

113.   On information and belief, no University or Student Association policy contains a comprehensive list of objective criteria for deciding whether a specific club should be allowed to be recognized as a chapter of any outside organization.

## IV.   Defendants' Policies Harm Plaintiffs

114.   No University at Buffalo policy includes a comprehensive list of objective criteria for recognizing student organizations.

115.   No Student Association policy includes a comprehensive list of objective criteria for recognizing student organizations.

116.   Defendants' UB Recognition Policy, National Affiliation Ban, and Legal Status Ban give authority and discretion to University Defendants and Student Association officials to deny student organizations recognition based on the content and viewpoint of the organization's speech, including through the contract review process.

16

**Deleted:** ¶

**Deleted:**  and correct

**Deleted:** B

**Deleted:** 4

**Deleted:** newly revised "New Club Recognition Policy"

**Deleted:**  that

**Deleted:** [a]

**Deleted:** ¶

**Deleted:**  and

**Deleted:**  (the current SA Recognition Policy)

**Deleted:** 5

**Deleted:** Both the

**Deleted:** the SA Recognition Policy

**Deleted:** Officials

117.    The Student Association has used the authority and discretion University Defendants granted it to discriminate against Plaintiffs by passing the National Affiliation Ban, which burdened Plaintiffs' freedom to associate and stripped them of their status as a recognized student organization and the benefits associated with that status.

118.    The Student Association passed the National Affiliation Ban to restrict expression that it concluded was enabled by student groups affiliating with national organizations.

119.    Defendant Student Association then used the authority and discretion University Defendants granted it to repeal the National Affiliation Ban and replace it with "a different requirement" (*i.e.*, reinvigorated enforcement of the Legal Status Ban) to accomplish the same speech-restricting objective using different means.

120.    The Student Association has used the authority and discretion it has been granted to adopt and enforce the Legal Status Ban which burdens Plaintiffs' legal association status, independent identity, independent financial status, right to contract, right to seek judicial relief for abridgment of constitutional rights, ability to own property, and ability to communicate an undiluted message to the campus community.

**A. Defendants' policies purport to strip Plaintiffs, individually and corporately, of their right to associate as guaranteed by state law.**

121.    Each Plaintiff wishes to associate together with all the rights and obligations of an unincorporated association.

122.    Because UB Young Americans for Freedom has a president and treasurer, it is defined by state law as an unincorporated association. N.Y. Gen. Ass'ns Law § 13 ("Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section.").

17

123.    State law provides that unincorporated associations may maintain legal actions to vindicate their rights by and through the association's president or treasurer. N.Y. Gen. Ass'ns Law § 12.

124.    Yet, the Student Association purports to declare that to access the benefits of student recognition, UB Young Americans for Freedom "shall [not] be a separate legal entity from SA," and "may not enter into contracts, take legal actions, commence litigation or undertake legal obligations." Ex. 6 at 22; *accord* Ex. 7 at 1.

125.    Thus, the Student Association purports to declare that UB Young Americans for Freedom does not have the legal status that state law declares it has.

126.    Further, this lawsuit itself, to vindicate constitutional rights, is in violation of the Student Association's policy.

127.    UB Young Americans for Freedom is subject to penalties, including derecognition, simply for bringing this legal action, through its president, to vindicate its rights.

**B. Defendants' policies expose Plaintiffs to penalties, including derecognition, for bringing this lawsuit.**

128.    To gain status as a recognized student organization and to conduct any action as officers, Plaintiffs must sign the "Acknowledgement of Club Officer Responsibilities" form that includes the Legal Status Ban.

129.    This form requires Plaintiffs to certify that they are complying with the Legal Status Ban, including its provision that UB Young Americans Foundation "may not . . . commence litigation." Ex. 6 at 22; *accord* Ex. 7 at 1.

130.    This lawsuit to vindicate Plaintiffs' constitutional rights violates the Legal Status Ban as UB Young Americans for Freedom is a party, as are several of its officers.

131.    Thus, Plaintiffs cannot sign the form certifying that they are complying with the Legal Status Ban.

18

**Deleted:** in order

**Deleted:** SA

**Deleted:** SA

132.    Plaintiffs attempted to add language to the form that would allow them to sign it without certifying as true something that was false.

133.    Student Association rejected this effort, insisting that Plaintiffs sign the form without alteration.

134.    Failure to sign the form exposes Plaintiffs to penalties that include de-recognition for UB Young Americans for Freedom.

135.    Because Student Association rejected the forms Plaintiffs submitted, Plaintiffs cannot access the funds allocated to UB Young Americans for Freedom as of October 5, 2023 and have been unable to do so since the beginning of the 2023–2024 academic year.

136.    Plaintiffs have attempted to access these funds, only to receive messages that they do not have access to them.

137.    Because Plaintiffs lack access to these funds, they have been unable to use UB Young Americans for Freedom's funds to purchase food for meetings, banners for tabling events, and spray paint for other expressive activities.

**C. Defendants' policies strip Plaintiffs, individually and corporately, of their right to associate by prohibiting them from contracting, holding funds, or even owning property for expressive events.**

138.    To carry out their expressive mission, Plaintiffs need to enter into contracts and agreements, raise funds, store funds, and expend funds.

139.    For example, to exist as a chapter of Young America's Foundation, UB Young Americans for Freedom must agree to abide by the chapter requirements of Young America's Foundation.

140.    To sponsor a speaking event, contracts are normally required with the speaker and sometimes with other vendors.

141.    Speakers and events also cost money which UB Young Americans for Freedom needs to raise and spend on its expressive activities.

19

142.    Furthermore, between the time that funds are raised and spent, UB Young Americans for Freedom needs to store those funds in a financial account.

143.    The Student Association's Legal Status Ban prohibits UB Young Americans for Freedom from having any "financial activities outside of SA." Ex. 5 at 7; Ex. 6 at 22.

144.    In addition, the Student Association's Fundraising, Revenue, and Rollover Policy mandates: "Clubs cannot carry cash." A true, accurate, and complete copy of this policy is attached as Exhibit 9.

145.    Also, the Student Association's Safeguarding Cash and Cash Equivalents Policy mandates: "Any SA club . . . which desires to bring in funds must do so through the Ticket Office" and "according to any Ticket Office policies and procedures in addition to any SA policies and procedures." A true, accurate, and complete copy of this policy is attached as Exhibit 10.

146.    As a result, Plaintiffs cannot raise funds for UB Young Americans for Freedom without first obtaining the permission of the Student Association and other University offices. Even such traditional fundraising activities as holding a weekend car wash are prohibited.

147.    These prohibitions significantly burden Plaintiffs' ability to raise funds to support their expressive activities.

148.    The Student Association's Legal Status Ban also prohibits UB Young Americans for Freedom or individual Plaintiffs as executive officers of UB Young Americans for Freedom from entering into these agreements or contracts.

149.    The Student Association's Legal Status Ban prohibits UB Young Americans for Freedom or individual Plaintiffs as executive officers of UB Young Americans for Freedom from raising or spending funds outside of the Student Association.

20

150.    The Student Association's Legal Status Ban prohibits UB Young Americans for Freedom or individual Plaintiffs as executive officers of UB Young Americans for Freedom from holding any financial assets for the organization.

151.    Instead, to enter into an agreement to host a speaking event (or any other event), UB Young Americans for Freedom officers must submit proposed contracts to the Student Association.

152.    The Student Association has discretion to sign, not sign, modify, or delay the contract or agreement until it is too late.

153.    Likewise, the Student Association must approve all financial transactions for UB Young Americans for Freedom.

154.    There are no written criteria listed which the Student Association uses to approve or not to approve a financial transaction.

155.    The process for asking the Student Association to sign contracts on a student organization's behalf is listed on its website. A true, accurate, and complete copy of this process, as stated on its "Contracts Overview" website, is attached as Exhibit 11

156.    The Student Association's website states that the contract review "process generally takes 2–3 weeks." Ex. 11 at 1.

157.    There are no written criteria listed which Defendant Student Association uses to approve, to not approve, to modify, or to delay, a contract.

158.    The "Contract Timeline" listed includes:

    a. "Initial submission via this form."

    b. "Initial review by SA Staff."

    c. "Markups and/or changes made (5–7 business days)."

    d. "Submitted to SA's lawyer for review if necessary (minimum of one week)."

21

**Deleted:** The Student Association's policy prohibits YAF or individual plaintiffs as executive officers of YAF

**Deleted:** in order

**Deleted:** YAF

**Deleted:** discretion

**Deleted:**  must be approved by the Student Association

**Deleted:** SA

**Deleted:** S

**Deleted:** O

**Deleted:** the SA's

**Deleted:** SA

**Deleted:** -

**Deleted:** SA

**Deleted:** -

e. "Submitted to Campus Life for review if over $2,500 (may take up to two weeks)."

f. "A contract may be executed on behalf of SA (including for any SA club) ONLY if such contract is executed by the SA Treasurer and either the SA President or SA Vice President. No one else may sign any contract on behalf of SA or any SA club. SA E-Board approval is not guaranteed. * All given times frames are estimates. No turnaround time is guaranteed."

Ex. 11 at 1–2.

159.   Notably absent are any comprehensive and viewpoint neutral guidelines for approval, an appeal process, recording process, or guarantee of timeline (the last of which is expressly disclaimed).

160.   The Student Association has used this discretion to delay contract approval to burden Plaintiffs' expressive events in the past.

161.   For example, for Plaintiffs to host Michael Knowles as a speaker in the Spring of 2023, a speaker agreement was required.

162.   UB Young Americans for Freedom planned to host the event on March 9, 2023.

163.   UB Young Americans for Freedom's president submitted a contract to the Student Association for review on January 12, 2023.

164.   After not hearing any response for over three weeks, UB Young Americans for Freedom's president followed up via email on February 4, 2023.

165.   Receiving no reply, on February 6, 2023, UB Young Americans for Freedom's president went to the Student Association Vice President's office.

166.   The Student Association Vice President told UB Young Americans for Freedom's president that he had violated the Student Association's policy by signing

**Deleted:** A copy of the SA's "Contracts Overview" website is attached as Exhibit 6

**Deleted:** in order

**Deleted:** in order

**Deleted:** YAF

**Deleted:** YAF

**Deleted:** YAF

**Deleted:** SA

**Deleted:** YAF

the speaker agreement before submitting it to the Student Association and that the Student Association would not sign the speaker agreement.

167.  Instead, over three weeks after it submitted the initial agreement for review UB Young Americans for Freedom was told it had to use a generic "artist contract" form the Student Association had used previously.

168.  UB Young Americans for Freedom's president attempted to negotiate some changes in terms but they were all denied.

169.  On February 14, 2023, UB Young Americans for Freedom's president submitted the Student Association's model artist contract to the Student Association for approval without any substantive changes for approval.

170.  This contract was substantively identical to an agreement that Student Association approved for a previous speaker—the only relevant difference being that the speaker, this time, was Michael Knowles.

171.  Student Association refused to approve or sign the artist agreement for the Michael Knowles event until March 6, 2023—almost two months after the original contract was submitted and only three days before the event was scheduled to take place.

172.  Student Association's refusal to sign the contract created substantial logistical difficulties and burdens for planning the event.

173.  Moreover, Defendants' Legal Status Ban prohibits UB Young Americans for Freedom from remaining a "separate legal entity from SA" and from conducting any "financial activities outside of SA." Ex. 5 at 7; Ex. 6 at 22.

174.  Under these prohibitions, Defendants' Legal Status Ban prohibits UB Young Americans for Freedom from owning any property under its own name.

175.  In fact, the Student Association's Capital Equipment and Disposal Policy mandates: "All property purchased with . . . Student Association . . . funds is the property of SA. All equipment and supplies purchased by SA for any SA club is the

23

Deleted: m

Deleted: SA

Deleted: YAF

Deleted: SA

Deleted: YAF

Deleted: YAF

Deleted: SA's
Deleted: SA

Deleted: SA

Deleted: SA

Deleted: (

Deleted: ,
Deleted: 3
Deleted: )
Deleted: SA's

property of University at Buffalo Student Association Inc. on discretionary loan for use of the club. The SA Treasurer may direct any equipment or supplies to be reclaimed by SA if the club dissolves or fails to utilize equipment or supplies in a proper and justifiable manner." A true, accurate, and complete copy of this policy is attached as Exhibit 12.

176. The Student Association's Capital Equipment and Disposal Policy contains no criteria, let alone objective and comprehensive criteria, for assessing whether a club is "fail[ing] to utilize equipment or supplies in a proper and justifiable manner," thus giving it unbridled discretion to confiscate items. Ex. 12 at 1.

177. Plaintiffs desire to purchase additional United States flags to replenish those needed for their "9/11 Never Forget Project."

178. Plaintiffs also desire to replace the United States flags used in their "9/11 Never Forget Project" with larger ones to enhance the solemnity and patriotic impact of this expressive event.

179. Replacing these flags with larger ones would likely cost UB Young Americans for Freedom around $300, which is a substantial portion of its budget.

180. Plaintiffs have declined to replenish or replace these flags out of concern that Student Association may claim any additional flags purchased as its own under Defendants' Legal Status Ban.

**D. Defendants' policies merge Plaintiffs into one student organization—Student Association—and compel them to associate with other groups who express messages with which they disagree.**

181. Under Defendants' Legal Status Ban, to gain recognition from the Student Association, a group of students seeking to form an organization must certify that their organization has no legal existence separate from the Student Association.

182. Hence, Defendants' Legal Status Ban merges all student organizations into one: the Student Association.

24

183.   Yet, the entire reason Plaintiffs Hill, Cassidy, and Slusarz (as well as other members of UB Young American for Freedom) desire to associate together and with Young America's Foundation is to advance viewpoints that they share in common and that other students, belonging to other student organizations, may not share.

184.   For example, Plaintiffs Hill, Cassidy, and Slusarz (as well as other members of UB Young American for Freedom) frequently disagree with the views advanced by, among others, College Democrats, the Lesbian/Gay and Bisexual Transgender Alliance, and Students for Justice in Palestine (a pro-Palestinian organization)—all of which are advertised as student organizations recognized by the Student Association.

185.   Plaintiffs Hill, Cassidy, and Slusarz (as well as other members of UB Young American for Freedom) would not voluntarily associate with, among others, College Democrats, the Lesbian/Gay and Bisexual Transgender Alliance, and Students for Justice in Palestine or take steps to advance the views of these groups.

186.   Plaintiffs Hill, Cassidy, and Slusarz (as well as other members of UB Young American for Freedom) would also disagree with the views advanced by Women's Healthcare and Wellness Association and IGNITE—all of which are advertised as student organizations recognized by the Student Association—because these groups or the national organizations with which they are affiliated advocate for abortion.

187.   Plaintiffs Hill, Cassidy, and Slusarz (as well as other members of UB Young American for Freedom) would not voluntarily associate with Women's Healthcare and Wellness Association or IGNITE.

188.   Yet under Defendants' Legal Status Ban, UB Young American for Freedom has no separate legal existence from the Student Association, and the same is true for College Democrats, the Lesbian/Gay and Bisexual Transgender Alliance,

25

Students for Justice in Palestine, Women's Healthcare and Wellness Association, and IGNITE.

189. Hence, Defendants' Legal Status Ban merges all of these disparate organizations into one, forcing them and their members to associate together and preventing any of them from maintaining separate and independent existence.

190. Any time College Democrats, the Lesbian/Gay and Bisexual Transgender Alliance, Students for Justice in Palestine, Women's Healthcare and Wellness Association, IGNITE, or any other group recognized by the Student Association communicates a message, it is Student Association that is speaking because none of these groups has any separate legal existence under Defendants' Legal Status Ban.

191. Because UB Young Americans for Freedom also has no legal existence separate from Student Association, any time one of these groups expresses a message, that message is equally attributable to UB Young Americans for Freedom, as it is also merged with the Student Association.

192. Because Defendants' Legal Status Ban bars student organizations from having any separate existence from the Student Association, Plaintiffs have no way to dissociate themselves from groups or messages with which they disagree.

### ALLEGATIONS OF LAW

193. Each and all of the acts alleged in this complaint were done by Defendants, or their agents or persons under their control, under the color and pretense of state law, statutes, ordinances, regulations, customs, usages, or policies of the State of New York.

194. Defendants' policies as described herein violate the First and Fourteenth Amendments and cause irreparable harm to Plaintiffs.

195. Plaintiffs have no adequate or speedy remedy at law to correct the deprivation of their rights by Defendants.

26

Deleted: <#>¶

Deleted: CLAIMS¶

Deleted: p

196.   Defendants' actions and policies, as set forth above, are not reasonable; do not serve any rational, legitimate, or compelling state interest; and are not narrowly tailored to serve any such interests.

197.   Because of Defendants' actions, Plaintiff UB Young Americans for Freedom and its members (including Plaintiffs Hill, Cassidy, and Slusarz) have suffered, and continue to suffer, economic injury and irreparable harm, and are entitled to an award of nominal damages and equitable relief.

198.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their rights under the United States Constitution and to an injunction against Defendants' policy and actions.

199.   Additionally, Plaintiffs are entitled to nominal damages from the Student Association.

200.   Last, Plaintiffs are entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

**Claim One:**
**Violation of Plaintiffs' First Amendment Right to Expressive Association**
**by Restricting Association**

201.   Plaintiffs repeat each of the allegations in paragraphs 1–200.

202.   Implicit in the free exercise, speech, and assembly rights the First Amendment guarantees is a corresponding right to associate with others in the pursuit of a wide variety of religious, political, social, economic, educational, and cultural ends.

203.   Plaintiffs engage in expression and expressive activities as a group.

204.   But the Student Association has used the authority and discretion given it by the University Defendants to adopt and enforce policies designed to restrict Plaintiffs' right to expressive association under the First Amendment, including the National Affiliation Ban and the Legal Status Ban.

27

**Deleted:** ,

**Deleted:**

**Deleted:** and

**Deleted:** ; 42 U.S.C. § 1983

**Deleted:** ¶

**Deleted:** 126

205.    To further their expression and expressive activities, Plaintiffs have affiliated with Young America's Foundation for six years.

206.    Without associating with Young America's Foundation, the amount and effectiveness of Plaintiffs' speech will be diminished, and they cannot exist as UB Young Americans for Freedom.

207.    Defendant Student Association passed the National Affiliation Ban in response to Plaintiffs' event featuring Mr. Knowles and the reaction it sparked.

208.    Defendant Student Association passed the National Affiliation Ban, which restricts Plaintiffs' speech, specifically their ability to host similar speakers in the future, rendering this policy content- and viewpoint-based.

209.    Because Plaintiffs affiliate with Young America's Foundation, the Student Association "automatically" derecognized UB Young Americans for Freedom.

210.    This derecognition was because of Defendants' National Affiliation Ban.

211.    Because Student Association, exercising its authority and unbridled discretion, designated UB Young Americans for Freedom as a "Special Interest" club while those organizations designated as "Academic," "Engineering," or "Sports" related were allowed to be chapters of national organizations, Defendants' exclusion of UB Young Americans for Freedom was based on the content of Plaintiffs' speech and expressive association.

212.    Because UB Young Americans for Freedom promotes educational content on similar topics as other organizations that are allowed to affiliate with national organizations, but does so from a conservative viewpoint, Defendants' exclusion of UB Young Americans for Freedom was based on the viewpoint of Plaintiffs' speech and expressive association.

213.    Next, the Student Association used the authority and discretion given it by the UB Defendants to condition recognition, and access to the benefits of recognition, on compliance with its Legal Status Ban.

28

214.    Under the Legal Status Ban, to access recognition benefits, Plaintiffs must give up their right to associate and exist as an unincorporated association, to enter into agreements, to raise and hold funds, or even to take legal action to secure their rights.

215.    The Legal Status Ban is *ultra vires* under New York Law.

216.    As enforced, the Legal Status Ban violates the constitutional right to expressive association, giving the Student Association almost unlimited authority to interfere in the internal affairs of UB Young Americans for Freedom and to restrict its expression.

217.    In addition, the University Defendants implemented policies, including the UB Recognition Policies, that give authority and unbridled discretion to the Student Association to discriminate in recognizing student organizations, including through the Legal Status Ban and National Affiliation Ban.

218.    Student Association used that authority and discretion to discriminate against UB Young Americans for Freedom.

219.    The Student Association's restrictions on Plaintiff's right to expressive association through the National Affiliation Ban and Legal Status Ban were authorized by the UB Recognition Policy that is enacted, overseen, and enforced by Defendants Hamluk, Aguirre, and Floro.

220.    Defendants' UB Recognition Policies, National Affiliation Ban, and Legal Status Ban violate Plaintiffs' right to expressive association under the First Amendment to the United States Constitution, both facially and as-applied.

**Claim Two:**
**Violation of Plaintiffs' First Amendment Right to Expressive Association**
**by Compelling Association**

221.    Plaintiffs repeat each of the allegations in paragraphs 1–200.

222.    Implicit in the right to expressive association protected by the First Amendment is an organization's right to exist as a separate organization and its

29

**Deleted:** in order

**Deleted:** UB

**Deleted:** through the SA Recognition Policies.

**Deleted:** YAF

**Deleted:** <#>¶
To further their expression and expressive activities, Plaintiffs have affiliated with Young America's Foundation for six years.¶
Without associating with Young America's Foundation, the amount and effectiveness of Plaintiffs' speech will be diminished and they cannot exist as UB Young Americans for Freedom.¶
Because Plaintiffs affiliate with Young America's Foundation, Defendants policies stated that they were "automatically" derecognized by the UB Student Association.¶
This derecognition was because of Defendant UB Student Association's National Affiliation Ban amendment to its SA Recognition Policy. ¶
This derecognition and exclusion was authorized by the UB Recognition Policy, enacted, overseen and enforced by Defendants Hamluk, Lidano, and Floro. ¶
Because UB Student Association designated UB Young Americans for Freedom as a "Special Interest" club while those organizations designated as "Academic," "Engineering," or "Sports" related were allowed to be chapters of national organizations, Defendants' exclusion was based on the content of Plaintiffs' speech and expressive association.¶
Because UB Young Americans for Freedom promotes educational content on similar topics as other organizations that are allowed to affiliate with national organizations, but does so from a conservative viewpoint, Defendants' exclusion was based on the viewpoint of Plaintiffs' speech and expressive association.¶

**Deleted:** <#>E

**Deleted:** <#>A

rights to oversee its own internal affairs, including decisions on with whom to associate and decisions to enter into agreements, to raise and hold funds, or even to take legal action to secure its and its members' rights.

223. UB Young Americans for Freedom is an expressive association whose ability to advocate its conservative message and viewpoints would be significantly affected if forced to merge itself into the Student Association.

224. UB Young Americans for Freedom is an expressive association whose ability to advocate its conservative message and viewpoints would be significantly affected if forced to merge into or associate with all other entities advertised as student organizations at the University, many of which advocate very different views than UB Young Americans for Freedom.

225. UB Young Americans for Freedom is an expressive association whose ability to advocate its conservative message and viewpoints would be significantly affected if prohibited from entering contracts, raising and retaining funds, or taking legal action to defend its and its members freedoms were subject to the whim of the Student Association.

226. Yet under Defendants' Legal Status Ban, to access recognition benefits, Plaintiffs must give up their right to associate and exist as a separate, independent organization, including their rights to choose the entities with which they wish to associate and the expression they wish to support, to enter into agreements, to raise and store funds, and to take legal actions (including this lawsuit).

227. Defendants' Legal Status Ban compels Plaintiffs to associate with organizations, individuals, and expression that they do not wish to associate with and that speak messages they disagree with.

228. Defendants adopted a "different requirement" (*i.e.*, reinvigorated enforcement of the Legal Status Ban), which restricts Plaintiffs' speech, just through a different mechanism than their National Affiliation Ban.

30

229. As enforced, the Legal Status Ban violates the constitutional right to expressive association, giving the Student Association almost unlimited authority to interfere in the internal affairs of UB Young Americans for Freedom and to restrict its expression.

230. By denying recognition (and the accompanying benefits) to Plaintiff UB Young Americans for Freedom unless Plaintiffs surrender their rights to expressive association, Defendants have infringed Plaintiffs' rights to expressive association.

231. In addition, the University Defendants implemented policies, including the UB Recognition Policies, that give authority and unbridled discretion to the Student Association to discriminate in recognizing student organizations, including through the Legal Status Ban and National Affiliation Ban.

232. The Student Association's actions, pursuant to the Legal Status Ban, that compel Plaintiff UB Young Americans for Freedom to associate with Student Association and other entities advertised as student organizations at the University were authorized by the UB Recognition Policy that is enacted, overseen, and enforced by Defendants Hamluk, Aguirre, and Floro.

233. Defendants' UB Recognition Policies and Legal Status Ban violate Plaintiffs' right to expressive association under the First Amendment to the United States Constitution, both facially and as-applied.

### Claim Three:
### Violation of Plaintiffs' First Amendment Right to Free Speech
### by Compelling Speech

234. Plaintiffs repeat each of the allegations in paragraphs 1–200.

235. Implicit in the right to free speech protected by the First Amendment is the right to choose which messages one expresses and the right to decline to express messages with which one disagrees.

31

236.   UB Young Americans for Freedom is an expressive association whose ability to advocate its conservative message and viewpoints would be significantly affected if forced to merge itself into the Student Association.

237.   UB Young Americans for Freedom is an expressive association whose ability to advocate its conservative message and viewpoints would be significantly affected if forced to merge into or associate with all other entities advertised as student organizations at the University, many of which advocate very different views than UB Young Americans for Freedom.

238.   Yet under Defendants' Legal Status Ban, to access recognition benefits, Plaintiffs must give up their right to associate and exist as an organization that is separate and independent organization from the Student Association.

239.   Defendants' Legal Status Ban compels Plaintiffs to associate with organizations, individuals, and expression that they do not wish to associate with and that speak messages they disagree with.

240.   Defendants' Legal Status Ban merges all student organizations into the Student Association, such that any message communicated by any student organization is equally attributable to UB Young Americans for Freedom, including messages with which it disagrees or would prefer not to express.

241.   By denying recognition (and the accompanying benefits) to UB Young Americans for Freedom unless Plaintiffs surrender their rights to to be free from compelled speech, Defendants have infringed Plaintiffs' right to free speech.

242.   In addition, the University Defendants implemented policies, including the UB Recognition Policies, that give authority and unbridled discretion to the Student Association to discriminate in recognizing student organizations, including through the Legal Status Ban and National Affiliation Ban.

243.   The Student Association's actions, pursuant to the Legal Status Ban, that compel Plaintiff UB Young Americans for Freedom's speech were authorized by

32

the UB Recognition Policy that is enacted, overseen, and enforced by Defendants Hamluk, Aguirre, and Floro.

244. Defendants' UB Recognition Policies and Legal Status Ban violate Plaintiffs' right to free speech under the First Amendment to the United States Constitution, both facially and as-applied.

**Claim Four:**
**Violation of Plaintiffs' First Amendment Right to Freedom of Speech by Engaging in Content and Viewpoint Discrimination**

245. Plaintiffs repeat each of the allegations in paragraphs 1–200.

246. When a university opens a forum for student organization recognition, it cannot discriminate against groups because of the group's content without demonstrating that the discrimination is narrowly tailored to achieve a sufficiently compelling government interest. *See Widmar v. Vincent*, 454 U.S. 263, 270 (1981).

247. Neither can it discriminate against a group because of its viewpoint.

248. Unbridled discretion to discriminate is a type of viewpoint discrimination.

249. Defendants have opened a forum for student organizations to engage in expression and thus must ensure it is operated in a viewpoint-neutral manner.

250. The University Defendants, through the UB Recognition Policies, delegate to the Student Association the ability to implement rules and regulations for student organizations to access the benefits of recognition.

251. This includes delegating to the Student Association the authority to recognize student organizations and control access to student activity fees.

252. The Student Association has used the discretion granted it to discriminate against Plaintiffs' viewpoint directly, and to implement additional layers of viewpoint-discriminatory rules and regulations on student organizations, including the National Affiliation Ban and the Legal Status Ban.

33

---

**Deleted:** Two

**Deleted:** 42 U.S.C. § 1983

**Deleted:** <#>¶

**Deleted:** <#>126

**Deleted:** without any unconstitutional conditions

**Deleted:** <#>Defendants Legal Status Ban and Recognition Policies are Viewpoint Discriminatory¶
¶

**Deleted:** <#>UB

**Deleted:** <#>SA

**Deleted:** <#>¶

**Deleted:** <#>SA Recognition Policies

253. The Student Association used its authority and unbridled discretion (granted to it by the UB Recognition Policy) to discriminate against Plaintiffs' viewpoints by passing the National Affiliation Ban and by designating Plaintiffs to the disfavored "Special Interest" category while other organizations that address similar content were designated to groups that are permitted to affiliate with national organizations.

254. The First Amendment requires the University Defendants to implement comprehensive neutral criteria to ensure that the Student Association (or any other designee) recognizes organizations in a viewpoint neutral manner.

255. The University Defendants have not implemented such criteria.

256. Thus, the University Defendants' policies, including the UB Recognition Policy, violate the First Amendment.

257. The Student Association first used the authority and discretion the University Defendants gave it to pass the National Affiliation Ban in response to an event Plaintiffs hosted and to prevent Plaintiffs from holding similar events in the future.

258. Defendants' National Affiliation Ban gave Student Association authority and unfettered discretion to decide which organizations would be subject to it because it had unlimited discretion to assign student groups to specific councils that either were or were not subject to the ban.

259. The Student Association next used the authority and discretion the University Defendants gave it by automatically derecognizing UB Young Americans for Freedom because if its affiliation with Young America's Foundation pursuant to the National Affiliation Ban on or about June 1, 2023.

260. Next, Student Association used the authority and discretion the University Defendants gave it to pass "a different requirement" (*i.e.*, reinvigorated enforcement of the Legal Status Ban), an alternative way to accomplish the same goals as the National Affiliation Ban.

34

---

**Deleted:** *The Recognition Policies*¶

**Deleted:** UB

**Deleted:** UB

**Deleted:** UB

261.   The Legal Status Ban also fails to include comprehensive viewpoint neutral criteria.

262.   The Legal Status Ban does not require that a club that meets the listed criteria be recognized.

263.   The Legal Status Ban allows Student Association executive committee members to deny recognition to a club based on its viewpoint or for any other reason.

264.   The Legal Status Ban allows Student Association executive committee members to deny a club's national-chapter agreement for any reason.

265.   The Legal Status Ban allows the Student Association to deny a club's proposed contracts, fundraising efforts, or other acts essential to expressive activities for any reason.

266.   The Student Association used its discretion to burden UB Young Americans for Freedom's speech by delaying approval of contracts necessary to its expression.

267.   The Student Association's restrictions on Plaintiff's right to free speech through the National Affiliation Ban and Legal Status Ban were authorized by the UB Recognition Policy that is enacted, overseen, and enforced by Defendants Hamluk, Aguirre, and Floro.

268.   Defendants' UB Recognition Policies, National Affiliation Ban, and Legal Status Ban violate Plaintiffs' right to free speech under the First Amendment to the United States Constitution, both facially and as-applied.

**Claim Five:**
**Violation of Plaintiffs' First Amendment Right to Assembly**

269.   Plaintiffs repeat each of the allegations in paragraphs 1–200.

270.   The First Amendment protects the right to assemble peaceably.

271.   This right includes the right to assemble with other groups or individuals without government interference.

35

**Deleted:** Further, the Student Association has implemented its revised "New Club Recognition Policy" that also

**Deleted:** The New Club Recognition Policy

**Deleted:** The New Club Recognition Policy

**Deleted:** The New Club Recognition Policy

**Moved (insertion) [4]:** The Student Association used its discretion to burden UB Young Americans for Freedom's speech by delaying approval of contracts necessary to its expression.

**Formatted:** Numbered Paragraph

**Moved up [4]**

**Deleted:** *The Legal Status Ban¶*
The Student Association has used the discretion granted it by the UB Defendants to pass the Legal Status Ban. ¶
The Legal Status Ban unconstitutionally conditions access to the speech forum by requiring plaintiffs to give up their right to associate as a legal entity, or petition for legal redress in the courts.¶
The Legal Status Ban unconstitutionally conditions access to the speech forum by requiring plaintiffs to give up their right to enter into agreements or contracts with other individuals or organizations. ¶
The Legal Status Ban unconstitutionally conditions access to the speech forum by granting unbridled discretion to the Student Association Executive Board to approve, deny, or delay the signing of contracts that are essential to Plaintiffs' expression.¶
The Student Association used its discretion to automatically derecognize YAF because of its affiliation with Young America's Foundation.¶
The Student Association used its discretion to burden YAF's speech by delaying approval of contracts necessary to its expression.¶
Defendants' Recognition Policies and Legal Status Ban violate Plaintiffs' right to Free Speech under the First Amendment to the United States Constitution, both facially and as-applied.¶

**Deleted:** Three

**Deleted:** 42 U.S.C. § 1983

**Deleted:** <#>¶

**Deleted:** <#>126

**Deleted:** peaceable

**Deleted:** y

272. This right includes the right to associate with other groups or individuals without government interference.

273. This right includes the right to petition for redress of grievances, including in the court system.

274. When the government refuses to recognize a student group it is a prior restraint that requires the government to meet a "heavy burden" to justify its exclusion. *See Healy v. James*, 408 U.S. 169, 184 (1972).

275. Defendants' National Affiliation Ban violated the right to assembly by prohibiting UB Young Americans for Freedom from affiliating with Young America's Foundation.

276. Defendants' Legal Status Ban violates the right to assembly by prohibiting UB Young Americans for Freedom from petitioning for redress of grievances and from entering into agreements as an assemblage of persons.

277. Defendants cannot meet their heavy burden to justify the prior restraint on Plaintiffs' right to assembly.

278. Defendants violated the First Amendment right of assembly by derecognizing Plaintiffs' student organization solely because it affiliates with Young America's Foundation, and they violate the same freedom by implementing and enforcing their Legal Status Ban.

279. The Student Association's restrictions on Plaintiff's right to free speech through the National Affiliation Ban and Legal Status Ban were authorized by the UB Recognition Policy that is enacted, overseen, and enforced by Defendants Hamluk, Aguirre, and Floro.

280. Defendants' UB Recognition Policies, National Affiliation Ban, and Legal Status Ban violate Plaintiffs' right to assemble peaceably under the First Amendment to the United States Constitution, both facially and as-applied.

36

**Deleted:** s

**Deleted:** YAF

**Deleted:** ,

**Deleted:** or

**Deleted:** refusing to recognize

**Deleted:** s

**Deleted:** First Amendment right of assembly

**Deleted:** its

**Claim Six:**
**Violation of the Unconstitutional Conditions Doctrine**

281. Plaintiffs repeat each of the allegations in paragraphs 1–200.

282. Under the unconstitutional conditions doctrine, government officials cannot condition access to a speech forum or other benefits on a basis that infringes, burdens, or waives constitutional rights. *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972).

283. Defendants have opened a forum for student organizations to engage in expression and grant organizations within this forum access to various campus resources, thus they must ensure it is operated without any unconstitutional conditions.

284. The University Defendants, through the UB Recognition Policies, delegate to the Student Association the ability to implement rules and regulations for student organizations to access the benefits of recognition.

285. This includes delegating to the Student Association the authority to recognize student organizations and control access to student activity fees.

286. The First Amendment requires the University Defendants to ensure that the Student Association (or any other designee) operates this forum without imposing any unconstitutional conditions.

287. The University Defendants have not fulfilled their obligations to ensure that students and student organizations, including Plaintiffs, are not subjected to any unconstitutional conditions.

288. Thus, the University Defendants' policies, including the UB Recognition Policy, violate the First Amendment.

289. The Student Association used the authority and discretion granted by the University Defendants to pass the National Affiliation Ban.

290. Defendants' National Affiliation Ban unconstitutionally conditioned access to the student organization forum (and the resources associated with it) on a

37

student organization waiving its constitutional right to associate with a national organization.

291.   Defendants automatically derecognized UB Young Americans for Freedom because if its affiliation with Young America's Foundation pursuant to the National Affiliation Ban on or about June 1, 2023.

292.   The Student Association used the authority and discretion granted by the University Defendants to pass "a different requirement" (*i.e.*, reinvigorated enforcement of the Legal Status Ban).

293.   Defendants' Legal Status Ban unconstitutionally conditions access to the student organization forum on Plaintiffs giving up their rights to associate as a separate legal entity and to petition for legal redress in the courts.

294.   Defendants' Legal Status Ban unconstitutionally conditions access to the student organization forum on Plaintiffs giving up their rights to enter into agreements or contracts with other individuals or organizations and to raise or hold funds for their expressive activities.

295.   Defendants' Legal Status Ban unconstitutionally conditions access to the student organization forum on Plaintiffs submitting to the Student Association's unbridled discretion over whether to allow them to associate with a national organization and over decisions to approve, deny, or delay the signing of contracts that are essential to Plaintiffs' expression.

296.   The Student Association's restrictions on Plaintiff's right to free speech through the Legal Status Ban were authorized by the UB Recognition Policy that is enacted, overseen, and enforced by Defendants Hamluk, Aguirre, and Floro.

297.   Defendants' UB Recognition Policies and Legal Status Ban violate Plaintiffs' right to be free from unconstitutional conditions, both facially and as-applied.

38

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgement against Defendants and provide Plaintiffs with the following relief:

A. A declaratory judgment that the UB Recognition Policies violate Plaintiffs' rights under the First and Fourteenth Amendments facially and as-applied;

B. A declaratory judgment that the National Affiliation Ban and Legal Status Ban violate Plaintiffs' rights under the First and Fourteenth Amendments facially and as-applied to ban Plaintiffs from affiliating with Young America's Foundation;

C. A declaratory judgment that the Legal Status Ban violates Plaintiffs' rights under the First and Fourteenth Amendments.

D. A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing Defendants' UB Recognition Policies;

E. A preliminary and permanent injunction prohibiting Defendants from enforcing their Legal Status Ban by denying recognition to, or penalizing Plaintiffs in any way for, existing as a legal entity, filing a lawsuit to vindicate their rights, having financial accounts, owning property, or entering into agreements to the extent permitted by state law;

F. Nominal damages against the Student Association Defendant for violating Plaintiffs' constitutional rights;

G. Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

H. All other further relief to which Plaintiffs may be entitled.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

39

Respectfully submitted this 6th day of October, 2023.

**Deleted:** 2

**Deleted:** July

| | |
|---|---|
| DENIS A. KITCHEN<br>**DENIS A. KITCHEN, P.C.**<br>8899 Main Street<br>Williamsville, New York 14221<br>Telephone: (716) 631–5661<br>denis@kitchenlaw.com | TYSON C. LANGHOFER*<br>Virginia Bar No. 95204<br>JONATHAN CALEB DALTON*<br>Virginia Bar No. 83790<br>**ALLIANCE DEFENDING FREEDOM**<br>44180 Riverside Parkway<br>Lansdowne, Virginia 20176<br>Telephone: (571) 707–4655<br>Facsimile: (571) 707–4656<br>tlanghofer@ADFlegal.org<br>cdalton@ADFlegal.org<br><br>TRAVIS C. BARHAM**<br>**ALLIANCE DEFENDING FREEDOM**<br>1000 Hurricane Shoals Road N.E., Ste. D-1100<br>Lawrenceville, Georgia 30043<br>Telephone: (770) 339–0774<br>Facsimile: (770) 339–6744<br>tbarham@ADFlegal.org<br><br>* Admitted *pro hac vice.*<br>** Motion for admission *pro hac vice* pending.<br><br>*Attorneys for Plaintiffs* |

**Deleted:** ¶
¶
DENIS KITCHEN                    ¶
DENIS A. KITCHEN, P.C.¶
8899 Main Street¶
Williamsville, NY 14221¶
(716) 631-5661¶
denis@kitchenlaw.com¶
¶
¶
¶                                ... [1]

**DECLARATION UNDER PENALTY OF PERJURY**

I, JUSTIN HILL, a citizen of the United States and a resident of the State of Georgia, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing, that the foregoing is true and correct to the best of my knowledge (except as to statements made on information and belief, and those I believe to be true and correct), and that the foregoing statements that pertain to me are based on my personal knowledge.

Executed this _____ day of _____, 2023, at _____.

_____
JUSTIN HILL

**Deleted:** have read the forgoing complaint and hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge....

41

**DECLARATION UNDER PENALTY OF PERJURY**

I, JACOB CASSIDY, a citizen of the United States and a resident of the State of New York, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing, that the foregoing is true and correct to the best of my knowledge (except as to statements made on information and belief, and those I believe to be true and correct), and that the foregoing statements that pertain to me are based on my personal knowledge.

Executed this _____ day of _____, 2023, at _____.

_____
JACOB CASSIDY

42

### DECLARATION UNDER PENALTY OF PERJURY

I, AMELIA SLUSARZ, a citizen of the United States and a resident of the State of New York, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing, that the foregoing is true and correct to the best of my knowledge (except as to statements made on information and belief, and those I believe to be true and correct), and that the foregoing statements that pertain to me are based on my personal knowledge.

Executed this _____ day of _____, 2023, at _____.

_____
AMELIA SLUSARZ

43

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2023, I electronically filed the foregoing using the CM/ECF system, which automatically sends an electronic notification with this filing to all attorneys of record.

Respectfully submitted this 6th day of October, 2023.

JONATHAN CALEB DALTON*
Virginia Bar No. 83790
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707–4655
Facsimile: (571) 707–4656
cdalton@ADFlegal.org

* Admitted *pro hac vice.*

*Attorney for Plaintiffs*

44

**Deleted:** July

**Deleted:** 2

**Deleted:** the following

**Deleted:** :

**Deleted:** ¶
¶
Ryan K. Cummings¶
Aaron M. Saykin¶
Hodgson Russ, LLP¶
The Guaranty Building¶
140 Pearl Street¶
Suite 100¶
Buffalo, NY 14202¶
716-848-1665¶
716-849-0349 (fax)¶
rcumming@hodgsonruss.com¶
asaykin@hodgsonruss.com¶
¶
*Counsel for Defendant*¶
University at Buffalo Student Association Inc.¶
¶
I will serve the same on the following defendants via first class mail, postage prepaid:¶
Brian Hamluk¶
University at Buffalo¶
520 Capen Hall¶
160 Founders Plaza¶
Buffalo, NY 14260¶
¶
Elizabeth Lidano¶
University at Buffalo¶
315 Student Union¶
50 Lee Road¶
Buffalo, NY 14260¶
¶
Phyllis Floro¶
University at Buffalo¶
150 Student Union¶
50 Lee Road¶
Buffalo, NY 14260¶
¶
Dated: July 26, 2023                    ... [2]