UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNIVERSITY AT BUFFALO YOUNG AMERICANS FOR FREEDOM; JUSTIN HILL; JACOB CASSIDY; AND AMELIA SLUSARZ<br><br>                   Plaintiff,<br><br>vs.<br><br>UNIVERSITY AT BUFFALO STUDENT ASSOCIATION INC.; BRIAN HAMLUK in his official capacity as the University at Buffalo Vice President for Student Life; TOMAS AGUIRRE in his official capacity as the University at Buffalo Dean of Students; and PHYLLIS FLORO in her Official Capacity as the University at Buffalo Director of Student Engagement,<br><br>                   Defendants. | 1:23-CV-00480-LJV<br><br>Hon. Lawrence J. Vilardo |

---

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS, BRIAN HAMLUK, TOMAS AGUIRRE, and PHYLLIS FLORO'S MOTION TO DISMISS**

                                              **LETITIA JAMES**
                                              Attorney General of the State of New York
                                              Attorney for Defendants, BRIAN HAMLUK,
                                              TOMAS AGUIRRE, and PHYLLIS FLORO
                                              BY:

                                              s/ *Michael T. Feeley*
                                              MICHAEL T. FEELEY
                                              Assistant Attorney General of Counsel
                                              Main Place Tower, Suite 300
                                              350 Main Street
                                              Buffalo, New York   14202
                                              (716) 853-8400
                                              Michael.Feeley@ag.ny.gov

## Table of Contents

**Preliminary Statement**…………………………………………………………………………5

**Procedural History**…………………………………………………………………………..5

**Legal Standard for Granting a Motion to Dismiss**……………………………………...6

**Statement of Facts**……………………………………………………………………………7

**Argument**

    **Point I- SOVERIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT BARS THIS COURT FROM EXERCISING SUBJECT MATTER JURISDICTION OVER THIS ACTION FOR DAMAGES AGAINST THE MOVING DEFENDANTS**……………………………………………….8

    **Point II- UB MAY IMPOSE REASONABLE TIME, PLACE AND MANNER RESTRICTIONS ON STUDENT GROUPS**………………………………..9

    **Point III - UB DOES NOT HAVE A NATIONAL AFFILIATION BAN**……..12

    **Point IV- UB POLICY DOES NOT PERMIT SA TO ENGAGE IN VIEWPOINT DISCRIMINATION IN FUNDING DECISIONS INVOLVING MANDATORY STUDENT FEES**……………………………………………………13

## **Table of Authorities**

**Cases**                                                                                                   **Page(s)**

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456
(S.D.N.Y. 2012), appeal dismissed, No. 12-3174 (2d Cir. Sept. 25, 2012)….9, 10 and 11

*Amidon v. Student Ass'n*, 508 F.3d 94 (2d Cir. 2007)………………………………….13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………….6

*Banks v. SUNY*, No. 06-CV-239S, 2007 U.S. Dist. LEXIS 20529, 2007 WL
895505 (W.D.N.Y. Mar. 22, 2007)………………………………………………………9

*Barr v. Abrams*, 810 F.2d 358 (2d Cir. 1987)………………………………………….6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2005)………………………………….6

*Board of Regents of the University of Wisconsin v. Southworth*,
529 U.S. 217 (2000)……………………………………………………………...…13

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 226 F. Supp. 2d
401 (S.D.N.Y. 2002) aff'd, 331 F.3d 342 (2d Cir. 2003)………………………………..10

*Byrne v. Rutledge*, 623 F.3d 46 (2d Cir. 2010)………………………………………….10

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)………………………….7

*Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788 (1985)………9 and 11

*Davis v. Stratton*, 360 F. App'x 182 (2d Cir. 2010)…………………………………….10

*Dube v. SUNY*, 900 F.2d 587 (2d Cir. 1990)…………………………………………….9

*Fonte v. Board of Managers of Cont'l Towers Condo.*, 848 F.2d 24
(2d Cir. 1988)……………………………………………………………………………..6

*Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98
(2d Cir. 2001)……………………………………………………………………………..9

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001)……………………………11

*Healy v. James*, 408 U.S. 169 (1972)……………………………………….....11 and 12

*Hotel Employees & Rest. Empls. Union, Local 100 v. City of N.Y. Dep't
of Parks & Rec.*, 311 F.3d 534 (2d Cir. 2002)…………………………………..10 and 11

*Husain v. Springer*, 494 F. 3d 108 (2d Cir. 2007)…………………………………………13

*Koehl v. Dalsheim*, 85 F.3d 86 (2d Cir. 1996)……………………………...………………9

*Papish v. Board of Curators of University of Missouri*,
410 U.S. 667 (1973)……………………………………………………………………...11

*R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist*., 645 F.3d 533
(2d Cir. 2011), cert. denied, 565 U.S. 945 (2011)…………………………………………..10

*Rosenberger v. Rector & Visitors of Univ. of Va*., 515 U.S. 819 (1995)……………………11

*Widmar v. Vincent*, 454 U.S. 263 (1981)……………………………………………. 10 and 11

**Statutes and Regulations**

    8   N.Y.C.R.R. 302.14……………………………………………………..8, 12 and 13

**Preliminary Statement**

Defendants, BRIAN HAMLUK, TOMAS AGUIRRE, and PHYLLIS FLORO, submit this Memorandum of Law in support of their Motion to Dismiss. For the reasons outlined below, the Complaint fails to state a cause of action since claims regarding the actions of State University of New York at Buffalo (hereinafter "UB") employees acting in their official capacities are barred by sovereign immunity under the Eleventh Amendment and must be dismissed. Further, to the extent that Plaintiff's seek prospective relief under the doctrine of *Ex Parte Young* against the moving defendants in their official capacities, the Second Amended Verified Complaint fails to even state a cause of action for First Amendment violations in that plaintiffs have failed to set forth facts sufficient to support claims of violation of First Amendment Right to Expressive Association, First Amendment Right to Freedom of Speech, and First Amendment Right to Assembly and the Complaint must be dismissed on that basis.

**PROCEDURAL HISTORY**

This case was commenced by the filing of the Complaint by the plaintiff on June 1, 2023 (ECF No. 1); Fed. R. Civ. Proc. 3. This Complaint was subsequently amended on December 5, 2023 by the filing of the Second Amended Verified Complaint (ECF No. 37; hereinafter "the Complaint" or "Compl."). There are three types of claims in the Complaint. The first and second claims are types of first amendment claims premised on two types of denial of the right to expressive association which are alleged to be brought because a Legal Status Ban and a since revoked National Status Ban adopted by the co-defendant University at Buffalo Student Association Inc. (hereinafter "SA") caused derecognition of the Plaintiff group with which the individual Plaintiffs desired to affiliate and allegedly both restricted and compelled association. (Compl. Paras. 202-220, 222-233). The third and fourth claims are types of first amendment

claims premised on a purported denial of the right to free speech by both compelling speech and engaging in content and viewpoint discrimination, which are alleged to be brought for permitting policies to exist that permit SA to have too close a degree of control and too much discretion in recognizing student groups. (Compl. Paras. 235 - 244, 246 – 268).   The third type, in the fifth and sixth claims, is a first amendment claim premised on a purported denial of the right to right to assemble and imposition of unconstitutional condition that asserts a refusal by SA to recognize the Plaintiff's group violates the first amendment assembly right and that UB thereby and otherwise imposes unconstitutional conditions.   (Compl. paras. 270 – 280, 282 - 297).

## LEGAL STANDARD FOR GRANTING A MOTION TO DISMISS

"To survive a motion to dismiss [for failure to state a cause of action], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2005).  Under *Twombly*, courts must first disregard anything in a Complaint that is merely "a legal conclusion couched as a factual allegation," and then ask whether the remaining portions of the Complaint "state a claim to relief that is plausible on its face." *Id*. at 555 and 570.  A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556; *Iqbal*, 556 U.S. at 679.  Even prior to the Supreme Court's ruling in *Iqbal* in 2009, in the Second Circuit, "complaints relying on the civil rights statute [we]re insufficient unless they contain[ed] some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987); and *Fonte v. Board of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).

**STATEMENT OF FACTS**

Solely for the purposes of this Motion, the defendant accepts the facts as alleged in the Complaint, as they must. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, at 152 (2d Cir., 2002). Individual plaintiffs were members of the plaintiff group, University at Buffalo Young Americans for Freedom, (hereinafter "UB YAF").a recognized student organization at the State University of New York at Buffalo (hereinafter "UB") in school year 2022-2023. (Compl. paras. 22 - 27). During that school year, SA was the "University Recognizing Agent" for UB YAF. (Compl. paras. 36, 61 – 67, and 71)

However, pursuant to the UB Recognition Policy, SA was not the only entity by which a student organization could become a Recognized Student Organization at UB. (Declaration of Phyllis Floro, Exhibits A and C, also, Compl. Exh. 1). At least sixty-eight (68), other Recognized Student Organizations have been recognized by university departments and other approved entities, aside and separate from SA. (Declaration of Phyllis Floro, Exhibit C). These include groups as varied as Young Democratic Socialists of America, recognized by the Department of Indigenous Studies, the University at Buffalo Real Estate Club, recognized by the Department of Urban and Regional Planning, the National Society of Professional Engineers, recognized by the School of Engineering and Applied Sciences, the Computational Linguistics Club, recognized by the Department of Computer Science and Engineering, the Financial Management Association, recognized by the School of Management, and the National Society of Leadership and Success recognized by the Officer of Student Engagement. *Id.* It would be remiss not to mention the recognized *a cappella* groups, The Enchords and The Royal Pitches, which are recognized by the Dean of Student's office rather than the Department of Music. *Id*.

Moreover, thirty-three (33) of the Recognized Student Organizations that have been

recognized by university departments and other approved entities, aside and separate from SA, are affiliated with National Organizations. *Id*.

Plaintiffs have presented no allegations indicating that they or any of them have attempted to obtain or been rejected from efforts to become a Recognized Student Organization from any entity other than SA.

Significantly, SA was a "University Recognizing Agent" whose recognition would permit access to the funding potentially to be provided from the Mandatory Student Activity Fee. 8 N.Y.C.R.R. 302.14.

During the school year 2022-2023, SA enacted and then on July 3, 2023 rescinded a policy plaintiffs refer to as a National Affiliation Ban. (Declaration of Phyllis Floro, Exhibit B). Since July 3, 2023, SA has instituted what plaintiffs refer to as a Legal Status Ban. *Id*. Plaintiffs allege that this Legal Status Ban constitutes viewpoint discrimination.

The SA Bylaws on file with UB, which are annexed as Exhibit B to the Declaration of Phyllis Floro, expressly prohibit viewpoint discrimination based on political viewpoint in funding from student activity fees in that the Bylaws state:

> "All decisions regarding funding for clubs must be consistent with applicable law.  <u>Funding decisions may not take into account the political viewpoints of clubs or their members</u>." SA Bylaws, Section 7.04, Criteria For Determining Club Funding, subpart (c) (underlining added).

## Argument

### POINT I

**SOVERIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT BARS THIS COURT FROM EXERCISING SUBJECT MATTER JURISDICTION OVER THIS ACTION FOR DAMAGES AGAINST THE MOVING DEFENDANTS**

The Second Circuit has held that"[f]or Eleventh Amendment purposes, SUNY is an

integral part of the government of the State [of New York] and when it is sued the State is the real party." *Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (quoting *Dube v. SUNY*, 900 F.2d 587, 594 (2d Cir. 1990)). Insofar as plaintiff seeks relief against SUNY, therefore, his claims are barred by the Eleventh Amendment. *Id.*; see also *Dube*, 900 F.2d at 594 ("no relief, either legal or equitable, is available against SUNY"); accord *Banks v. SUNY*, No. 06-CV-239S, 2007 U.S. Dist. LEXIS 20529, 2007 WL 895505, at *7 (W.D.N.Y. Mar. 22, 2007).

Since the moving defendants have been sued only in their official capacity as employees of the State University of New York at Buffalo, they enjoy complete Eleventh Amendment sovereign immunity. *Koehl v. Dalsheim*, 85 F.3d 86, 88 – 89 (2d Cir. 1996).

The Complaint must be dismissed on these grounds alone, with only potential relief under *Ex Parte Young* as to future policy remaining.

## POINT II

### UB MAY IMPOSE REASONABLE TIME, PLACE AND MANNER RESTRICTIONS ON STUDENT GROUPS

When the government attempts to restrict constitutionally-protected speech on its own property, "the level of scrutiny to which the restriction is subjected depends on how the property is categorized as a forum for speech." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456, 469 (S.D.N.Y. 2012), appeal dismissed, No. 12-3174 (2d Cir. Sept. 25, 2012). This forum analysis is a "means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for [expressive] purposes." *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 800 (1985).

The Second Circuit has sorted government property into four forum classifications.

Ranging from those triggering the highest level of scrutiny to the least, these are: (1) traditional public fora, (2) designated public fora, (3) limited public fora, and (4) nonpublic fora. *R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011), cert. denied, 565 U.S. 945 (2011); *Hotel Employees & Rest. Empls. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 544-46 (2d Cir. 2002). After determining the type of forum at issue, the Court "then applies the requisite standards for that forum to the challenged speech restriction." *Am. Freedom Def. Initiative v. Metro. Transp. Auth*, supra, at 469.

"[T]he campus of a public university, at least for its students, possesses many of the characteristics of a public forum." *Widmar v. Vincent*, 454 U.S. 263, 267 n.5 (1981). Accordingly, the Second Circuit has noted, "[s]ome portions of a public college's campus may be a public forum." *Davis v. Stratton*, 360 F. App'x 182, 184 (2d Cir. 2010). Although parts of a college campus may be a designated public forum if the government or university so intends, a "[public college's] campus is not the village green." *Davis*, 360 F. App'x at 184. Indeed, in *Widmar*, the Supreme Court noted that "[w]e have not held, for example, that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings." 454 U.S. at 267 n.5.

The Supreme Court's decision in *Widmar* found the state university meeting facilities in question to be a limited public forum. 454 U.S. 263 at 276, 102 S. Ct. 269, 70 L. Ed. 2d 440; see, also, *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 226 F. Supp. 2d 401, 418 & n.12 (S.D.N.Y. 2002) (collecting cases), aff'd, 331 F.3d 342 (2d Cir. 2003).

Thus, the third category of protected speech, the limited public forum, is often analyzed as a subset of the designated public forum and as a nonpublic forum opened up for specific purposes. *Byrne v. Rutledge*, 623 F.3d 46, 55 n.8 (2d Cir. 2010) ("[T]he law of [the Second

10

Circuit] describes a limited public forum as both a subset of the designated public forum and a nonpublic forum opened to certain kinds of speakers or to the discussion of certain subjects." (internal quotation marks and citations omitted)). "The government has more leeway to restrict speech in a limited public forum than in a traditional or designated public forum," *Am. Freedom Def. Initiative v. Metro. Transp. Auth.,* supra, at 470 n.6 *(quoting Hotel Employees & Rest. Empls. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.,* supra, at 545*).* However, speech restrictions in a limited public forum must be viewpoint-neutral and reasonable in light of the forum's purpose. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-107 (2001); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Cornelius v. NAACP Legal Defense & Educ. Fund,* supra*,* at 806.

Colleges and universities are entitled to regulate student groups with respect to the time, place, and manner in which the students conduct speech-related activities, and may even withdraw recognition of student groups who violate the institution's rules. *Healy v. James*, 408 U.S. 169, 192-93 n.24 (1972).  A university may "exclude even First Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity of other students to obtain an education." *Widmar v. Vincent*, supra, at 277 (1981).  In fact, in *Papish v. Board of Curators of University of Missouri*, 410 U.S. 667 (1973), the Supreme Court emphasized that it had "repeatedly approved" of the legitimate authority of universities "to enforce reasonable regulations as to the time, place, and manner of [student] speech and its dissemination." *Id*, at 670 (citing *Healy v. James*, supra, at 192-93).

The State University of New York at Buffalo Student Club and Organization University-Wide Recognition Policy, Exhibit A to the Declaration of Phyllis Floro, provides reasonable regulations for the operation and recognition of Recognized Student Organizations at UB.

Moreover, the funding and audit requirements of 8 N.Y.C.R.R. 302.14 provide a reasonable justification for structuring student organizations in a manner that avoids the potential for financial irregularities and facilitates prompt review of the expenditure of UB student activity fees.

## POINT III

## UB DOES NOT HAVE A NATIONAL AFFILIATION BAN

Even assuming *arguendo* that the actions of the SA have impeded the plaintiffs in maintaining their affiliation with a National Organization, UB does not have a National Affiliation Ban that violates *Healy v. James*, supra.

Further, the State University of New York at Buffalo Student Club and Organization University-Wide Recognition Policy defines a Recognized Student Organization as:

> "A student group that is organized for the students of the University at Buffalo which has complied with university registration requirements set forth in these regulations and has complied with all requirements set forth by their University Recognizing Agent."

And, it further defines a University Recognizing Agent as:

> Any student government, formal university department, or approved affiliated entity that will assist with the annual registration process and act as a liaison for appropriate university policies.

The list of entities other than SA that serve currently as a University Recognizing Agent is set forth at Exhibit C to the Declaration of Phyllis Floro. Plaintiffs have not pleaded nor is it reasonable to conclude that an application to a "University Recognizing Agent" other than SA would be denied. Indeed, plaintiffs have detailed no such efforts nor provided any reason to believe that such an application would be denied.

Also, this list of entities other than SA that serve currently as a University Recognizing

Agent includes thirty-three (33) different Recognized Student Organizations that have a National Affiliation. Thus, it is evident that UB does not have a National Affiliation Ban, nor have plaintiffs demonstrated that such a ban has been applied to them.

## POINT IV

### UB POLICY DOES NOT PERMIT SA TO ENGAGE IN VIEWPOINT DISCRIMINATION IN FUNDING DECISIONS INVOLVING MANDATORY STUDENT FEES

The SA Bylaws on file with UB expressly prohibit viewpoint discrimination in determining student activity funding. (Exhibit B to Phyllis Floro Declaration, Section 7.04 (c)). It is one of the methods by which UB complies with the regulations concerning Student Activity Fees as set forth in 8 N.Y.C.R.R. 302.14, and case law mandating viewpoint neutrality in the allocation of student activity fees at the college level.

Thus, UB is not permitting *through its policies* a violation of the requirement of viewpoint neutrality for the distribution of mandatory student fees set forth in *Board of Regents of the University of Wisconsin v. Southworth,* 529 U.S. 217, 232-33 (2000), and applied in *Amidon v. Student Ass'n,* 508 F.3d 94 (2d Cir. 2007)("A pool of student activity fees to fund private speech is a limited public forum to which forum principles apply….[t]here may be restrictions on speech in a limited public forum so long as they are viewpoint-neutral and reasonable in light of the forum's purpose, and do not serve as a façade for viewpoint discrimination" *id.*, at 100 (citations omitted)).

The Second Circuit has stated this principle succinctly when it observed that:

> "as long as the availability of funds to student groups *is not restricted based on their viewpoint*, the college's administration of a mandatory student activity fee complies with neutrality requirement demanded by the First Amendment."

*Husain v. Springer*, 494 F. 3d 108, 130 (2d Cir. 2007)(italics in original) citing *Board of Regents*

*v. Southworth*, 529 U.S. 217, 232-33 (2000).

It is not the viewpoints of the plaintiffs that are preventing the allocation to the plaintiff group of funds raised by student activity fees but the structure of the plaintiff group.  As administrators acting in their official capacity, the moving defendants already have on file from SA *a policy* expressly prohibiting the viewpoint discrimination that plaintiffs claim as the basis for this action.  Thus, since it is contended that the only relief sought against these moving defendants in this official capacity claim is a policy that is viewpoint neutral, plaintiffs already have the relief they seek.  As a consequence, the Complaint should be dismissed as against the moving defendants.

## CONCLUSION

Defendants, BRIAN HAMLUK, TOMAS AGUIIRRE, and PHYLLIS FLORO, ask that the Court dismiss the action for all the reasons stated herein.

Dated: Buffalo, New York
       January 2, 2024

                **LETITIA JAMES**
Attorney General of the State of New York
Attorney for Defendants, BRIAN HAMLUK,
TOMAS AGUIRRE, and PHYLLIS FLORO

BY:
 s/ *Michael T. Feeley*
MICHAEL T. FEELEY
Assistant Attorney General of Counsel
Main Place Tower, Suite 300
350 Main Street
Buffalo, New York   14202
(716) 853-8400
Michael.Feeley@ag.ny.gov