UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNIVERSITY AT BUFFALO YOUNG AMERICANS
FOR FREEDOM, *et al.*,

                            Plaintiffs,

         v.                                               Civil No.: 1:23-cv-00480-LJV

UNIVERSITY AT BUFFALO STUDENT
ASSOCIATION INC., *et al.*,

                            Defendants.

_____

## DECLARATION OF BECKY PAUL ODIONHIN

         I, Becky Paul Odionhin, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

         1.       I am a student at the University at Buffalo and serve as President of Defendant University at Buffalo Student Association Inc. ("SA").  I was President of SA for the 2022-2023 academic year and was re-elected to that position for the 2023-2024 academic year. As President, I am also a member of the SA Executive Committee.

         2.       The matters set forth in this Declaration are based on my personal knowledge, gained through my service as President of SA.  I submit this Declaration to provide background information on the SA policies that are at issue in this lawsuit.

**Background of SA and Its Clubs**

         3.       SA is the undergraduate student government at the University at Buffalo ("UB").  All of its departments are student-run.  Its representatives are elected by the students.

4.     UB implements a university-wide procedure to recognize student groups as official organizations on campus.  A copy of the University-Wide Recognition Policy is attached to the Amended Complaint in this action as Exhibit 1.  *See* Doc. 21-1.

5.     "Recognition provides official identification for an affiliated group, use of designated University facilities and services, and the coordination and communication of the group's activities to the campus community." *Id.*

6.     In order to achieve and maintain status as a university-recognized student organization, a student group must achieve and maintain recognition by a university recognizing agency.  "Recognizing agencies include student governments, academic and administrative departments as well as other formally recognized University entities." *Id.*

7.     The recognizing agency sponsoring a student group is responsible for the actions of that student group, and all university-recognized student organizations must abide by the rules and regulations of their university recognizing agency. *See id.*

8.     Once a student group becomes a university-recognized student organization, it is entitled to several benefits, including acknowledgement of the organization as a UB-affiliated organizations; ability to reserve/rent space on campus for events and meetings; privilege to apply for temporary office spaces in the Student Union; and privilege to conduct fundraising activities on campus.

9.     When the university recognizing agency is a student government, the university-recognized student organization enjoys the additional benefit of being able to apply for funds from the mandatory student activity fee.  SA is, therefore, a university recognizing agency that holds authority to recognize student groups as a university-recognized student organization.  There are also many other recognizing agencies on campus besides the student governments.

10.     A student group becomes a university-recognized student organization through SA when the student group becomes a SA-recognized student organization—*i.e.*, a student club.

11.     Within SA, there are approximately 170 student clubs, organized into councils. All SA clubs are groups of members of SA. Each club is part of SA, and no club is permitted to exist as a separate legal entity from SA. These are known as "recognized clubs."

12.     In addition to recognizing student organizations, SA allocates funds to its recognized clubs as part of its budget process. The budget funds are comprised of the mandatory student activity fees, which are allocated based on SA's final adopted budget.

13.     Plaintiff University at Buffalo Young Americans for Freedom ("UB YAF") is a recognized club. As such, pursuant to the University-Wide Recognition Policy, UB YAF has access to funds from the mandatory student activity fee and has an obligation to abide by the rules and regulations of SA.

**Legal Status Provision of the SA By-Laws**

14.     SA and its officers are governed by its By-Laws. The current entity known as SA was incorporated in 2017. The By-Laws are based on the Constitution of the predecessor undergraduate student government at UB (which was also referred to as the "Student Association" or "SA").

15.     Based on the records of the predecessor SA organization, we have confirmed that, in April of 2015—long before UB YAF existed at SA—the Constitution was amended to include a provision that exists today in the By-Laws. A true and accurate copy of the SA Senate Meeting Minutes (4-26-15) including SA Constitutional Amendment #3 and #4 is attached hereto as **Exhibit A**.

16.     As the minutes make clear, the amendment prohibited SA clubs from existing as separate legal entities.  And it is found today in Article VII, Section 7.04(d) of the SA By-Laws (the "Legal Status Provision"), which provides:

> (d) As used in these By-Laws, the terms "club" and "student organization" shall be interchangeable.  A club is a group of Members of SA acting as a group of Members; each club is part of SA.  No club shall be a separate legal entity from SA.  Recognized clubs may not have any accounts or financial activities outside of SA.  Recognized clubs may not enter into contracts, take legal actions, commence litigation or undertake legal obligations; only SA itself may enter into contracts, take legal actions, commence litigation and/or undertake legal obligations.

A copy of the SA By-Laws is attached to the Amended Complaint in this action as Exhibit 4.  *See* Doc. 21-4.

17.     This longstanding Legal Status Provision requires (a) *all* student clubs to be SA member clubs, as opposed to independent organizations; and (b) SA to review and approve in advance *all* contracts involving *all* SA clubs.

18.     The Legal Status Provision of the SA By-Laws is reflected in other existing SA policies.  For example, SA also established a more formal "Contracts Policy" which, among other things, requires SA and its officers—consistent with its By-Laws—to review and approve in advance all contracts involving SA clubs (the "Contracts Policy").  Article II of the SA Contracts Policy provides, in part:

> 1. Clubs may not enter into contracts or undertake legal obligations; only SA itself may enter into contracts
>
> 2. No one shall have a right to execute any contract on behalf of a club or undertake any legal obligation on behalf of a club by virtue of his/her position as an officer, member, advisor or coach of such club.

A true and accurate copy of the SA Contracts Policy and the related guidance is attached hereto as **Exhibit B**. The Contracts Policy is "interpreted to include agreements of any nature and promises of any kind (whether or not the word contract appears), including but not limited to agreements that do not involve the exchange of money."

19.     The Contracts Policy and related guidance set forth the specific criteria, terms, and procedures for SA's review. Because the SA Officers have fiduciary responsibilities to protect SA and its funds, the Contracts Policy is intended to protect SA and the SA clubs from unreasonable liabilities to third party vendors, and set a reasonable framework by which undergraduate student officers can evaluate proposed contracts.

20.     The Contracts Policy—along with every other SA Policy and By-Law—is subject to Article XI(a) of the By-Laws, which is a "Non-Discrimination" mandate embedded in the SA By-Laws. It states:

> All SA officials, bodies and clubs shall make determinations
> regarding employment and provide access to services, programs,
> and activities without regard to an individual's race, color, national
> origin, sex, religion, age, disability, gender, pregnancy, gender
> identity, sexual orientation, predisposing genetic characteristics,
> marital status, veteran status, military status, domestic violence
> victim status, ex-offender status or political viewpoints.

*See* Doc. 21-4.

21.     In 2016, UB YAF sought and obtained club recognition. At the time, UB YAF also requested and received contractual approval from the predecessor undergraduate student government at UB, for a Chapter Agreement with UB YAF's affiliated national organization,

Young America's Foundation (the "Foundation").  The December 2016 contract was signed by

UB YAF,[1] which agreed to the following term, consistent with SA's By-Laws:

> Any SA club (including the Chapter, if the Chapter ultimately
> attains recognition as an SA club) is a group of Members of SA
> acting as a group of Members; clubs shall not be separate legal
> entities from SA; recognized SA clubs may not have any accounts
> or financial activities outside of SA; SA recognized clubs may not
> enter into contracts, take legal actions, commence litigation or
> undertake legal obligations; only SA itself may enter into
> contracts, take legal actions, commence litigation and/or undertake
> legal obligations with respect to any SA club;

A true and accurate copy of the UB YAF Chapter Agreement is attached hereto as **Exhibit C**.

22.     UB YAF remains a recognized SA club.

23.     In early 2023, UB YAF submitted a contract to SA to invite speaker Michael

Knowles to the UB campus.  UB YAF had already signed the contract, in violation of SA's By-

Laws and Contracts Policy.  SA could have de-recognized UB YAF because of this violation, but

chose to give the club a warning.  SA advised UB YAF of the violation, and advised UB YAF to

use utilize the contract form SA had used with the Foundation multiple times in the past, adjusted

to reflect the specific details of the proposed engagement and with language added to address the

Foundation's acknowledgment that the document signed by UB YAF's then-President was not

binding on SA or the club.  That form is based on SA's standard form contract that it uses for

performing artists such as speakers, but already included a number of changes that had been

previously negotiated with the Foundation as accommodations to requests of that outside vendor.

24.     The Foundation attempted to change the terms of the agreement, which SA

did not agree to.  Once the Foundation agreed to utilize a contract similar to that which was used

---

[1]     This contract was also signed by the student officers of student government.  SA has
accordingly assumed the contract's obligations and rights.

in the past with the Foundation, SA reviewed the agreement, signed it, and submitted it to UB YAF before the scheduled speaker event. The event took place at UB on March 9, 2023, as planned. Despite some requests from students, the public, and the media to cancel the event due to the speaker's viewpoints, SA and UB declined to do so.

**SA's Adoption of the New Club Recognition Policy**

25.     After its incorporation, SA adopted a more detailed "New Club Recognition Policy" (the "SA Recognition Policy") that, consistent with its By-Laws, sets forth the criteria that each student group must meet in order to gain status as a SA club.

26.     The SA Recognition Policy states in relevant part:

> 7. Any agreement for a Student Association club to be recognized as a chapter of any outside organization is subject to review pursuant to SA's contract policy(ies); no such agreement shall violate, or compel or allow any SA club to violate, any Student Association, University at Buffalo or SUNY policies or rules.

A copy of the SA Recognition Policy is attached to the Amended Complaint in this action as Exhibit 5. *See* Doc. 21-5. The SA Executive Committee Meeting Minutes (7-3-23), including SA Executive Committee Resolution 2022-2023 - #6 and #7 in which the latest version of the SA Recognition Policy was Adopted, are attached to the Amended Complaint in this action as Exhibit 3. *See* Doc. 21-3.

27.     As the above-referenced Executive Committee Resolution notes, during my time serving as a SA representative, we have been concerned that, if a SA club is a chapter of or otherwise a part of an outside organization whose rules or policies conflict with or differ from those of the State University of New York ("SUNY"), UB, or SA, then it can cause a lack of compliance with SUNY's, UB's, or SA's rules and policies.

28.    On March 27, 2023, the SA Senate attempted to address SA club compliance with SUNY, UB, and SA rules and policies when it adopted Senate Resolution 2022-2023 - #28, which amended the SA Recognition Policy.  The March 2023 amendment prohibited SA clubs, with certain exceptions, from being a chapter of or otherwise part of any outside organization (the "Outside Organization Rule").  A copy of the amended policy is attached to the Amended Complaint in this action as Exhibit 2.  *See* Doc. 21-2.  Resolution #28 also set a deadline of May 17, 2023 to comply with the amended policy, and stated that "any club's failure to do so will result in the automatic derecognition of that club."  A true and accurate copy of SA Senate Resolution 2022-2023 - #28 is attached hereto as **Exhibit D**.

29.    At the time of its adoption, the amended policy—if it had actually taken effect—would have affected a diverse group of existing SA clubs that were either a chapter or otherwise part of an outside organization.  This includes, but is not limited to:

- Active Minds (an organization that empowers students to be the driving force to change the perception about mental health issues);
- Amnesty International;
- BASIC (Brothers and Sisters in Christ);
- Circle K;
- College Democrats;
- IGNITE (an organization that strives to build the next generation of women leaders);
- It's On Us (deals with sexual assault prevention);
- Model UN;
- Pre-Law Chapter of the National Black Law Students Association;
- Powerful United Ladies Striving to Elevate (PULSE);
- ROTC Club;
- Turning Point USA;

- UNICEF Unite Club; and
- Young Americans for Freedom.

30.     The amended policy was not adopted to target Plaintiffs or anyone else.  We adopted it because of our broader concerns about the policies and rules of outside organizations that conflict with those of SUNY, UB, and SA, and the risks associated with SA clubs trying to act independently—as opposed to acting as a SA member club—in its dealing with vendors, service providers, or outside organizations.

31.     SA is subject to the policies of UB and SUNY.  For example, SUNY Policy #3901 prohibits the use of student activity fee funds from being used "exclusively for the general corporate purposes" of nonprofit organizations that are outside of the student government. Similarly, SA club officers cannot sign contracts on behalf of a SA club.  Any such contracts must be between SA and the entity or individual that a SA club seeks to contract with.

32.     The rules and policies of SUNY, UB, and SA have been developed over the years with a goal of protecting the mandatory student activity fees, for which SA's officers and student senators serve as fiduciaries.  Compliance with these rules and policies helps ensure the responsible use of the fees, student safety, and active participation in SA clubs and student activities.

33.     There were also broader concerns over things like:  (a) potential liabilities and responsibilities over programs that a SA club would co-promote with outside organizations; (b) lack of clarity as to who is in charge at the club events, particularly when they are on campus and particularly when safety concerns are involved; (c) fiduciary obligations, including concerns over business conflicts of interest in co-promoted programs, especially when club officers can have divided loyalties between getting the best deal possible for the SA (of which the club is a

member) versus any responsibilities to the outside organization;(d) individuals from outside organizations identifying themselves as having roles with the SA clubs when dealing with students, university officials, and the public; and (e) outside organizations receiving benefits that are typically reserved for UB/SA student organizations, and using SA clubs as a pass-through or foothold to obtain those benefits.  Many of these broader concerns were well understood.

34.     The SA Senate's adopted policy equally (and neutrally) affected a broad array of viewpoints.  We included exceptions for academic, athletic, and engineering clubs because those clubs either function or compete interscholastically in a manner that sometimes requires them to be a chapter of or otherwise part of an outside organization.

35.     Despite Plaintiffs' allegations, the Policy did not:

a.  Prevent any affected club from continuing to exist, so long as they ceased being legally structured as "a chapter of otherwise part of any outside organization";
b.  Prevent any club from saying anything;
c.  Prevent any club from espousing any viewpoint;
d.  Prevent any club from bringing any speaker;
e.  Prevent any club from communicating with anyone;
f.  Prevent any club from working with any outside organization towards shared common goals;
g.  Prevent any club from listening to advice from anyone;
h.  Prevent any club from hosting any event or putting on any programming; or
i.  Prevent any club from attending any event.

The Policy simply prevented SA clubs from legally being structurally part of another organization.

36.     We felt very strongly—and continue to feel very strongly—that the amended policy was reasonable and viewpoint neutral.  We did not discriminate against any SA club based on its viewpoint.  This list of affected clubs speaks for itself.

**SA Repeals and Replaces the Policy before It was Ever Implemented**

        37.    The SA Senate subsequently adopted Senate Resolution 2022-2023 - #32, which delayed the effective date of the amended policy until June 1, 2023.

        38.    SA delayed implementing the amended policy after hearing student feedback.  During this delay, SA also considered whether a new policy could better address the SA Senate's concerns underlying its adoption of the amended policy.

        39.    Even after the June 1, 2023 deadline passed, to my knowledge (after investigating) SA took no steps to implement the amended policy, nor did SA ask UB or its representatives to take any steps to implement the amended policy.  For example, SA did not actually derecognize any club (including UB YAF) that did not comply with the amended policy, and continued to list and identify all non-complying clubs (including UB YAF) on the SA website as a SA club.  Nor did SA instruct UB to do so.  SA also did not cut budgeted funding from any of the non-complying SA clubs (including UB YAF).  Nor did SA instruct UB to do so.  And SA did not deny any of the non-complying clubs (including UB YAF) the use of any UB facilities or SA resources.  Nor did SA instruct UB to do so.  SA is unaware of any action taken by UB or its representatives with respect to the amended policy.

        40.    On July 3, 2023, the SA Executive Committee—which has the authority to act on behalf of the entire SA Senate under certain circumstances that were present here—met and adopted two Executive Committee Resolutions - 2022-2023 - #6 and 2022-2023 - #7.  *See* Doc. 21-3.

        41.    Under Executive Committee Resolution 2022-2023 - #7, the SA Executive Committee expressly "repealed" the amended policy (the "now-repealed policy") as well as the other resolution extending its implementation deadline, and they were "deemed to never have

taken effect, as they were never implemented." *Id.* It also adopted a "different requirement,"

which amended the SA "Club Officers Policy" to state:

> Commencing 9/11/2023, prior to taking any act as a SA club
> officer-including but not limited to the use of SA club funds,
> facilities, or other resources-a student officer of a SA club must
> sign the attached document, entitled "Acknowledgment of Club
> Officer Responsibilities.""

The "Acknowledgement of Club Officer Responsibilities" states:

> I, as an officer of a University at Buffalo Student Association Inc.
> ('"SA"') club, hereby acknowledge that it is my responsibility to
> review all State University of New York ('"SUNY"), University at
> Buffalo ("UB") and SA policies and rules applicable to SA clubs
> and their officers and members. All SA policies can be viewed at
> sa.buffalo.edu. It is also my responsibility to regularly view the SA
> website to ensure that I am aware of any update(s) to SA policies.
>
> I hereby certify that I will not violate any of the SUNY, UB, or SA
> policies or rules applicable to SA clubs. Without limitation or
> waiver of any others, I acknowledge the following rules and/or
> policies in particular:
>
> 1. No SA club may be a separate legal entity from SA; SA-
>    recognized clubs may not have any accounts or financial
>    activities outside of SA.
>
> 2. SA club officers may not sign contracts or otherwise enter
>    into agreements on behalf of any SA club.
>
> 3. All purchases shall strive to obtain the best value for goods
>    and services; this means that when negotiating any
>    potential deal between SA and a vendor related to club
>    business, it is the club officer's responsibility to represent
>    the interests of SA and the club, not the vendor.
>
> 4. No agreement between SA ( or the club) and any outside
>    organization shall violate, or compel or allow any SA club
>    to violate, any SA, UB or SUNY policy or rule.
>
> 5. The SA Encumbrance and Expenditure Policy must be
>    followed with respect to all expenditures; trade agreements
>    are not permitted.

      6.   All sales and ticket give-aways, including but not limited to, event tickets, merchandise, or bake sales must follow SA's Ticketing and Merchandise Sales Policy.

I shall be responsible for my violation of this agreement.

*Id.*

42.      SA Executive Committee Resolution 2022-2023 - #6 extends the deadline until July 18, 2023 for all SA recognized clubs to complete Phase One of their annual registration process. *Id.*

43.      In sum, after investigating, SA has not identified any action whatsoever that was ever taken by SA, pursuant to the now-repealed policy, to deny any existing clubs either recognition or any of the benefits of recognition.  This includes Plaintiff UB YAF and its members.

44.      And because the now-repealed policy no longer exist—in effect, reinstating the SA Recognition Policy that was first established in March 2022—and because the now-repealed policy was replaced with a different requirement, SA will take no action whatsoever, pursuant to the now-repealed policy, to deny either recognition or any of the benefits of recognition to any clubs that fail to comply with that now-repealed policy.

I declare this under penalty of perjury that the forgoing is true and correct.

Dated: September **6** , 2023.

                                                 Becky Paul Odionhin

- 13 -