UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNIVERSITY AT BUFFALO YOUNG AMERICANS
FOR FREEDOM, *et al.*,

                Plaintiffs,

      v.                                     Civil No.: 1:23-cv-00480-LJV

UNIVERSITY AT BUFFALO STUDENT
ASSOCIATION INC., *et al.*,

                Defendants.        ORAL ARGUMENT REQUESTED

_____

## DEFENDANT UNIVERSITY AT BUFFALO STUDENT ASSOCIATION INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS <u>THE SECOND AMENDED VERIFIED COMPLAINT</u>

**HODGSON RUSS LLP**
*Attorneys for Defendant University at Buffalo Student Association Inc.*
Aaron M. Saykin
Ryan K. Cummings
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
Telephone:  716.856.4000

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS .......................................................................2

    A.    In 2015, SA's By-Laws Established That SA Clubs are Not Separate Entities, Which Plaintiff UB YAF Contractually Agreed to Follow in 2016. ......................3

    B.    In Spring 2023, SA Changes its Club Recognition Policy But Then Reconsiders and Repeals the Change Before It is Ever Implemented...................5

    C.    Plaintiffs Commence This Lawsuit and Decide to Continue It Even After the Policy at Issue was Repealed. ...........................................................7

ARGUMENT ...................................................................................8

POINT I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS INVOLVING THE REPEALED POLICY ...................9

    A.    The Standard of Review under Rule 12(b)(1)........................................9

    B.    The Court Lacks Jurisdiction over All Claims, or Portions of Them, Based on the Now-Repealed Policy Involving Outside Organizations. ...............................10

        1.    All claims involving the Repealed Recognition Policy are moot. .............10

        2.    Plaintiffs were never harmed by the repealed policy................................12

POINT II.    PLAINTIFFS FAIL TO STATE A CLAIM ......................................13

    A.    The Standard of Review under Rule 12(b)(6)........................................14

    B.    The Challenged SA Policies are Constitutional on Their Face...........................14

        1.    The standard for analyzing First Amendment claims. ...............................14

        2.    UB SA is a limited public forum. ...........................................................15

        3.    The challenged SA policies are viewpoint neutral and reasonable...........16

        4.    Plaintiffs' unconstitutional conditions doctrine claim is without merit. ....19

        5.    Plaintiffs' allegation of "unbridled discretion" is without merit. ..............21

        6.    The Repealed Recognition Policy is constitutional. .................................22

    C.    Plaintiffs Fail to State a Claim for As-Applied Constitutional Violations. ...........23

CONCLUSION..................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Albert v. City of New York*,
  No. 17-cv-04315, 2018 WL 5084824 (E.D.N.Y. Oct. 18, 2018) ................................................ 2

*Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.*,
  436 F.3d 82 (2d Cir. 2006) ......................................................................................................... 9

*American Freedom Defense Initiative v. Metropolitan Transp. Authority*,
  880 F.Supp.2d 456 (S.D.N.Y. 2012) ................................................................................... 15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 14

*ASU Students For Life v. Crow*,
  357 Fed.Appx. 156 (9th Cir. 2009) ........................................................................................... 11

*Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*,
  529 U.S. 217, 233 (2000) .......................................................................................................... 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) ................................................................................................................. 14

*Boy Scouts of America v. Wyman*,
  335 F.3d 80 (2d Cir. 2003) ....................................................................................................... 19

*Burgin v. Brown*,
  No. 15-cv-201S, 2018 WL 1932598 (W.D.N.Y. Apr. 24, 2018) ................................................. 9

*Carter v. HealthPort Technologies, LLC*,
  822 F.3d 47 (2d Cir. 2016) ......................................................................................................... 9

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*,
  561 U.S. 661 (2010) ................................................................................................ 14, 15, 16, 17

*City of Lakewood v. Plain Dealer Publishing Co.*,
  486 U.S. 750 (1988) ................................................................................................................. 21

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) ................................................................................................................. 10

*Coll. Standard Magazine v. Student Ass'n of State Univ. of New York at Albany*,
  610 F.3d 33 (2d Cir. 2010) ............................................................................................. 1, 11, 21

*Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*,
   473 U.S. 788 (1985) ............................................................................................ 16

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ............................................................................... 14

*Doe No. 1 v. Putnam County*,
   344 F.Supp.3d 518 (S.D.N.Y. 2018) .................................................................... 9

*Farrar v. Hobby*,
   506 U.S. 103 (1992) .................................................................................... 11, 12

*FCC v. League of Women Voters of Calif.*,
   468 U.S. 364 (1984) ............................................................................................ 20

*Field Day, LLC v. Cnty. of Suffolk*,
   463 F.3d 167 (2d Cir. 2006) ............................................................................... 23

*Goodwin v. C.N.J., Inc.*,
   436 F.3d 44 (1st Cir. 2006) ................................................................................ 12

*Granite State Outdoor Advertising, Inc. v. Town of Orange, Connecticut*,
   303 F.3d 450  (2d Cir. 2002) .............................................................................. 10

*Hansen v. Town of Smithtown*,
   342 F.Supp.3d 275, (E.D.N.Y. 2018) ................................................................. 15

*Hershey v. Goldstein*,
   938 F.Supp.2d 491 (S.D.N.Y. 2013) ............................................................ 15, 16

*Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity,
   AFL CIO v. City of New York Department of Parks & R*ecreation,
   311 F.3d 534 (2d Cir. 2002) .......................................................................... 15, 17

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................ 22

*Johnson v. Perry*,
   859 F.3d 156 (2d Cir. 2017) ............................................................................... 15

*Katz v. Donna Karan Company, L.L.C.*,
   872 F.3d 114 (2d Cir. 2017) ................................................................................. 9

*Kendall v. Caliber Home Loans, Inc.*,
   198 F.Supp.3d 168 (E.D.N.Y. 2016) ................................................................... 14

*Klein on behalf of Qlik Technologies, Inc. v. Qlik Technologies, Inc.*,
   906 F.3d 215 (2d Cir. 2018) ................................................................................. 9

*Kuerbitz v. Meisner*,
No. 16-12736, 2017 WL 4161111 (E.D. Mich. Sept. 20, 2017), *aff'd*, 2018 WL 5310762 (6th Cir. July 11, 2018) .................................................................................................. 17

*Lamb's Chapel v. Center Moriches Union Free School Dist.*,
508 U.S. 384 (1993) ..................................................................................................... 16

*Lang v. Town of Tusten*,
No. 14 CV 4136, 2015 WL 5460110 (S.D.N.Y. Aug. 6, 2015) .................................. 23

*Lewis v. Continental Bank Corp.*,
494 U.S. 472 (1990) ..................................................................................................... 12

*Los Angeles County v. Davis*,
440 U.S. 625 (1979) ..................................................................................................... 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................... 12

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ........................................................................................... 9

*Marcavage v. City of New York*,
689 F.3d 98 (2d Cir. 2012) ........................................................................................... 11

*Marshall v. New York State Public High School Athletic Association, Inc.*,
374 F.Supp.3d 276 (W.D.N.Y. 2019) ............................................................................. 9

*McCullen v. Coakley*,
573 U.S. 464 (2004) ..................................................................................................... 23

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*,
466 U.S. 789 (1984) ..................................................................................................... 23

*Miller v. Goggin*,
No. 22-3329, 2023 WL 3294832 (E.D. Pa. May 5, 2023) ........................................... 25

*Natural Resources Defense Council v. Johnson*,
461 F.3d 164 (2d Cir. 2006) ......................................................................................... 12

*New York Civil Liberties Union v. Grandeau*,
528 F.3d 122 ................................................................................................................. 13

*New York State Federation of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Com'n*, 272 F.3d 154 (2d Cir. 2001) ......................................................................... 12

*Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist.*,
583 F.Supp.2d 422 (W.D.N.Y. 2008) ........................................................................... 10

v

*Perry Educ. Ass'n, v. Perry Loc. Educators' Ass'n*,
   460 U.S. 37 (1983) ........................................................................................... 17

*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009) ......................................................................................... 16

*R.O. ex rel. Ochshorn v. Ithaca City School Dist.*,
   645 F.3d 533 (2d. Cir. 2011), *cert. denied*, 132 S. Ct. 422 (2011) ................... 15, 16

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ......................................................................................... 15

*Rock for Life-UMBC v. Hrabowski*,
   411 Fed.Appx. 541 (4th Cir. 2010) .................................................................. 11

*Rosenberger v. Rector and Visitors of University of Virginia*,
   515 U.S. 819 (1995) ............................................................................. 16, 17, 23

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ............................................................................... 5

*Russman v. Board of Educ. of Enlarged City School Dist. of City of Watervliet*,
   260 F.3d 114 (2d Cir. 2001) ............................................................................. 10

*Rust v. Sullivan*,
   500 U.S. 173 (1991) ......................................................................................... 20

*Shipping Financial Services Corp. v. Drakos*,
   140 F.3d 129 (2d Cir. 1998) ............................................................................. 12

*Starr v. Sony BMG Music Entertainment*,
   592 F.3d 314 (2d Cir. 2010) ............................................................................. 14

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ........................................................................................... 12

*Tyler v. City of Kingston*,
   74 F.4th 57 (2d Cir. 2023) ............................................................................... 17

*Tyler v. City of Kingston*,
   593 F.Supp.3d 27 (N.D.N.Y. 2022) ............................................................ 23, 24

*Welch v. EZLoan Auto Sales*,
   No. 18-cv-01168, 2019 WL 2515182 (W.D.N.Y. June 18, 2019) ........................ 9

*Wisconsin v. Mitchell*,
   508 U.S. 476 (1993) ......................................................................................... 19

vi

*Young America's Foundation v. Kaler*,
   14 F.4th 879 (8th Cir. 2021) ........................................................................... 11

**Federal Statutes**

42 U.S.C. § 1983 .................................................................................................... 1

U.S. Const. art. III ............................................................................................. 9, 10

**Federal Rules**

Fed. R. Civ. P. 8(a) .............................................................................................. 14

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 8, 9

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................. 8, 14

## PRELIMINARY STATEMENT

Plaintiffs originally commenced this 42 U.S.C. § 1983 action alleging First Amendment violations based on a student-club policy that never took effect, never harmed them, and was repealed and replaced shortly after this complaint was filed.  This case should have ended there. Instead, Plaintiffs—grasping for a reason to continue this litigation—have twice amended their complaint, shifting their attention to older policies of the State University of New York ("SUNY"), the University at Buffalo ("UB"), and Defendant the University at Buffalo Student Association Inc. ("SA").  These policies have existed for years and apply to *all* clubs equally.

The specific policies at issue require:  (a) *all* student clubs to be SA-member clubs, as opposed to independent organizations, and (b) SA to review and approve in advance *all* contracts for *all* SA clubs.  These are content neutral policies that hardly lend themselves to cries of First Amendment violations.  They were adopted to ensure club compliance with SUNY and UB policies, protect student fees, provide financial controls, and limit club liability, among other things.  Plaintiff UB Young Americans for Freedom ("UB YAF") followed these policies for seven years without complaint and did not even bother to challenge them in the original complaint.  But UB YAF now claims that the challenged policies give SA "unbridled discretion" to discriminate against it.  Not so.  The policies are subject to SA's By-Laws, which expressly prohibit SA employees and officers from engaging in any kind of discrimination, including based on "political viewpoints."  Such a requirement for viewpoint neutrality defeats a claim of unbridled discretion. *See Coll. Standard Magazine v. Student Ass'n of State Univ. of New York at Albany*, 610 F.3d 33, 33-35 (2d Cir. 2010) (per curiam) ("The SA amended its constitution . . . to include regulations on funding that explicitly require viewpoint neutrality").

With no viable facial challenge to the policies, Plaintiffs include conclusory allegations of "as-applied" challenges.  Plaintiffs essentially allege that SA did not approve one of their contracts

quickly enough for their liking.  But to state such a claim, Plaintiffs must plausibly allege that these policies were enforced in a discriminatory manner against them *in contrast to others*.  There are no such allegations in the Second Amended Complaint ("SAC").  Plaintiffs instead intend to use discovery in hope of finding some, with their counsel admitting to the UB student newspaper: "We have yet to go through discovery and see how other contracts have been handled, but whether that's through mismanagement or through malfeasance, neither one is acceptable."[1]  "A plaintiff must allege sufficient facts to open the doors to discovery; she cannot rely on a legal conclusion— unsupported by any facts—to state a claim."  *Albert v. City of New York*, No. 17-cv-04315, 2018 WL 5084824, at *13 (E.D.N.Y. Oct. 18, 2018).  No such facts are alleged here.

Instead, Plaintiffs attempt a sleight of hand.  They rely upon the now-repealed policy— their challenge to which is moot and by which they were never harmed—as evidence of purportedly disparate treatment under the other challenged policies.  But these are *different* policies.  An as-applied claim challenging a policy requires allegations of discriminatory enforcement of *that policy*.  No such conduct is alleged here.  Dismissal is required.

## STATEMENT OF FACTS[2]

Defendant SA is the undergraduate student government at UB, which is a SUNY school. It is comprised of and run by elected student representatives.  SA is a not-for-profit corporation that provides programming and services to UB students, including allowing students to form and operate clubs as programs of SA.  It acts as one of several "Recognizing Agents" of UB by

---

[1]  Sol Hauser, *YAF sues SA and UB officials for First Amendment violations*, THE SPECTRUM, Aug. 31, 2023, *available at* https://www.ubspectrum.com/article/2023/08/yaf-sues-ub-student-association (last visited Dec. 18, 2023).

[2]  Additional facts supporting Defendant's motion under Rule 12(b)(1) are included in the Declaration of Becky Paul Odionhin, dated September 6, 2023 ("Paul Odionhin Decl.").

administrating and overseeing UB student government, allocating funding using student activity

fees, and providing students with services and access to events.  *See* Paul Odionhin Decl., at ¶¶ 3,

9; Doc. 25-1, at 12-13; *see also* Doc. 25-5.  Individual defendants Brian Hamluk, Tomás Aguirre,

and Phyllis Floro are administrators of Student Life at UB.  Plaintiff UB YAF is a SA club at UB,

and individual plaintiffs Justin Hill, Jacob Cassidy, and Amelia Slusarz are officers of UB YAF.

*See* Second Amended Complaint ("SAC"), Doc. 37, ¶¶ 17, 24-27, 33-39.

**A.      In 2015, SA's By-Laws Established That SA Clubs are Not Separate Entities,
         Which Plaintiff UB YAF Contractually Agreed to Follow in 2016.**

SA and its officers are governed by SA's By-Laws.  The current entity known as SA was

incorporated in 2017.  SA's By-Laws are based on the Constitution of the predecessor

undergraduate student government at UB (which was also called the "Student Association" or

"SA").  In April of 2015—before UB YAF existed at SA—the SA Constitution was amended to

include a provision that exists today in the By-Laws.  The amendment prohibited SA clubs from

existing as separate legal entities.  Paul Odionhin Decl., Ex. A.  And it is found today in Article

VII, Section 7.04(d) of the By-Laws (the "Legal Status Provision"), which provides:

> A club is a group of Members of SA acting as a group of
> Members; each club is part of SA. No club shall be a separate legal
> entity from SA. Recognized clubs may not have any accounts or
> financial activities outside of SA. Recognized clubs may not enter
> into contracts, take legal actions, commence litigation or undertake
> legal obligations; only SA itself may enter into contracts, take legal
> actions, commence litigation and/or undertake legal obligations.

SAC., Ex. 6.  The Legal Status Provision is reflected in other existing SA policies.  SA, for

example, also established a more formal "Contracts Policy" which, among other things, requires

SA and its officers—consistent with its By-Laws—to review and approve in advance all contracts

involving SA clubs.  *See* SAC, Ex. 8.  The Contracts Policy and related guidance set forth the

specific criteria, terms, and procedures for SA's review.

3

The Contracts Policy—along with every other SA Policy and By-Law—is subject to Article XI(a), which is a "Non-Discrimination" mandate embedded in the By-Laws.  It states:

> ***All SA officials, bodies and clubs shall make determinations*** regarding employment and provide access to services, programs, and activities ***without regard to*** an individual's race, color, national origin, sex, religion, age, disability, gender, pregnancy, gender identity, sexual orientation, predisposing genetic characteristics, marital status, veteran status, military status, domestic violence victim status, ex-offender status or ***political viewpoints***.

SAC, Ex. 6 (emphasis added).  In short, SA's By-Laws prohibits any SA policy from being administered in a manner that takes into account, among other things, "political viewpoints." Section 7.04(c) of the By-Laws includes an identical prohibition for all "funding decisions."  *Id.*

SA also has policies and processes regarding the recognition of new clubs.  In 2016, UB YAF sought and obtained club recognition.  At the time, UB YAF also requested and received contractual approval from the predecessor SA, for a Chapter Agreement with UB YAF's affiliated national organization, Young America's Foundation (the "Foundation").  The December 2016 Chapter Agreement was signed by UB YAF,[3] which agreed to the following term, consistent with the By-Laws:

> Any SA club (including the Chapter, if the Chapter ultimately attains recognition as an SA club) is a group of Members of SA acting as a group of Members; clubs shall not be separate legal entities from SA; recognized SA clubs may not have any accounts or financial activities outside of SA; SA recognized clubs may not enter into contracts, take legal actions, commence litigation or undertake legal obligations; only SA itself may enter into contracts, take legal actions, commence litigation and/or undertake legal obligations with respect to any SA club;

---

[3]  This contract was also signed by the student officers of student government.  SA has accordingly assumed the contract's obligations and rights.

Paul Odionhin Decl., Ex. C.[4]  Consistent with its By-Laws, SA later adopted a more detailed New Club Recognition Policy (the "SA Recognition Policy") that sets forth the criteria that each student group must meet in order to gain status as a SA club.  *See* SAC., Ex. 7.

UB YAF remains a recognized SA club.  In 2023, UB YAF submitted a contract to SA to invite speaker Michael Knowles to the UB campus.  UB YAF had already signed the contract, in violation of SA's By-Laws and Contracts Policy.  SA advised UB YAF of the violation and asked UB YAF to utilize the contract form SA had used with the Foundation multiple times in the past, adjusted to reflect the specific details of the proposed engagement and to acknowledge that the document signed by UB YAF's then-President was not binding on SA or the club.  The Foundation attempted to change the terms of the agreement, which SA did not agree to.  Once the Foundation agreed to utilize a contract similar to the prior SA contract forms used in the past, SA reviewed the agreement, signed it, and submitted it to UB YAF before the speaker event.  The event took place at UB on March 9, 2023, as planned.  Notably, despite some requests from students, the public, and the media to cancel the event due to the speaker's viewpoints, SA and UB declined to do so.  *See* Paul Odionhin Decl., Doc. 24-1, ¶¶ 22-24.

**B.     In Spring 2023, SA Changes its Club Recognition Policy But Then Reconsiders and Repeals the Change Before It is Ever Implemented.**

On March 27, 2023, SA voted to amend the SA Recognition Policy in a manner that prohibited SA clubs from being a chapter of or otherwise part of an outside organization, with limited exceptions for academic, engineering, and athletic clubs because they engage in "inter-collegiate competition" or functions that often require them to be part of an outside organization.

---

[4]  Paragraph 83 of the SAC expressly references and relies on this Chapter Agreement, thereby incorporating it by reference.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (courts may consider documents incorporated by reference or integral to the complaint).

*See* SAC, Ex. 3.  Had the policy actually been implemented, it would have affected a diverse group of existing SA clubs, including:  Active Minds (focusing on mental health issues); Amnesty International; BASIC (Brothers and Sisters in Christ); Circle K; College Democrats; IGNITE (the next generation of women leaders); It's On Us (sexual assault prevention); Model UN; Pre-Law Chapter of the National Black Law Students Association; Powerful United Ladies Striving to Elevate (PULSE); ROTC Club; Turning Point USA; UNICEF Unite Club; and UB YAF.  *See* Paul Odionhin Decl., Doc. 24-1,¶ 29.  Under the policy, these clubs could continue as recognized SA clubs so long as they ceased being chapters of outside organizations.

SA adopted the policy because, among other things, it had become increasingly concerned that the outside organizations that the student clubs were part of had rules, policies, or practices that conflicted with those of SUNY, UB, and/or SA.  SA was concerned that, in some cases, the student club officers may not even be aware of the conflict, or if there was an awareness, the club officers could face pressure to follow the outside organization's rules, policies, or practices.  *See* SAC, Ex. 5 p.5-6; *see also* Paul Odionhin Decl., Doc. 24-1, ¶¶ 30-34.

This change to the policy did not take effect immediately.  And, indeed, it evoked significant feedback from students.  SA repeatedly delayed its implementation and extended its effective date up to and including June 1, 2023 while SA continued to solicit feedback.  But even after June 1, neither SA nor UB took any steps to implement it and deny benefits to the affected clubs, notwithstanding the policy language referring to "automatic de-recognition" for SA clubs that did not comply.  On July 3, 2023, SA expressly repealed this change to the SA Recognition Policy, which was "deemed to never have taken effect, as they were never implemented."  SAC, Ex. 5.  No SA club was de-recognized pursuant to it.  Nor was any club denied any rights or benefits associated with being a SA club.  This includes UB YAF.  *See* Paul Odionhin Decl., Doc.

24-1, ¶¶ 37-39, 43.

SA also replaced the repealed policy with an amendment to the Club Officers Policy.  The policy requires all club officers to sign an "Acknowledgment of Club Officer's Responsibilities." This Acknowledgement Form requires all club officers to verify in writing that they are aware of UB's, SUNY's, and SA's policies and will follow them.  SA's adoption of this amendment was its "attempt to address an underlying concern reflected in the [repealed part of the] Policy but in a different manner."  SAC, Ex. 5 p. 5-7.

**C.    Plaintiffs Commence This Lawsuit and Decide to Continue It Even After the Policy at Issue was Repealed.**

On June 1, 2023, Plaintiffs commenced this action challenging the now-repealed policy prohibiting SA clubs from being a chapter or otherwise part of outside organizations.  *See* Compl., Doc. 1.  The complaint did not challenge any other SA policy.  *See id.* On June 26, Plaintiffs moved for a preliminary injunction against the policy.  *See* Doc. 15.  SA promptly notified Plaintiffs of the July 3 repeal.  *See* Declaration of Aaron M. Saykin, dated January 3, 2024 ("Saykin Decl."), Ex. A.  Plaintiffs withdrew their injunction motion as moot.  *See* Doc. 19.

Instead of withdrawing their lawsuit, Plaintiffs, on July 26, filed an amended complaint still challenging the Constitutionality of the now-repealed (and never-implemented) policy.  *See* First Amended Compl., Doc. 21.  They also added claims challenging older SA Policies, including the 2015 prohibition against SA clubs being independent legal entities (which Plaintiffs call the "Legal Status Ban")—which applies to *all* clubs—and the related requirement under the Contracts Policy that SA and its officers must review and approve *all* contracts involving *all* SA clubs because the clubs exist as part of the SA corporation.  The amended complaint asserted three overlapping causes of action, alleging First Amendment violations of the freedom of assembly,

7

speech, and expressive association—all of which appear to be based largely on the same facts.  *See generally* First Amended Compl.; Doc. 21.

On September 8, 2023, SA and the UB Defendants filed motions to dismiss the First Amended Complaint.  Plaintiffs did not directly respond to those motions.  Instead, on October 6, 2023, Plaintiffs filed a Rule 15(a) motion seeking leave to amend the First Amended Complaint, which the Court granted.  *See* Doc. 29; Text Order, Doc. 30.  The SAC sets forth additional factual allegations and claims, all of which are based on the same policies.  It also alters the claim alleging a violation of the First Amendment right to expressive association by dividing it into two types: restricting association (as previously alleged) and compelling association (newly alleged).  And it adds new claims alleging a violation of the First Amendment right to free speech by compelling speech, and a violation of something known as the "unconstitutional conditions doctrine."  It also adds factual allegations which largely pertain to the policy that SA repealed and replaced in July.

## **ARGUMENT**

The Court should dismiss all portions of the SAC related to the repealed policy, under Fed. R. Civ. P. 12(b)(1), as moot and for lack of injury.  And because Plaintiffs suffered no injury from it, it cannot form the basis of any of their claims.  The Court also should dismiss all claims pursuant to Rule 12(b)(6) for failure to state a claim.  The challenged policies, which have existed for years, are Constitutional, both facially and as applied, and Plaintiffs have failed to state a plausible claim against them.[5]

---

[5] SA also joins, and incorporates by reference, the applicable arguments raised by its Co-Defendants, who are represented by the Office of the New York State Attorney General.

**POINT I.**
**THE COURT LACKS SUBJECT MATTER JURISDICTION**
**OVER PLAINTIFFS' CLAIMS INVOLVING THE REPEALED POLICY**

**A.**    **The Standard of Review under Rule 12(b)(1).**

A complaint "is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A Rule 12(b)(1) challenge "may be either facial or fact-based." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). "Affidavits or other materials" are properly considered on such a motion. *Welch v. EZLoan Auto Sales*, No. 18-cv-01168, 2019 WL 2515182, at *2 (W.D.N.Y. June 18, 2019); *see Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). Where, as here, evidence beyond the pleadings has been proffered to challenge subject matter jurisdiction, "a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial." *Doe No. 1 v. Putnam County*, 344 F.Supp.3d 518, 526 (S.D.N.Y. 2018). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

Article III, Section 2 of the U.S. Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." This limitation "manifests in three distinct legal inquiries: standing, mootness, and ripeness." *Klein on behalf of Qlik Technologies, Inc. v. Qlik Technologies, Inc.*, 906 F.3d 215, 221 (2d Cir. 2018). Standing is a jurisdictional question adjudicated under Rule 12(b)(1). *Burgin v. Brown*, No. 15-cv-201S, 2018 WL 1932598, at *4 (W.D.N.Y. Apr. 24, 2018); *Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n. 6 (2d Cir. 2006). The same is true for mootness. *See Marshall v. New York State Public High School Athletic Association, Inc.*, 374 F.Supp.3d 276, 284 (W.D.N.Y. 2019).

**B.      The Court Lacks Jurisdiction over All Claims, or Portions of Them,
Based on the Now-Repealed Policy Involving Outside Organizations.**

Portions of Plaintiffs' claims include, incorporate, and rely on allegations regarding the now-repealed, never-implemented policy prohibiting SA clubs from being a chapter or otherwise part of outside organizations (the Repealed Recognition Policy). The Court should dismiss those portions of the claims as moot, for lack of an injury, or both. And because Plaintiffs were never harmed by the repealed policy, it cannot form the basis of any of their claims.

**1.      All claims involving the Repealed Recognition Policy are moot.**

The mootness doctrine is rooted in the "case or controversy" requirement of Article III of the Constitution, which describes "the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist.*, 583 F.Supp.2d 422, 428 (W.D.N.Y. 2008); *Russman v. Board of Educ. of Enlarged City School Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001). "A case is moot, and accordingly the federal courts have no jurisdiction over it, when 'the parties lack a legally cognizable interest in the outcome.'" *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). The voluntary cessation of allegedly illegal conduct usually will render a case moot "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Granite State Outdoor Advertising, Inc. v. Town of Orange, Connecticut*, 303 F.3d 450 451 (2d Cir. 2002) (per curiam) (internal quotation marks and citation omitted). A defendant's voluntary cessation of a challenged practice is "'an important factor bearing on the question whether a court should exercise its power' to entertain a request for injunctive relief or declare it moot." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

Here, SA repealed the challenged policy and implemented a different requirement, namely the Acknowledgement Form, as an amendment to the Club Officers Policy, and it became effective on July 3, 2023. This different requirement specifically removes the conduct that Plaintiffs complain of, and the now-repealed policy prohibiting SA clubs from being a chapter or otherwise part of an outside organization was "repealed and deemed to never have taken effect, as [it] w[as] never implemented." SAC, Ex. 5. That leaves no live controversy between the parties. And with a different requirement in place to address the same concerns that SA sought to address with the Repealed Recognition Policy, there is no reasonable expectation of recurrence.

Myriad appellate decisions—one of which involves the same national organization affiliated with UB YAF—mandate this outcome. *See e.g.*, *Coll. Standard Magazine*, 610 F.3d at 35 (dismissing First Amendment claim as moot); *Young America's Foundation v. Kaler*, 14 F.4th 879, 886 (8th Cir. 2021) (finding mootness, holding the new policy does not "merely repackage the [Repealed Recognition Policy] under a new banner."); *Rock for Life-UMBC v. Hrabowski*, 411 Fed.Appx. 541, 550 (4th Cir. 2010) (challenge to university policy was moot because, "[i]f the policy was indeed facially overbroad, UMBC's permanent revisions cured this defect and removed any threat of content-based enforcement in the future"); *ASU Students For Life v. Crow*, 357 Fed.Appx. 156, 157-58 (9th Cir. 2009) (finding mootness as "[i]t is 'absolutely clear' that ASU will not revert to its [previous] policy, . . ., because, among other reasons, Appellees stated in open court that ASU will not return to that policy . . . .").

Plaintiffs face no threat of future harm from the different requirement that is now in place to justify a prospective relief, such as a declaratory judgment or an injunction. *See Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). Plaintiffs request an award of costs and attorneys' fees, which are available only to a prevailing party. *See Farrar v. Hobby*, 506 U.S. 103,

109 (1992) ("Congress intended to permit the . . . award of counsel fees only when a party has prevailed on the merits").  But Plaintiffs' "interest in a possible award of attorneys' fees is not enough to create a justiciable case or controversy if none exists on the merits of the underlying claim." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 51 (1st Cir. 2006) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990)); *accord Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) ("The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself."); *New York State Federation of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Com'n*, 272 F.3d 154, 159 (2d Cir. 2001) (similar).

**2.    Plaintiffs were never harmed by the repealed policy.**

Plaintiffs also never suffered an injury in fact from the Repealed Recognition Policy.  To establish Article III standing, a plaintiff must demonstrate: (1) an "injury in fact," (2) a "causal connection" between that injury and the complained-of conduct, and (3) a likelihood "that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).  An injury in fact requires an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal quotation marks omitted).  The plaintiff "bears the burden of establishing these elements," which are "not mere pleading requirements."  *Id.* at 561.  Although a court "must take all facts alleged in the complaint as true and draw all reasonable inference in favor of plaintiff[s]," *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006), "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inference favorable to the party asserting it."  *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (affirming dismissal).

12

While Plaintiffs allege that the Repealed Recognition Policy "automatically derecognized UB [YAF]," SAC, Doc. 37, ¶ 86, Defendants provided proof that the Repealed Recognition Policy was never actually implemented or enforced against Plaintiffs.  After the deadline to come into compliance with the now-repealed policy passed, SA continued to list and identify the non-complying SA clubs, including UB YAF, on the SA website as SA clubs.  *See* Paul Odionhin Decl., Doc. 24-1, ¶ 39.  Further, SA did not cut budgeted funding from the non-complying SA clubs; nor did SA deny use of any UB facilities or SA resources by the non-complying SA clubs. *Id.*  While Plaintiffs allege that, "without these benefits" afforded to SA clubs, UB YAF "*could not* reserve" space on campus for weekly meetings or guest speakers, SAC, Doc. 37, ¶ 86 (emphasis added), Plaintiffs do not actually state that they were denied such benefits or resources. Their pleadings instead merely presume that they "could not" have obtained them as a result of the repealed policy.  That is not the same thing as an actual injury.[6]

### POINT II.
### PLAINTIFFS FAIL TO STATE A CLAIM

Plaintiffs allege that the Legal Status Provision of SA's By-Laws and related policies (the Contracts Policy, the SA Recognition Policy, the Club Officers Policy) violate their First Amendment rights of:  (a) free association by restricting association (claim one) and by compelling association with other SA clubs (claim two); (b) free speech by compelling speech (claim three) and by engaging in content and viewpoint discrimination (claim four); and (c) free assembly (claim five).  Additionally, Plaintiffs allege the policies violate their right to be free from unconstitutional conditions (claim six).  These policies are Constitutional.  They are viewpoint neutral, applying to

---

[6] For essentially the same reasons already described herein, Plaintiffs' claims against the Repealed Recognition Policy never became ripe.  *See New York Civil Liberties Union v. Grandeau,* 528 F.3d 122, 130 n. 8 (2d Cir. 2008).

*all* clubs and *all* club officers equally.  Such regulation is permitted in a limited public forum, such as a college campus, so long as it is reasonable, which is the case here.  Plaintiffs similarly fail to plead an as-applied challenge to the policies.

**A.**   **The Standard of Review under Rule 12(b)(6).**

Under Rule 12(b)(6), courts must apply a "plausibility standard," which is guided by "[t]wo working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, although a court must accept all of the complaint's factual allegations as true, this rule is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss.  *Id.* at 679.  Thus, "'[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct'. . . dismissal is appropriate."  *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  And although under Fed. R. Civ. P. 8(a), a complaint is not required to allege "'detailed factual allegations,' the Rule demands 'more than labels and conclusions' and 'a formulaic recitation of the elements of a cause of action.'"  *Kendall v. Caliber Home Loans, Inc.*, 198 F.Supp.3d 168, 170 (E.D.N.Y. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  In making its ruling, the Court may consider documents incorporated by reference in the complaint and documents integral to the complaint because the complaint relies heavily upon them.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

**B.**   **The Challenged SA Policies are Constitutional on Their Face.**

**1.**   **The standard for analyzing First Amendment claims.**

Claims alleging violations of the First Amendment's freedoms of assembly and expressive association are analyzed under the same framework as a freedom of speech claim.  *See Christian*

*Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 681 (2010) ("The same ground rules must govern both speech and association challenges in the limited-public-forum context . . ."); *Johnson v. Perry*, 859 F.3d 156, 171-72 (2d Cir. 2017) (". . . the same analytical framework applies whether the First Amendment right being exercised is speech. . . or other 'expressive activity' such as assembly"); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). Thus, the same analysis applies to all of Plaintiffs' claims alleging First Amendment violations.

"To determine whether the government's attempts to restrict constitutionally-protected activities is prohibited by the First Amendment, 'the level of scrutiny to which the restriction is subjected depends on how the property is categorized as a forum for speech.'" *Hansen v. Town of Smithtown*, 342 F.Supp.3d 275, (E.D.N.Y. 2018) (quoting *American Freedom Defense Initiative v. Metropolitan Transp. Authority*, 880 F.Supp.2d 456, 469 (S.D.N.Y. 2012)).  As relevant here, "[a] limited public forum is created when the state 'opens a non-public forum but *limits* the expressive activity to certain kinds of speakers or to the discussion of certain subjects.'" *R.O. ex rel. Ochshorn v. Ithaca City School Dist.*, 645 F.3d 533, 539 (2d. Cir. 2011), *cert. denied*, 132 S. Ct. 422 (2011) (quoting *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Department of Parks & Recreation*, 311 F.3d 534, 554 (2d Cir. 2002)).

### 2.    UB SA is a limited public forum.

Student organization programs within public universities, particularly those limited to "recognized student clubs," are regarded by the Supreme Court as "limited public forums."  *See Christian Legal Soc.*, 561 U.S. at 669, 679 n.12 (law school's student organization program is a limited public forum); *see also Hershey v. Goldstein*, 938 F.Supp.2d 491, 508 (S.D.N.Y. 2013)

("this Court is persuaded by the great quantity of case law holding" that open areas of college campuses are limited public forums).

The pleaded allegations here confirm that SA is a limited public forum. Like the student organization program in *Christian Legal Society*, SA provides benefits to SA-recognized student clubs, such as access to funding from the mandatory student activity fee; ability to reserve/rent space on campus for events and meetings; and acknowledgment of the group as an affiliated organization of the university. In exchange, the student groups agree to abide by certain conditions. Thus, both the program in *Christian Legal Society* and the program at UB are not "open for indiscriminate public use," *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 392 (1993), but instead, are limited to certain groups—namely, recognized student clubs—which is the hallmark of a limited public forum. *See Ochshorn*, 645 F.3d at 539; *Christian Legal Soc.*, 560 U.S. at 679 n.11.

### 3. The challenged SA policies are viewpoint neutral and reasonable.

Once the court determines the forum, it "then applies the requisite standards for that forum to the challenged speech restriction." *American Freedom Defense Initiative*, 880 F.Supp.2d at 469. The Supreme Court "appl[ies] a less restrictive level of scrutiny to speech in limited public forums as compared to other environments." *See Christian Legal Soc.*, 561 U.S. at 680. In a limited public forum, the test is whether the policies challenged are: (1) reasonable in light of the purpose of the forum; and (2) viewpoint neutral. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009). The restriction "need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 808 (1985). Reasonableness in the context of a limited public forum "must be assessed in light of the purpose of the forum and all the surrounding circumstances." *Id.* at 809; *accord Rosenberger v.*

*Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995).  And a challenged policy "is all the more creditworthy" where there are "substantial alternative channels that remain open for . . . communication to take place."  *Christian Legal Soc.*, 561 U.S. at 690 (citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 53 (1983)).

Such issues can be determined on a Rule 12 motion.  *See Tyler v. City of Kingston*, 74 F.4th 57, 64 (2d Cir. 2023) ("courts can take notice of government interests that 'ring[ ] of common-sense'. . . Plaintiffs have not adequately alleged that the sign prohibition was unreasonable in relation to the City's common-sense interest in running efficient and orderly meetings.") (citing *Hotel Employees*, 311 F.3d at 554); *see also Kuerbitz v. Meisner*, No. 16-12736, 2017 WL 4161111, at *8 (E.D. Mich. Sept. 20, 2017), *aff'd*, 2018 WL 5310762 (6th Cir. July 11, 2018) (". . . the Court finds that Plaintiff's allegations, at most, support a reasonable inference that the auction took place at limited public forum.  Accordingly, the Court will analyze Defendant's motion to dismiss under the standards that apply to a limited public forum.").

The policies that Plaintiffs challenge are viewpoint neutral.  The Legal Status Provision restricts *all* SA clubs, without exception, from existing as independent entities, from holding funds, and from entering into agreements not approved by SA.  The Contracts Policy likewise applies to *all* clubs.  Pursuant to the SA Recognition Policy, only a contract to be recognized as a chapter of an outside organization (but not the affiliation itself) is subject to review, and that review is conducted without reference to the reasons motivating a SA club's intent to affiliate with an outside organization.  Indeed, the agreements of *all* SA clubs that seek to be a chapter of an outside organization are subject to review under the SA Recognition Policy.  Additionally, the Fundraising, Revenue, and Rollover Policy, and the Safeguarding Cash and Cash Equivalents Policy apply to *all* SA clubs.  Notably, *all* SA policies are further subject to the provision in its

By-Laws that expressly prohibits any discrimination by SA based on "political viewpoint." There is an identical prohibition that applies to funding decisions.

Plaintiffs allege SA's policies compel them to associate with, and adopt the speech of, other clubs with whom they disagree. But such claims against universities and their agents do not rise to a First Amendment violation when, as here, the challenged policies have "the requirement of viewpoint neutrality." *See Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 233 (2000) (university's mandatory student activity fee is Constitutional, even if used to fund a student organization whose speech is objectional to another group of students, if the allocation of the funds from the fee is viewpoint neutral).

The challenged SA policies are also reasonable in light of the forum's purpose, as confirmed by the pleadings, namely the documents attached to, and referenced within, them. This includes SA's By-Laws and policies that Plaintiffs submitted to the Court to be construed as fact for the purposes of pleading. SA is a governing body for undergraduates that is one of multiple UB Recognizing Agents for student organizations and allocates the mandatory student activity fee to the recognized clubs as part of its budget process. *See* SAC, Doc. 37, ¶¶ 61-64. SA's club funding process ensures that the opportunities for intellectual and social development through extracurricular activities are available to all students. *See* SAC, Ex. 6. SA's policies seek to protect students and their student activity fee which funds the recognized clubs and their activities. This interest is codified in the By-Laws, which prohibit SA clubs, in relevant part, from existing as separate entities[7] and from having "any accounts or financial activities outside of SA," and prohibit

---

[7] Plaintiffs are incorrect as a matter of law when they allege SA's prohibition against forming a separate legal entity is "*ultra vires*." All member SA clubs are groups of members of an incorporated not-for-profit corporation (*i.e.*, SA). Although SA maintains that UB YAF, consequently, lacks capacity to sue SA (a defense which SA does not waive), the issue is largely academic because the individual Plaintiffs have capacity to sue.

SA clubs from entering into contracts and agreements without approval.  *Id.*  SA, as the governing body of all SA clubs, has the authority to hold an account, approve expenditures of SA clubs, and enter into contracts and agreements on behalf of SA clubs.  These limitations ensure fiscal integrity and compliance with UB and SUNY policies, protect the student activity fee, and limit the risk of liability against SA.  Many of the purposes are articulated in Exhibit 5 to the SAC.  *See* Doc. 37-5, p. 5-6.  And they have been incorporated into several SA policies, including the SA Recognition Policy, the Contracts Policy, and the Club Officers Policy by way of the Acknowledgement Form.

Under the SA Recognition Policy, any SA club that seeks to enter into a contract to be recognized as a chapter of an outside organization "is subject to review pursuant to the SA's contract policy(ies)."  SAC, Ex. 7.  (If the outside organization does not require a signed contract, then no approval is needed).  The Contracts Policy, which applies to "agreements of any nature and promises of any kind . . ., including but not limited to agreements that do not involve the exchange of money," reiterates the Legal Status Provision of the SA By-Laws, limiting the authority to sign contracts and agreements to SA.  *See* SAC, Ex. 8.  And the Acknowledgement Form reiterates the Legal Status Provision, requiring the club officer signing the Acknowledgement Form to acknowledge that "SA-recognized clubs may not have any accounts or financial activities outside SA" and that "SA club officers may not sign contracts or otherwise enter into agreements on behalf of any SA club."  SAC, Ex. 5.  These policies are reasonable and are supported by an adequate explanation.  *See Wisconsin v. Mitchell*, 508 U.S. 476, 488 (1993).

**4.    Plaintiffs' unconstitutional conditions doctrine claim is without merit.**

The doctrine of unconstitutional conditions holds that the government may not condition certain government benefits on the relinquishment of constitutional rights.  *See Boy Scouts of America v. Wyman*, 335 F.3d 80, 91 (2d Cir. 2003).  In the context of First Amendment rights (as

alleged here), however, the doctrine does indeed permit restriction on speech and associational rights so long as these restrictions are viewpoint neutral, reasonable, and provide for alternative channels of expression.  *See, e.g., Rust v. Sullivan*, 500 U.S. 173, 196-97 (1991) (upholding prohibition on use of federal family-planning funds for abortion counseling where employees of fund recipients "remain free . . . to pursue abortion-related activities when they are not acting under the auspices of the [federally-funded] project"); *FCC v. League of Women Voters of Calif.*, 468 U.S. 364, 400 (1984) (rejecting statute that barred federally-funded public broadcasting stations from editorializing, but emphasizing that Congress could cure the statute by amending it to allow stations to establish non-federally-funded affiliates for editorializing).

Plaintiffs allege that the Legal Status Provision "unconstitutionally conditions access to the student organization forum" on a student organization, waiving its rights "to associate as a separate legal entity and to petition for legal redress in the courts"; and "to enter into agreements or contracts with other individuals or organizations and to raise or hold funds for the expressive activities."  SAC, Doc. 37, ¶¶ 293, 294.  Again, the Legal Status Provision is viewpoint neutral inasmuch as it applies to *all* SA clubs.  Furthermore, UB YAF has adequate alternative avenues for enjoying any First Amendment rights they allege are somehow prohibited by the provision.  As the SAC notes, SA is "***a*** [UB] 'recognizing agent,'" and not the only one.  *Id.* at ¶ 36.  Plaintiffs have attached to the Complaint UB's Recognition Policy, which identifies the many such agents at UB.  *See* SAC, Ex. 1, p. 4.  These different agents have policies different from SA and can sponsor UB YAF to become a recognized organization.  UB YAF sought recognition through SA.[8]

---

[8]  Plaintiffs fail to raise an as-applied challenge under its claim for a violation of the unconstitutional conditions doctrine.  And Plaintiffs do not allege that another SA club was otherwise treated differently under these policies.

5.      Plaintiffs' allegation of "unbridled discretion" is without merit.

The "unbridled discretion" doctrine requires that discretion affecting First Amendment interests be bound by limits that are "made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770 (1988). This is because "without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker." *Id.* at 763–64. *Lakewood* includes the classic example of a broad city ordinance that gives a mayor "the authority to grant or deny applications for annual newsrack permits" without any criteria. *Id.* at 753.

There is no such absence of standards here. To begin with, <u>all</u> SA policies are governed by the mandates in Articles 7.04(c) and XI(a) of its By-Laws, which expressly prohibit SA from discriminating based on "political viewpoint." This is not "unbridled discretion." The adoption of such viewpoint neutral policies has been found to moot any such claim of unbridled discretion. *See Coll. Standard Magazine*, 610 F.3d at 33-35 ("The SA amended its constitution in the Spring of 2003 to include regulations on funding that explicitly require viewpoint neutrality").

SA also provides additional criteria for its review of contracts. Plaintiffs allege that SA used unbridled discretion by way of the Legal Status Provision "to burden [UB] YAF's speech by delaying approval of contracts necessary to its expression." SAC, Doc. 37, ¶ 266. Plaintiffs further allege that "[t]here are no written criteria listed which SA uses to approve, to not approve, to modify, or to delay a contract." *Id.* at ¶ 157. But this is incorrect and easily refuted by the documents that Plaintiffs have attached to, and referenced within, the SAC. SA's Contracts Policy applies to all SA clubs entering into agreements "of any nature and promises of any kind." SAC, Ex. 8. And it sets forth specific requirements for different types of contracts that a SA club may propose. The Contracts Policy states that all proposed contracts are reviewed by the SA

Administrative Director or other professional staff and that all proposed contracts may be subject to attorney review.  SA also provides related timing guidance and estimates in conjunction with the Contracts Policy.  *See id.*, Ex. 11.  These policies, and the above-refenced prohibition on discrimination in SA's By-Laws, refutes Plaintiffs' conclusory claim of unbridled discretion.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (On a motion to dismiss, "a court need not feel constrained to accept as truth conflicting pleadings . . . that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which court may take judicial notice.") (collecting cases).

### 6.     The Repealed Recognition Policy is constitutional.

In addition to being moot (and without an injury), Plaintiffs' claims involving the now-repealed policy prohibiting SA clubs from being a chapter or otherwise part of an outside organization are without merit because the policy was Constitutional.  While the policy excepted certain clubs from it, the exceptions—on their face—had *nothing* to do with the clubs' viewpoints. The express purpose of the exceptions under the policy was because the clubs engage in "inter-collegiate competition" or functions that often require them to be part of an outside organization. SAC, Ex. 2 and Ex. 3.  Indeed, the policy would have equally affected a conservative club like UB YAF and, among other clubs, *the College Democrats*, Amnesty International, the Model U.N., and the UNICEF Unite Club.  *See* Paul Odiohin Decl., Doc. 24-1, ¶ 29.  The rationales for adopting it are plainly reasonable, as explained in Exhibit 5 to the SAC.  *See* Doc. 37-5, p. 5-6.  They are even compelling.  They include: (1) compliance with SUNY Policy #3901 (prohibiting using student activity fees exclusively for the general corporate purposes of nonprofit organizations outside of the student govern); (2) the potential for outside organizations to have policies or rules that conflict with those of SA, UB, or SUNY; (3) the potential lack of awareness of the conflict by SA clubs;

and (4) the potential pressure on SA clubs to follow the conflicting rules of the affiliated, outside organization.  Any of these confirms the reasonableness and Constitutionality of the policy.

Further, universities may exclude classes of speech, as opposed to viewpoints, to preserve the limits of the forum it has created.  *See Rosenberger*, 515 U.S. at 829–30 ("we have observed a distinction between, on the one hand, content discrimination, which may be permissible if it preserves the purposes of that limited forum, and, on the other hand, viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitations.").  Here, there was clearly no viewpoint discrimination in the repealed policy.

**C.**     **Plaintiffs Fail to State a Claim for As-Applied Constitutional Violations.**

The SAC fails to include any specific or plausible allegations that UB YAF was treated differently—under any of the challenged policies—*than other clubs* with differing viewpoints. This is fatal to Plaintiffs' as-applied claims.

An as-applied challenge "requires an analysis of the facts of a particular case to determine whether the application of a [policy], even one constitutional on its face, deprived the individual to whom it was applied of a protected right."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006).  "To state an as-applied viewpoint discrimination claim, plaintiff must allege he[/she] was 'prevented from speaking ***while someone espousing another viewpoint was permitted to do so***.'"  *Lang v. Town of Tusten,* No. 14 CV 4136, 2015 WL 5460110, *8-9 (S.D.N.Y. Aug. 6, 2015) (quoting *McCullen v. Coakley*, 573 U.S. 464, 485 n. 4 (2014)) (emphasis added). "The underlying principle is that 'the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.'"  *Id.* (quoting *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984)).

In *Tyler v. City of Kingston*, 593 F.Supp.3d 27, 30 (N.D.N.Y. 2022), the plaintiffs—activist

organizations focused on grappling with police misconduct and diversity issues—commenced an action against the City, challenging the City's new rule prohibiting the public from bringing signs or posters into City Hall.  The court held that the plaintiffs failed to allege sufficient facts to establish that "they were discriminated against based on their viewpoint" insofar as "[n]owhere have plaintiffs alleged that proponents of the policies they opposed were permitted to bring signs into City Hall **or were otherwise treated differently from their opponents**.  Nor even have plaintiffs alleged that signs are more important to their cause than they would be to their opponents."  *Id.* at 32 (emphasis added).  The court noted that "the absence of any of those allegations amount[ed] to a critical failure" in stating a claim.  *Id.*

Plaintiffs claim that, under the Legal Status Provision, they "must give up their right to associate and exist as a separate, independent organization, including their rights to choose the entities with which they wish to associate and the expression they wish to support, to enter into agreements, to raise and store funds, and to take legal actions (including this lawsuit)."  SAC, Doc. 37, ¶ 226.  But Plaintiffs do not allege that another SA Club was otherwise treated differently under the Legal Status Provision, which is fatal to an as-applied claim.  Plaintiffs allege that under the Legal Status Provision, all SA clubs are merged into one group, SA, and that "any message communicated by any student organization is equally attributable to the UB [YAF], including messages with which it disagrees or would prefer not to express."  *Id.* at ¶ 240.  But, again, Plaintiffs fail to allege how SA demonstrates discrimination against them *in comparison to others*.  Indeed, Plaintiffs appear to be asserting that all SA clubs are subject to the same policy.

Regarding their challenge to the SA Contracts Policy, Plaintiffs likewise fail to allege how it is unconstitutional as applied to them *in contrast to others*.  There is no allegation, plausible or otherwise, that these policies were applied to Plaintiffs differently than anyone else.  The only

allegation of discrimination is that SA used its discretion to delay approval of the artist contract for the speaker event.  *Id.* at ¶ 171.  However, Plaintiffs fail to allege how SA's approval of the contract for the speaker event—an approval that was timely but not within a time frame acceptable to Plaintiffs—demonstrates discrimination against Plaintiffs by SA *in comparison to others*, particularly when UB YAF successfully proceeded with the event.  *See also Miller v. Goggin*, No. 22-3329, 2023 WL 3294832, *14 (E.D. Pa. May 5, 2023) ("'nowhere in the [c]omplaint does the [p]laintiff allege that Board President Fox used Board Policy 903 to ***actually prevent*** the [p]laintiff from speaking'") (emphasis in original) (internal citation omitted).  In sum, there are no allegations that any of the challenged policies were applied differently to UB YAF.

Plaintiffs appear to cite, in support of their argument that SA purportedly targeted them, the adoption of the now-repealed policy prohibiting SA clubs from being a chapter or otherwise part of an outside organization.  This is not evidence of an as-applied claim against a particular SA policy.  It is a sleight of hand.  This policy is repealed (in addition to never having been implemented).  Plaintiffs must, therefore, demonstrate that a particular policy challenged here was applied against them in a manner inconsistent with others.  They have pleaded no such claim.  But even if they could cite the repealed policy in support of their claims, Plaintiffs were never harmed by it, as set forth above in Point I.  It cannot, therefore, form the basis of any of their claims, including an as-applied claim against any SA or UB policies.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the SAC in its entirety *with prejudice*.  Plaintiffs have twice amended their Complaint, once with leave of the Court, in response to deficiencies identified by Defendants.  They should not be permitted further amendments and opportunities to reinvent the reasons for commencing this action long after it became moot.

Dated: January 3, 2023

**HODGSON RUSS LLP**

*Attorneys for Defendant University at Buffalo Student Association Inc.*

By: _____

        Aaron M. Saykin
        Ryan K. Cummings
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
Telephone:  716.856.4000

26