THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNIVERSITY AT BUFFALO YOUNG AMER-
ICANS FOR FREEDOM; JUSTIN HILL; JA-
COB CASSIDY; and AMELIA SLUSARZ,

*Plaintiffs*,

v.

UNIVERSITY AT BUFFALO STUDENT AS-
SOCIATION, INC.; BRIAN HAMLUCK in his
official capacity as the University at Buf-
falo Vice President for Student Life;
TOMÁS AGUIRRE in his official capacity
as the University at Buffalo Interim
Dean of Students; and PHYLLIS FLORO
in her Official Capacity as the Univer-
sity at Buffalo Director of Student En-
gagement,

*Defendants*.

CASE NO.: 1:23-cv-00480

THE HONORABLE
LAWRENCE J. VILARDO

**Jury Trial Demanded**

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS OF DEFENDANTS HAMLUCK, AGUIRRE, AND FLORO

TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 2

I.     The Eleventh Amendment poses no impediment to Plaintiffs' claims. ............ 3

II.    None of Plaintiffs' claims should be dismissed because Defendants' policies
       are unconstitutional in any forum. ..................................................................... 4

       A.  By focusing on their general authority to make rules and on other fora,
           the University Defendants distract from flaws of their policies, but this
           provides no basis for dismissing Plaintiffs' claims. .................................... 5

       B.  Defendants cannot stop student groups from affiliating with off-campus
           allies. ............................................................................................................ 7

           1.  Defendants implemented and enforced a National Affiliation Ban, a
               form of which remains in effect. ............................................................ 7

           2.  Restricting a student group's ability to affiliate with off-campus
               entities is unconstitutional. .................................................................... 8

       C.  Defendants' policies flunk the standards for a limited public forum. ....... 10

           1.  Defendants' policies are not viewpoint-neutral and were applied in a
               viewpoint-based way. ........................................................................... 11

           2.  Defendants' policies are not reasonable given the speech-facilitating
               purpose of the student organization forum. ......................................... 14

           3.  Defendants' policies flunk the strict scrutiny that applies to speech
               that falls within the scope of this forum. ............................................. 17

Conclusion ............................................................................................................ 17

Certificate of Service ............................................................................................ 19

TABLE OF AUTHORITIES

CASES

*Amidon v. Student Association of the State University of New York at Albany,*
    508 F.3d 94 (2d Cir. 2007) ........................................................................ 12, 15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................... 3

*Banks v. State University of New York,*
    2007 WL 895505 (W.D.N.Y. Mar. 22, 2007) ................................................ 3, 4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................... 3

*Board of Regents of the University of Wisconsin System v. Southworth,*
    529 U.S. 217 (2000) ............................................................... 1, 5, 6, 11, 15

*Brass v. American Film Technologies, Inc.,*
    987 F.2d 142 (2d Cir. 1993) ............................................................................ 2

*Byrne v. Rutledge,*
    623 F.3d 46 (2d Cir. 2010) ............................................................................ 14

*Carroll v. Blinken,*
    957 F.2d 991 (2d Cir. 1992) ..................................................................... 15, 16

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ............................................................................ 2

*Christian Legal Society v. Martinez,*
    561 U.S. 661 (2010) ...................................................................................... 1, 5

*City of Lakewood v. Plain Dealer Publishing Co.,*
    486 U.S. 750 (1988) ....................................................................................... 12

*Cornelius v. NAACP Legal Defense Fund,*
    473 U.S. 788 (1985) ....................................................................................... 14

*DeJohn v. Temple University,*
    537 F.3d 301 (3d Cir. 2008) ............................................................................ 1

*Dube v. State University of New York,*
    900 F.2d 587 (2d Cir. 1990) ............................................................................ 3

*Forsyth County v. Nationalist Movement,*
    505 U.S. 123 (1992) ....................................................................................... 12

*Freudenberg v. E*Trade Financial Corp.,*
    712 F. Supp. 2d 171 (S.D.N.Y. 2010) .............................................................. 2

*Friedl v. City of New York,*
    210 F.3d 79 (2d Cir. 2000) .............................................................................. 2

iii

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) ............................................................................... 17

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,*
    128 F.3d 59 (2d Cir. 1997) ......................................................................... 2

*Hawkins v. Miller,*
    2023 WL 5019602 (W.D.N.Y. Aug. 7, 2023) (Vilardo, J.) ........ 3, 7, 8, 11, 14, 17

*Healy v. James,*
    408 U.S. 169 (1972) .............................................................. 1, 6, 8, 9, 16

*Hotel Employees & Restaurant Employees Union, Local 100 of New York v. City*
    *of New York Department of Parks & Recreation,*
    311 F.3d 534 (2d Cir. 2002) ................................................................ 10, 11

*Husain v. Springer,*
    494 F.3d 108 (2d Cir. 2007) .......................................................... 10, 11, 12, 13

*Keyishian v. Board of Regents of the University of the State of New York,*
    385 U.S. 589 (1957) ................................................................................. 17

*Koehl v. Dalsheim,*
    85 F.3d 86 (2d Cir. 1996) ........................................................................... 4

*Manning v. Erhardt + Leimer, Inc.,*
    2020 WL 759656 (W.D.N.Y. Feb. 7, 2020) (Vilardo, J.) ..................................... 2

*Merrill v. Schell,*
    279 F. Supp. 3d 438 (W.D.N.Y. 2017) (Vilardo, J.) ............................................ 2

*Papish v. Board of Curators of the University of Missouri,*
    410 U.S. 667 (1973) .................................................................................. 7

*Perry Education Association v. Perry Local Educators' Association,*
    460 U.S. 37 (1983) .................................................................................. 14

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ................................................................................. 17

*Rosenberger v. Rector & Visitors of the University of Virginia,*
    515 U.S. 819 (1995) ........................................................................ 1, 4, 5, 12

*Shuttlesworth v. City of Birmingham,*
    394 U.S. 147 (1969) ................................................................................. 12

*Silva v. Farrish,*
    47 F.4th 78 (2d Cir. 2022) ........................................................................... 4

*Talarico Brothers Building Corp. v. Union Carbide Corp.,*
    73 F.4th 126 (2d Cir. 2023) ......................................................................... 3

*Taylor v. Principal Life Insurance Co.,*
    2023 WL 1997040 (W.D.N.Y. Feb. 14, 2023) (Vilardo, J.) ............................... 2, 5

iv

*Tinker v. Des Moines Independent Community School District,*
    393 U.S. 503 (1969) ................................................................................. 1

*Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management,*
    843 F.3d 561 (2d Cir. 2016) ................................................................... 3

*Tyler v. City of Kingston,*
    74 F.4th 57 (2d Cir. 2023) ................................................... 10, 11, 17

*Verizon Maryland, Inc. v. Public Service Commission of Maryland,*
    535 U.S. 635 (2002) ................................................................................. 4

*Widmar v. Vincent,*
    454 U.S. 263 (1981) ........................................................................ 1, 5, 6

**REGULATIONS**

8 N.Y.C.R.R. § 302.14(c)(3) ............................................................. 14, 15, 16

**RULES**

FED. R. CIV. P. 12(b)(6) .............................................................................. 2, 5

FED. R. CIV. P. 8 ............................................................................................. 1

## INTRODUCTION

For over 50 years, it has been clear that "state colleges and universities are not enclaves immune from the sweep of the First Amendment" and that it protects students on campus to the same degree as citizens off campus. *Healy v. James*, 408 U.S. 169, 180 (1972). For over 40 years, there has been "no doubt that the First Amendment rights of speech and association extend to the campuses of state universities." *Widmar v. Vincent*, 454 U.S. 263, 268–69 (1981). Thus, the Supreme Court has condemned efforts to prevent student groups from affiliating with like-minded, off-campus entities, *see generally Healy*, 408 U.S. 169, or to gerrymander campus fora to exclude disfavored groups, *see generally Widmar*, 454 U.S. 263; *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995); *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217 (2000); *accord Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 698–99 (2010) (condemning selective enforcement).

The Complaint details how Defendants enforced three policies that flout this precedent. Their National Affiliation Ban derecognized some student groups for affiliating with off-campus allies. Their Legal Status Ban recasts this policy, giving Student Association unbridled discretion. It also requires student groups to merge into Student Association to get recognition, losing their separate existence and their ability to organize events, own property, and defend their rights. And via the UB Recognition Policy, the University Defendants give Student Association free rein.

Even in elementary school, "free speech [and association] is not a right that is given only to be so circumscribed that it exists in principle but not in fact." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). Defendants have far "*less leeway* in regulating student speech [and association] than … public elementary or high schools." *DeJohn v. Temple Univ.*, 537 F.3d 301, 315–16 (3d Cir. 2008). So Plaintiffs exceeded the minimal standard of FED. R. CIV. P. 8 (*i.e.*, "a short and plain statement … showing [they are] entitled to relief"). This motion should be denied.

1

ARGUMENT[1]

The University Defendants move solely under FED. R. CIV. P. 12(b)(6). Univ. Defs.' Notice of Mot. to Dismiss, Doc. 40, at 1.[2] Not only are such motions "generally viewed with disfavor," *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 178 (S.D.N.Y. 2010), but they also permit this Court to review only the Complaint and its exhibits. *Taylor v. Principal Life Ins. Co.*, 2023 WL 1997040, at \*1 (W.D.N.Y. Feb. 14, 2023) (Vilardo, J.) (noting the Court "may consider any 'documents … [that the] plaintiff[ ] … relied on in bringing the suit'" (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993))). Hence, this Court should exclude Defendant Floro's declaration, as well as Exhibits B, C, and D. Floro Decl., Doc. 40-2; Ex. B., Doc. 40-4; Ex. C., Doc. 40-5; Ex. D, Doc. 40-6.[3] If it does not exclude these "extrinsic documents," it must "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56," a "conversion requirement [that] is 'strictly enforced.'" *Manning v. Erhardt + Leimer, Inc.*, 2020 WL 759656, at \*9 (W.D.N.Y. Feb. 7, 2020) (Vilardo, J.) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002); *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000)).

Under FED. R. CIV. P. 12(b)(6), the "'issue is not whether [Plaintiffs] will or might ultimately prevail on [their] claim[s], but whether [they are] entitled to offer evidence in support of the allegations in [their] complaint.'" *Merrill v. Schell*, 279 F. Supp. 3d 438, 442 (W.D.N.Y. 2017) (Vilardo, J.) (quoting *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 62 (2d Cir. 1997)). This Court must construe the complaint liberally, *Freudenberg*, 712 F. Supp. 2d at 179, "accept all factual allegations as true[,] and draw[ ] all reasonable inferences in [Plaintiffs']

---

[1]   Plaintiffs incorporate their response to Student Association's motion to dismiss.
[2]   All pinpoint citations to filed documents refer to the internal page numbering or bates-stamp number (if such exist), not the ECF page number.
[3]   Exhibit A to Defendant Floro's declaration (*i.e.*, Doc. 40-3) appears to be the same document as Compl. Ex. 1, Doc. 37-1.

favor," *Hawkins v. Miller*, 2023 WL 5019602, at *1 n.2 (W.D.N.Y. Aug. 7, 2023) (Vilardo, J.) (cleaned up) (quoting *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016)). Thus, "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 140 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To defeat this motion Plaintiffs' Complaint "'must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face."'" *Hawkins*, 2023 WL 5019602, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570). This does not impose a "probability requirement" but just calls for "factual content that allows [this C]ourt to draw the reasonable inference that [the University Defendants are] liable for the misconduct alleged." *Id.* (citing and quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556); *accord Twombly*, 550 U.S. at 555 (requiring complaints to "raise a right to relief above a speculative level").

The Complaint pleads facts about Defendants' policies, their enforcement, and the harm to Plaintiffs. As it "raise[s] a reasonable expectation that discovery will reveal evidence of illegal[ity]," this motion should be denied. *Twombly*, 550 U.S. at 556.

## I.    The Eleventh Amendment poses no impediment to Plaintiffs' claims.

The University Defendants first invoke the Eleventh Amendment. Univ. Defs.' Br., Doc. 40-1, at 8–9. But sovereign immunity has no bearing on Plaintiffs' claims.

Plaintiffs did not sue the State University of New York. They sued three University officials in their official capacities, 2d Am. V. Compl. ("Compl."), Doc. 37, ¶¶ 38–46, for prospective injunctive and declaratory relief, *id.* at 39. Even the cases the University Defendants cite affirm this approach is proper. *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 595 (2d Cir. 1990) ("[A] state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment."); *Banks v. State Univ. of N.Y.*, 2007 WL

895505, at *7 (W.D.N.Y. Mar. 22, 2007) (same).

Thus, the University Defendants are simply wrong to say that "they enjoy complete Eleventh Amendment sovereign immunity" and that the "Complaint must be dismissed on these grounds alone." Univ. Defs.' Br., Doc. 40-1 at 9. Again, their own case betrays them. For after dismissing an official-capacity damages claim, it noted that the plaintiff "also sought injunctive relief … and dismissal of that claim was not warranted." *Koehl v. Dalsheim*, 85 F.3d 86, 88–89 (2d Cir. 1996). Here, Plaintiffs seek only equitable relief from the University Defendants. Compl., Doc. 37, ¶ 99 (seeking nominal damages only from Student Association); *id.* at 39 ¶ F (same).

The "*Ex parte Young* exception to state sovereign immunity" applies here because a "'straightforward inquiry'" reveals the complaint "(1) 'alleges an ongoing violation of federal law' and (2) 'seeks relief properly characterized as prospective.'" *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). As in that case, Plaintiffs allege Defendants' policies—the UB Recognition Policy, the National Affiliation Ban, and the Legal Status Ban—remain in effect and violate their rights. Compl., Doc. 37, ¶¶ 55–192 (detailing the flaws in the policies, how they were enforced, and how they harmed Plaintiffs); *id.* ¶ 194 (alleging these policies "violate the First and Fourteenth Amendments and cause irreparable harm"). And Plaintiffs seek from the University Defendants both injunctive and declaratory relief. *Id.* at 39 ¶¶ A–E, G–H. The injunction and declaratory judgment, setting forth Plaintiffs' rights and resolving their individual claims, are consistent with the Eleventh Amendment. *Silva*, 47 F.4th at 85–86.

## II.    None of Plaintiffs' claims should be dismissed because Defendants' policies are unconstitutional in any forum.

The University Defendants expend considerable space outlining the forum doctrine. Univ. Defs.' Br., Doc. 40-1 at 9–12. Much of this is unnecessary, as the student organization forum here is a limited public forum. *Rosenberger*, 515 U.S. at 829

(describing student fee forum as a "limited public forum"); *Southworth*, 529 U.S. at 234 (noting same is "tantamount to a limited public forum"); *Martinez*, 561 U.S. at 679 (noting recognized student organization forum is a "limited public forum").[4]

Ultimately, the forum designation matters little here because Defendants' policies are unconstitutional in any forum. The Supreme Court has specifically condemned university efforts to prevent student groups from affiliating with like-minded off-campus entities, and Defendants' policies fail any level of scrutiny for a limited public forum. Thus, Plaintiffs' claims exceed the minimal plausibility standard.

### A. By focusing on their general authority to make rules and on other fora, the University Defendants distract from flaws of their policies, but this provides no basis for dismissing Plaintiffs' claims.

Rather than defending their policies, the University Defendants focus on other fora, Univ. Defs.' Br., Doc. 40-1, at 7–8, 12–13, or their general rule-making authority, *id.* at 11. In the process, they rely on extrinsic documents, something that FED. R. CIV. P. 12(b)(6) does not permit. *Taylor*, 2023 WL 1997040, at *1. But neither misdirection provides a basis for dismissing any of Plaintiffs' claims.

This case challenges three policies related to the student organization forum that Student Association administers, thanks to authority the University Defendants give it. The Complaint alleges that Student Association adopted both the National Affiliation Ban and the Legal Status Ban, enforced the former, and enforces the latter. Compl., Doc. 37, ¶¶ 75–113. The Legal Status Ban still limits the ability of student organizations to affiliate with off-campus entities, as they must seek Student Association's permission, permission it can grant or withhold at will. *Id.* ¶¶ 110–13.

---

[4] That said, the University Defendants wrongly described the facilities forum in *Widmar* as a "limited public forum." Univ. Defs.' Br., Doc. 40-1, at 10. For *Widmar* ruled that the policies prohibiting religious student groups from using these facilities constituted "content-based exclusions." *Widmar*, 454 U.S. 270; *id.* at 273 (noting the university was "exclud[ing] groups because of the content of their speech"). In a limited public forum, only viewpoint discrimination is off-limits. *Rosenberger*, 515 U.S. at 829–30. Thus, this forum had to be at least a designated public forum for students.

And the only reason these policies have any teeth is that the UB Recognition Policy says student groups seeking recognition from Student Association "must abide by [its] Rules and Regulations." *Id.* ¶¶ 66. According to the Complaint, the University Defendants implement the UB Recognition Policy, *id.* ¶¶ 57, 67, and it is under their authority that Student Association enforces its policies, *id.* ¶ 70.

The University Defendants note that student groups can seek recognition from other entities. Univ. Defs.' Br., Doc. 40-1, at 7–8, 12–13. But the Complaint pleads that the Student Association forum is different. For "only student organizations that are recognized by the UB Student Association are eligible to access the mandatory student activity fees distributed … by the UB Student Association." Compl., Doc. 37, ¶ 64; *id.* ¶ 59(b) (noting "benefits of recognition" include "access to funding from the Mandatory Student Activity Fee (if recognized by a student government)" (cleaned up)). Thus, the University Defendants have a specific constitutional mandate to ensure that this forum remains viewpoint-neutral. *Southworth*, 529 U.S. at 233–34.

The University Defendants next invoke their general authority to enforce time, place, and manner restrictions, citing three Supreme Court cases. Univ. Defs.' Br., Doc. 40-1, at 11. But like the students in those cases, Plaintiffs do not contest this general authority; they challenge three specific policies. Nor did this general authority immunize the actions and policies in those three cases from review. After all, *Healy* ruled that a college could not de-recognize Students for a Democratic Society because it affiliated with a national organization (even one known for violence), *Healy*, 408 U.S. at 185–87, or because officials disliked its views, *id.* at 187–88. *Widmar* ruled that a university violated the First Amendment by discriminating based on content in excluding religious groups from meeting in university facilities. *Widmar*, 454 U.S. at 269–70, 273. Both contrasted the challenged restrictions with time, place, and manner rules. *Healy*, 408 U.S. at 192–93; *Widmar*, 454 U.S. at 276. And *Papish* ruled that expelling a student for speech university officials deemed

"indecent" or worse represented prohibited content discrimination—not a time, place, and manner rule. *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 668 & n.3 (1973) (describing student's speech); *id.* at 670 ("[T]he facts set forth … show clearly that petitioner was expelled because of the disapproved content of the newspaper rather than the time, place, and manner of its distribution.").

In short, neither of these distractions warrants dismissing Plaintiffs' claims.

## B. Defendants cannot stop student groups from affiliating with off-campus allies.

### 1. Defendants implemented and enforced a National Affiliation Ban, a form of which remains in effect.

The University Defendants insist that the University "does not have a National Affiliation Ban." This ignores the facts in the Complaint, which must be taken as true here. *Hawkins*, 2023 WL 5019602, at *1 n.2.

The Complaint details how Student Association adopted the National Affiliation Ban in response to Plaintiffs hosting Mr. Knowles' lecture. Compl., Doc. 37, ¶¶ 71–80. This ban specifically stated that "no [Student Association] club [except for those exempted] may be a chapter or otherwise part of any outside organization." *Id.* ¶ 78. The resolution was both passed, *id.* ¶ 79, and "codified in the Student Association's New Club Recognition Policy." *Id.* ¶ 80; Compl. Ex. 3, Doc. 37-3, at 1 ¶ 7.

Moreover, Student Association automatically enforced the National Affiliation Ban. For it passed another resolution, stating that failure to comply with the ban by May 31, 2023 "will result in the automatic derecognition of that club." *Id.* ¶ 82; *accord id.* ¶ 81. As Young Americans for Freedom never disaffiliated with its national organization, it was automatically derecognized on June 1. *Id.* ¶¶ 85–86; *id.* ¶¶ 87–92 (detailing consequences of derecognition). Repealing the ban (only after being sued) does not change history. *Id.* ¶¶ 99–104.

The Complaint also details how Student Association still limits the ability of student groups to affiliate with off-campus entities. For the Legal Status Ban

specifies: "Any agreement for a Student Association club to be recognized as a chapter of an outside organization is subject to review pursuant to SA's contract policy(ies)." *Id.* ¶ 110 (quoting Compl. Ex. 7, Doc. 37-7, at 1 ¶ 7). As the contract policies provide no criteria for granting or denying such requests, Student Association has a free hand to do whatever it wants. *Id.* ¶¶ 112–13; *accord* Compl. Ex. 8, Doc. 37-8.

And none of these policies would have any effect without the University Defendants. For it is they who operate the student organization forum, *id.* ¶ 56. It is they who implement and enforce the UB Recognition Policy, *id.* ¶¶ 44, 57, which requires that groups recognized by Student Association "must abide by [its] Rules and Regulations." *Id.* ¶ 66. It is they who could change these policies. *Id.* ¶ 45. Without them, "Student Association would not have the authority to adopt and implement the National Affiliation Ban … or … the Legal Status Ban." *Id.* ¶ 46.

These facts from the Complaint control here. *Hawkins*, 2023 WL 5019602, at *1 n.2. What happens in other fora, where student fees are unavailable, is beside the point. *See supra* Argument II.A. Defendants adopted a National Affiliation Ban, enforced it, and maintain it. And the University Defendants are responsible for it.

## 2.  Restricting a student group's ability to affiliate with off-campus entities is unconstitutional.

The University Defendants insist the National Affiliation Ban does not violate *Healy*. Univ. Defs.' Br., Doc. 40-1, at 12–13. But aside from pointing to other fora—a misdirection that does not remedy the flaws of the forum at issue, *see supra* Argument II.A—they never explain this assertion, perhaps because they cannot. For *Healy* explicitly condemns this ban. Thus, Plaintiffs have cleared the plausibility threshold.

In *Healy*, when students tried to form a chapter of Students for a Democratic Society, college officials "exhibited concern over the relationship between the proposed local group and the National SDS organization." *Healy*, 408 U.S. at 172. Given the national group's "reputation for campus disruption," *id.*, officials next required

the students to file a document stating they were "not under the dictates of any National organization." *Id.* at 173. Based on these assurances and the presence of other student groups (including Young Americans for Freedom), these officials recommended that the SDS chapter be recognized. *Id.* But the president refused to recognize it, finding "that the organization's philosophy was antithetical to the school's policies, and that the group's independence was doubtful." *Id.* at 174–76.

The Supreme Court first ruled that the First Amendment protects students on campus with the same force as it does citizens "in the community at large," *id.* at 180; that university students enjoy "the right … to associate to further their personal beliefs," *id.* at 181; and that "denial of official recognition, without justification, to college organizations burdens or abridges that associational right," *id.* Then it turned to the national affiliation issue, observing that it "consistently disapproved governmental action … denying rights and privileges solely because of a citizen's association with an unpopular organization." *Id.* at 185–86. Even though the national SDS organization had a record of violence, mere affiliation with it did not justify denying the student group recognition. *Id.* at 186–87. As the student group remained "affiliated with" and retained "an affinity for" the national organization, the president imputed the national organization's philosophy to the student group. *Id.* at 187. But the "mere disagreement of the President with the group's philosophy affords no reason to deny it recognition." *Id.* at 187. That's because the "College … may not restrict speech or association simply because it finds the views expressed by any group [national or local] to be abhorrent." *Id.* 187–88.

Like the students in *Healy*, *id.* at 173 n.3 (noting students used SDS name because it "brings to mind the type of organization we wish to bring across"), Plaintiffs desire to maintain an affiliation with Young America's Foundation, a relationship that allows the group to be the group "that its members want it to be." Compl., Doc. 37, ¶ 84; *id.* ¶¶ 83, 85, 90–92. Like the president in *Healy*, Student Association

disliked Plaintiffs' expression (*i.e.*, Mr. Knowles' lecture), blamed it on Plaintiffs' relationship with Young America's Foundation, and passed the National Affiliation Ban in a targeted response. *Id.* ¶¶ 71–77. Then it automatically derecognized Plaintiffs for refusing to abandon their national affiliation. *Id.* ¶¶ 81–92. Going further than the officials in *Healy*, Student Association tailored the National Affiliation Ban to exempt various groups (*e.g.*, the Economics Club, the Environmental Network Club, the Philosophy, Politics, and Economics Club, and the Political Science Undergraduate Student Association) that address a range of economic, philosophical, and political issues similar to those Plaintiffs address. *Id.* ¶¶ 93–96. Even after being sued, Student Association simply recast the National Affiliation Ban and incorporated it into the Legal Status Ban. *See supra* Argument II.B.1.

In short, the University Defendants point to no meaningful difference between their National Affiliation Ban and the affiliation restrictions ruled unconstitutional in *Healy*. Hence, Plaintiffs stated plausible claims, and this motion should be denied.

**C. Defendants' policies flunk the standards for a limited public forum.**

The University Defendants insist that, since this is a limited public forum, their policies need only be "viewpoint-neutral and reasonable." Univ. Defs.' Br., Doc. 40-1, at 11. This oversimplifies Second Circuit law, but as their policies fail even these standards, Plaintiffs stated plausible claims, and their motion should be denied.

Once University officials create a limited public forum, their "ability … to interfere with the speech made through such an outlet is generally strictly curtailed." *Husain v. Springer*, 494 F.3d 108, 121 (2d Cir. 2007) (quotation omitted). The University Defendants and Student Association are "'free to impose a blanket exclusion on certain types of speech, but once [they] allow[ ] expressive activities of a certain genre, [they] may not selectively deny access for other activities of that genre.'" *Tyler v. City of Kingston*, 74 F.4th 57, 61–62 (2d Cir. 2023) (quoting *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d

10

534, 545–46 (2d Cir. 2002) (cleaned up). "For 'expressive uses not falling within the limited category for which the forum has been opened, restrictions need only be viewpoint neutral and reasonable.'" *Id.* (quoting *Hotel Emps.*, 311 F.3d at 546). But for "'speech that falls within th[at] designated category,'" "'strict scrutiny'" applies. *Id.* at 62 (quoting *Hotel Emps.*, 311 F.3d at 545) (cleaned up).

Here, the Complaint states that Plaintiffs' speech and association clearly falls within the boundaries of Student Association's recognized student organization forum. After all, the Complaint states that Young Americans for Freedom has existed since about 2017, Compl., Doc. 37, ¶ 49, and that it has held regular meetings and events on campus to advance its views, *id.* ¶¶ 50–54, 72–74. During those six years or so, the Complaint states that it was a "recognized student organization under the University's and Student Association's policies." *Id.* ¶¶ 71. These facts must be taken as true. *Hawkins*, 2023 WL 5019602, at *1 n.2. Thus, Defendants' policies must survive strict scrutiny. *Tyler*, 74 F.4th at 62. But they cannot, seeing as they cannot even survive the reasonable and viewpoint-neutral test.

### 1. Defendants' policies are not viewpoint-neutral and were applied in a viewpoint-based way.

Defendants' policies must at least be viewpoint-neutral. *Tyler*, 74 F.4th at 61. This is particularly true for the University Defendants in this student-fee forum. *Southworth*, 529 U.S. at 233–34. But the Complaint details how the policies are viewpoint-based and were enforced in the same way.

The University Defendants contest this, basing their entire argument on one Student Association by-law. Univ. Defs.' Br., Doc. 40-1, at 8, 13–14. That by-law refers only to "funding decisions," not to other decisions (*e.g.*, the recognition decisions at issue here) that determine whether a student group can access the student-fee forum. *Id.* It is these other decisions that also impact "the availability of funds," and if they are viewpoint-based, the entire system is unconstitutional. *Husain*, 494 F.3d at 130.

The by-law also bans only decisions based on "the political viewpoints of clubs or their members." *Id.* And for almost three decades, it has been clear that viewpoint discrimination includes many more mutations. *E.g.*, *Rosenberger*, 515 U.S. at 831 (finding that banning funding for "religious activities" constitutes viewpoint discrimination).

What's more, the Second Circuit rejected this argument. When Albany officials tried to defeat a viewpoint-discrimination claim by citing "the SA Constitution's general requirement that funding decisions be viewpoint-neutral," the Second Circuit found this "insufficient." *Amidon v. Student Ass'n of State Univ. of N.Y. at Albany*, 508 F.3d 94, 104 (2d Cir. 2007). For "the bare statement without meaningful protections is inadequate to honor [*Southworth's*] commands." *Id.* "It does nothing to help courts identify covert viewpoint discrimination, nor does it prevent self-censorship by timid speakers who are worried that officials will discriminate against their unorthodox views notwithstanding constitutional proscriptions." *Id.* What failed at Albany then also fails at Buffalo now.

In so doing, the Second Circuit pointed back to how the Supreme Court "consistently condemn[s]" speech regulations that "vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 153 (1969). Given vague or non-existent criteria, officials "may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763–64 (1988). Speech restrictions must "contain narrow, objective, and definite standards to guide" officials, *Shuttlesworth*, 394 U.S. at 150–51, and cannot involve the "appraisal of facts, the exercise of judgement, and the formation of an opinion." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). These principles apply with full force to student-fee fora, like the one here. *Amidon*, 508 F.3d at 103.

And the Complaint details the many ways that Defendants' policies are

viewpoint-based, both on their terms and in their implementation. On its face, the National Affiliation Ban applied only to certain student groups; those in the "Academic, Engineering, or Sports Councils" and those engaged "in inter-collegiate competition" were exempted. Compl., Doc. 37, ¶¶ 94. This allowed at least four groups that address the same issues as Young Americans for Freedom to retain their affiliations. *Id.* ¶¶ 95–96. Student Association retained unlimited discretion to decide which groups belonged to the exempted or unexempted councils. *Id.* ¶¶ 97–98. Even now, the restriction on student group affiliations still gives Student Association unlimited discretion, for it has no guidelines—certainly no objective or comprehensive ones—on whether to approve or deny student group requests. *Id.* ¶¶ 110–13, 264.

When it comes to implementation, the Complaint explains how Student Association passed the National Affiliation Ban in direct response to Plaintiffs' protected speech (*i.e.*, Mr. Knowles' lecture), *id.* ¶¶ 71–80; how it automatically derecognized Young Americans for Freedom, *id.* ¶¶ 81–92; and how this ban applied to Plaintiffs but not to other similar groups, *id.* ¶¶ 93–98. It also details how Student Association replaced that policy "with a different requirement" that "accomplished the same objective as the National Affiliation Ban." *Id.* ¶¶ 105–08. So the viewpoint-based objectives of the National Affiliation Ban also taint the Legal Status Ban. And attempts to drive certain views out of the marketplace of ideas are "clearly impermissible" in a forum "open to unrestricted speech." *Husain*, 494 F.3d at 127.

Under the Legal Status Ban, the Complaint details how Student Association has unbridled discretion over whether to recognize a student group because no policy outlines comprehensive, objective guidelines governing these decisions. Compl., Doc. 37, ¶¶ 114–16. Thus, Student Association can refuse to recognize a club for any reason, and it can also refuse to recognize clubs that meet all listed criteria. *Id.* ¶¶ 261–263. It also has unbridled discretion over whether a student organization can conduct a fundraiser (*e.g.*, a car wash), Compl., Doc. 37, ¶¶ 143–47, 265; can enter into a

contract or conduct a financial transaction, *id.* ¶¶ 148–59, 265; or can retain its own property, *id.* ¶¶ 174–80, 265. And it has used this discretion to delay and interfere with Plaintiffs' expressive activities. *Id.* ¶¶ 160–73, 266.

These facts, which must be taken as true here, *Hawkins*, 2023 WL 5019602, at *1 n.2, amply demonstrate that Plaintiffs pleaded plausible viewpoint discrimination claims. The University Defendants' motion should be denied.

### 2. Defendants' policies are not reasonable given the speech-facilitating purpose of the student organization forum.

At the very least, Defendants' policies must also be "reasonable in light of the purpose served by the forum." *Cornelius v. NAACP Leg. Def. Fund*, 473 U.S. 788, 806 (1985); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49 (1983) ("limiting [the] forum to activities compatible with the intended purpose of the property"). They must at least be "consistent with a legitimate Government interest." *Byrne v. Rutledge*, 623 F.3d 46, 59–60 (2d Cir. 2010) (cleaned up). But they are not.

In the UB Recognition Policy, the University "recognizes that organized student groups are a valuable part of the student education environment" and that they can make "positive contributions to the primary educational mission of the University." Compl. Ex. 1, Doc. 37-1, at 1. Thus, the Complaint states the "University set up a forum for student organizations to engage in expression." Compl., Doc. 37, ¶ 55.

The New York regulations that the University Defendants cite (in the one paragraph they dedicate to explaining their policies' reasonableness, Univ. Defs.' Br., Doc. 40-1, at 11–12) confirm the forum's broad scope. They note it exists to promote "programs for cultural and educational enrichment," "student publications and other media," "student organizations … for the purpose and activities … that are of an educational, cultural, recreational[,] or social nature." 8 N.Y.C.R.R. § 302.14(c)(3).

This forum mirrors the *Southworth* forum, one where the university chose to ensure "students have the means to engage in dynamic discussions of philosophical,

religious, scientific, social, and political subjects in their extracurricular campus life outside the lecture hall." *Southworth*, 529 U.S. at 233. It "is distinguished not by discernable limits but by its vast, unexplored boundaries." *Id.* at 232. Its purpose is "facilitating the free and open exchange of ideas by, and among, students." *Id.* at 229; *Carroll v. Blinken*, 957 F.2d 991, 1000 (2d Cir. 1992) (describing student-fee funding for a group as serving as a "hands-on civics exercise" and "stimulat[ing] uninhibited and vigorous discussions on matters of campus and public concern").[5]

Defendants' policies are not reasonable because they do not limit the forum to its intended purposes. Derecognizing student groups simply because they choose to affiliate with off-campus entities does nothing to facilitate student speech; undercuts their ability to provide "educational, cultural, recreational[,] or social" events, 8 N.Y.C.R.R. § 302.14(c)(3); and stifles the exchange of ideas. Tailoring the National Affiliation Ban so that it applies only to some groups, while allowing others to retain their affiliation only makes the unreasonableness more apparent. Compl., Doc. 37, ¶¶ 92–98. Indeed, the policy was so unreasonable that Student Association repealed it once Plaintiffs filed suit and sought a preliminary injunction. *Id.* ¶¶ 99–104. And this attempt to control student groups does not become reasonable by embedding it in the Legal Status Ban and giving Student Association unfettered discretion to decide who can affiliate with off-campus entities and who cannot. *Id.* ¶¶ 110–13.

The other components of the Legal Status Ban fare no better. It bans student groups from maintaining their own existence as groups distinct from (though recognized by) Student Association. *Id.* ¶¶ 105–07, 121–27. Thus, it forces all student groups to merge into one—Student Association. *Id.* ¶¶ 181–82. After all, it is an axiom that if $a = b$ and $b = c$, then $a = c$. Likewise, if Young Americans for Freedom is subsumed within Student Association and College Democrats is too, then Young

---

[5]   *Carroll* is "not controlling" in part as it predated *Southworth*, but this does not impact its descriptions of the student-fee forum's purpose. *Amidon*, 508 F.3d at 100.

Americans for Freedom and College Democrats are one and the same organization. In the process, they lose their distinctive voice, as well as their ability to advance their views on campus. *Id.* ¶¶ 183–92. None of this facilitates speech.

The Legal Status Ban also outlaws student groups from defending their own rights by prohibiting them from "tak[ing] legal action" or "commenc[ing] litigation" *Id.* ¶ 109; *accord id.* ¶¶ 128–37. It prohibits them from signing contracts, holding funds, or even owning property. *Id.* ¶¶ 109, 138–80. Yet these are the very actions student groups must take if they are to organize "educational, cultural, recreational[,] or social" events. 8 N.Y.C.R.R. § 302.14(c)(3).

Last, the UB Recognition Policy just gives Student Association a blank check to write whatever policies it wants, with little (if any) meaningful oversight. Compl., Doc. 37, ¶¶ 65–70. And the University Defendants, who could hold Student Association accountable to constitutional standards, have abdicated that role. *Id.* ¶¶ 44–46.

Worse yet, as the "college classroom with its surrounding environs is peculiarly the marketplace of ideas," *Healy*, 408 U.S. at 180 (cleaned up), all these policies teach our future leaders precisely the wrong civics lesson. *Carroll*, 957 F.2d at 1000. They teach our future citizens that the government can micromanage with whom they associate; can foil their efforts to coordinate with like-minded people to advance a particular viewpoint by forcing them to associate with those who do not share that view; and can strip them of their property, their ability to coordinate expressive events, and even their ability to defend their rights. And when faced with such oppressive policies, those in a position to provide relief instead give their imprimatur to the oppression. To be sure, every government official who has ever tried to consolidate control over others thought doing so was the best, most efficient, and most reasonable approach. But this approach still remains incompatible with the purpose of the student organization forum here: facilitating student speech and encouraging unfettered debate in the marketplace of ideas. Instead, all three policies cast the prohibited "pall

of orthodoxy" over this forum and thus are not reasonable. *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1957). So Plaintiffs plausibly pleaded that these policies are unreasonable, rendering them illegal in this forum, and the University Defendants' motion should be denied.

### 3. Defendants' policies flunk the strict scrutiny that applies to speech that falls within the scope of this forum.

As Defendants' policies cannot survive even the most minimal standards for a limited public forum, they cannot withstand the strict scrutiny that applies here, where Plaintiffs' speech and association fall so well within the forum's scope. *Tyler*, 74 F.4th at 62. After all, strict scrutiny requires the University Defendants to prove that each policy "furthers a compelling interest and is narrowly tailored to achieve [it]." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015).

The only interest the University Defendants advance is "avoid[ing] the potential for financial irregularities and facilitat[ing] prompt review of the expenditure of UB student activity fees." Univ. Defs.' Br., Doc. 40-1, at 12. This not a compelling interest, and they have not shown that Plaintiffs' expression implicates it. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1881 (2021). Plus, they have a host of less intrusive alternatives to accomplish these goals. They need not ban all affiliations, merge all student groups into one entity, or micromanage every car wash to ensure that financial policies are followed. They could, perhaps, just enforce their financial policies.

### CONCLUSION

Neither the Eleventh Amendment, nor the availability of other fora that do not offer student-fee funding, nor some general rulemaking authority provides any basis for dismissing Plaintiffs' claims. The Complaint pleads facts showing that Defendants' policies violate Plaintiffs' rights and flunk any level of constitutional scrutiny. As these facts must be accepted as true and construed in their favor, the University Defendants' motion should be denied. *Hawkins*, 2023 WL 5019602, at *1 n.2.

Respectfully submitted this 23rd day of February, 2024.

DENIS A. KITCHEN
**DENIS A. KITCHEN, P.C.**
8899 Main Street
Williamsville, New York 14221
Telephone: (716) 631–5661
denis@kitchenlaw.com

*/s/ Travis C. Barham*

TYSON C. LANGHOFER*
Virginia Bar No. 95204
JONATHAN CALEB DALTON*
Virginia Bar No. 83790
**ALLIANCE DEFENDING FREEDOM**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707–4655
Facsimile: (571) 707–4656
tlanghofer@ADFlegal.org
cdalton@ADFlegal.org

TRAVIS C. BARHAM*
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road N.E., Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
tbarham@ADFlegal.org

* Admitted *pro hac vice.*

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, I electronically filed the foregoing using the CM/ECF system, which automatically sends an electronic notification with this filing to all attorneys of record.

Respectfully submitted this 23rd day of February, 2024.

*/s/ Travis C. Barham*
TRAVIS C. BARHAM*
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road N.E., Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
tbarham@ADFlegal.org

* Admitted *pro hac vice.*

*Attorney for Plaintiffs*

19