THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNIVERSITY AT BUFFALO YOUNG AMER-
ICANS FOR FREEDOM; JUSTIN HILL; JA-
COB CASSIDY; and AMELIA SLUSARZ,

*Plaintiffs*,

v.

UNIVERSITY AT BUFFALO STUDENT AS-
SOCIATION, INC.; BRIAN HAMLUCK in his
official capacity as the University at Buf-
falo Vice President for Student Life;
TOMÁS AGUIRRE in his official capacity
as the University at Buffalo Interim
Dean of Students; and PHYLLIS FLORO
in her Official Capacity as the Univer-
sity at Buffalo Director of Student En-
gagement,

*Defendants*.

CASE NO.: 1:23-cv-00480

THE HONORABLE
LAWRENCE J. VILARDO

**Jury Trial Demanded**

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANT UNIVERSITY AT BUFFALO STUDENT ASSOCIATION

### TABLE OF CONTENTS

Table of Authorities ...........................................................................................iv

Introduction ...................................................................................................... 1

Argument ........................................................................................................... 2

I.    Student Association's Rule 12(b)(1) motion should be denied because this
      Court retains jurisdiction over Plaintiffs' claims.............................................. 2

      A.  Plaintiffs have standing to challenge the National Affiliation Ban
          because it was enforced, inflicted injury, and remains in effect.................. 2

      B.  Plaintiffs' claims against the National Affiliation Ban remain live. ........... 5

          1.  Plaintiffs' nominal-damages claims cannot become moot. .................... 5

          2.  Defendants' National Affiliation Ban remains in effect, preserving
              Plaintiffs' declaratory and injunctive claims. ......................................... 6

II.   Student Association's Rule 12(b)(6) motion should be denied because
      Plaintiffs pleaded plausible claims for relief. .................................................... 8

      A.  Plaintiffs pleaded plausible expressive association claims........................ 10

          1.  Student Association wrongly tries to merge the free speech and
              expressive association analyses.............................................................. 10

          2.  Defendants' policies run roughshod over the free association rights
              of all student groups in this forum. ...................................................... 13

      B.  Plaintiffs pleaded plausible compelled speech claims.............................. 15

          1.  The Complaint details how Defendants' policies compel speech.......... 15

          2.  Compelled speech triggers strict scrutiny............................................. 16

      C.  Plaintiffs pleaded plausible content and viewpoint discrimination
          claims, as well as freedom of assembly claims. ......................................... 17

          1.  Defendants' policies must survive strict scrutiny as Plaintiffs'
              expression falls within the purpose of the forum.................................. 17

          2.  Defendants' policies flunk the most lenient standards for a limited
              public forum........................................................................................... 17

              a.  Defendants' policies are not viewpoint- (or content-) neutral and
                  were applied in a viewpoint-based way. ........................................... 17

              b.  Defendants' policies are not reasonable given the speech-
                  facilitating purposes of the forum. ................................................. 22

      D.  Plaintiffs pleaded plausible unconstitutional conditions claims. .............. 24

E.  Defendants' policies fail strict scrutiny. ....................................................25

Conclusion................................................................................................................25

Certificate of Service.............................................................................................27

TABLE OF AUTHORITIES

## CASES

*303 Creative LLC v. Elenis,*
    600 U.S. 570 (2023) ............................................................................ 11, 15

*Adson5th, Inc. v. Bluefin Media, Inc.,*
    2017 WL 2984552 (W.D.N.Y. July 13, 2017) (Vilardo, J.) ................................ 2

*Ali v. New York City Environmental Control Board,*
    670 F. App'x 26 (2d Cir. 2016) ........................................................................ 2

*Already, LLC v. Nike, Inc.,*
    568 U.S. 85 (2013) ........................................................................................ 6

*Amidon v. Student Association of the State University of New York at Albany,*
    508 F.3d 94 (2d Cir. 2007) ................................................................ 18, 19, 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................... 10

*ASU Students for Life v. Crow,*
    357 F. App'x 156 (9th Cir. 2009) .................................................................... 7

*Beal v. Stern,*
    184 F.3d 117 (2d Cir. 1999) ......................................................................... 19

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................... 10

*Board of Regents of the University of Wisconsin System v. Southworth,*
    529 U.S. 217 (2000) .............................................................. 1, 11, 16, 18, 24

*Borough of Duryea v. Guarnieri,*
    564 U.S. 379 (2011) .................................................................................... 12

*Boy Scouts of America v. Dale,*
    530 U.S. 640 (2000) ............................................................................... 11, 13

*Carter v. HealthPort Technologies, LLC,*
    822 F.3d 47 (2d Cir. 2016) ............................................................................. 2

*Chevron Corp. v. Donziger,*
    833 F.3d 74 (2d Cir. 2016) ............................................................................. 2

*Christian Legal Soc'y v. Martinez,*
    561 U.S. 661 (2010) .......................................................................... 1, 10, 11

*City of Mesquite v. Aladdin's Castle, Inc.,*
    455 U.S. 283 (1982) ...................................................................................... 6

*College Standard Magazine v. Student Association of the State University of New York at Albany*,
610 F.3d 33 (2d Cir. 2010) ............................................................ 7, 18

*Cornelius v. NAACP Legal Defense Fund*,
473 U.S. 788 (1985) .................................................................... 22, 23

*Cressman v. Thompson*,
798 F.3d 938 (10th Cir. 2015) .......................................................... 15

*Dambrot v. Central Michigan University*,
839 F. Supp. 477 (E.D. Mich. 1993) .................................................. 21

*Davis v. Federal Election Commission*,
554 U.S. 724 (2008) ........................................................................ 2

*DeJohn v. Temple University*,
537 F.3d 301 (3d Cir. 2008) ......................................................... 7, 16

*DiFolco v. MSNBC Cable, LLC*,
622 F.3d 104 (2d Cir. 2010) .............................................................. 9

*Elliot v. Cartagena*,
84 F.4th 481 (2d Cir. 2023) .............................................................. 2

*Elrod v. Burns*,
427 U.S. 347 (1976) ..................................................................... 3, 5

*Federal Communications Commission v. League of Women Voters of California*,
468 U.S. 364 (1984) ...................................................................... 24

*Fighting Finest, Inc. v. Bratton*,
95 F.3d 224 (2d Cir. 1996) .............................................................. 14

*Forsyth County v. Nationalist Movement*,
505 U.S. 123 (1992) .................................................................. 21, 22

*Freudenberg v. E\*Trade Financial Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) ............................................... 8, 9

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000) ........................................................................ 6

*Fulton v. City of Philadelphia*,
141 S. Ct. 1868 (2021) .................................................................... 25

*Gayle v. Gonyea*,
313 F.3d 677 (2d Cir. 2022) .............................................................. 2

*Good News Club v. Milford Central School*,
533 U.S. 98 (2001) ........................................................................ 22

*Green v. Miss United States of America, LLC*,
52 F.4th 773 (9th Cir. 2022) ............................................................ 13

*Harty v. West Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022) ................................................................ 2

*Hawkins v. Miller*,
   2023 WL 5019602 (W.D.N.Y. Aug. 7, 2023) (Vilardo, J.) .......... 9, 10, 17, 20, 25

*Hays County Guardian v. Supple*,
   969 F.2d 111 (5th Cir. 1992) ............................................................. 17

*Healy v. James*,
   408 U.S. 169 (1972) ........................................................... 1, 3, 5, 14, 24

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*,
   565 U.S. 171 (2012) ......................................................................... 12

*Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston*,
   515 U.S. 557 (1995) ......................................................................... 11

*Jacoby & Meyers, LLP v. Presiding Justices*,
   852 F.3d 178 (2d Cir. 2017) .............................................................. 13

*Janus v. American Federation of State, County, & Municipal Employees, Council 31*,
   138 S. Ct. 2448 (2018) ................................................................. 15, 16

*Johnson v. Perry*,
   859 F.3d 156 (2d Cir. 2017) .............................................................. 17

*Justice for All v. Faulkner*,
   410 F.3d 760 (5th Cir. 2005) ............................................................. 17

*Lamb's Chapel v. Center Moriches Union Free School District*,
   508 U.S. 348 (1993) ......................................................................... 22

*Manning v. Erhardt + Leimer, Inc.*,
   2020 WL 759656 (W.D.N.Y. Feb. 7, 2020) (Vilardo, J.) ................................. 8, 9

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ......................................................................... 22

*Merrill v. Schell*,
   279 F. Supp. 3d 438 (W.D.N.Y. 2017) (Vilardo, J.) ....................................... 9

*New Hope Family Services v. Poole*,
   966 F.3d 145 (2d Cir. 2020) ........................................................... 12, 16

*New York Civil Liberties Union v. Grandeau*,
   528 F.3d 122 (2d Cir. 2008) ............................................................... 5

*Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*,
   508 U.S. 656 (1993) .......................................................................... 7

*OSU Student Alliance v. Ray,*
    699 F.3d 1053 (9th Cir. 2012) ................................................................. 17

*Peck ex rel. Peck v. Baldwinsville Central School District,*
    426 U.S. 617 (2d Cir. 2005) ................................................................... 16

*Perry v. Sindermann,*
    408 U.S. 593 (1972) ................................................................................ 24

*Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh,*
    229 F.3d 435 (3d Cir. 2020) ................................................................... 13

*Pro-Life Cougars v. University of Houston,*
    259 F. Supp. 2d 575 (S.D. Tex. 2003) ..................................................... 7

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) .......................................................................... 21, 25

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
    487 U.S. 781 (1988) ................................................................................ 18

*Roberts v. United States Jaycees,*
    468 U.S. 609 (1984) .......................................................................... 12, 14

*Rock for Life-UMBC v. Hrabowski,*
    411 F. App'x 541 (4th Cir. 2010) ............................................................. 8

*Rosenberger v. Rector & Visitors of the University of Virginia,*
    515 U.S. 819 (1995) .................................................................... 1, 11, 18

*Rust v. Sullivan,*
    500 U.S. 173 (1991) ................................................................................ 24

*Sira v. Morton,*
    380 F.3d 57 (2d Cir. 2004) ...................................................................... 9

*Slattery v. Hochul,*
    61 F.4th 278 (2d Cir. 2023) ............................................ 12, 13, 14, 15, 25

*State Employee Bargaining Agent Coalition v. Rowland,*
    718 F.3d 126 (2d Cir. 2013) ................................................................... 12

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ............................................................................ 4, 5

*Tabbaa v. Chertoff,*
    509 F.3d 89 (2d Cir. 2007) .................................................................... 14

*Talarico Brothers Building Corp. v. Union Carbide Corp.,*
    73 F.4th 126 (2d Cir. 2023) ..................................................................... 9

*Taylor v. Principal Life Insurance Co.,*
    2023 WL 1997040 (W.D.N.Y. Feb. 14, 2023) (Vilardo, J.) ................. 8, 20

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
    137 S. Ct. 2012 (2017) ........................................................... 6

*Tyler v. City of Kingston,*
    593 F. Supp. 3d 27 (N.D.N.Y. 2022) ................................. 22

*Tyler v. City of Kingston,*
    74 F.4th 57 (2d Cir. 2023) ............................................ 17, 25

*United States v. Stevens,*
    559 U.S. 460 (2010) .............................................................. 21

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953) ................................................................ 6

*University of Cincinnati Chapter of Young Americans for Liberty v. Williams,*
    2012 WL 2160969 (S.D. Ohio June 12, 2012) ..................... 7

*Uzuegbunam v. Preczewski,*
    141 S. Ct. 792 (2021) ..................................................... 1, 5, 6

*Walker v. Texas Division, Sons of Confederate Veterans, Inc.,*
    576 U.S. 200 (2015) .............................................................. 16

*West Virginia State Board of Education v. Barnette,*
    319 U.S. 624 (1943) ........................................................ 11, 16

*Widmar v. Vincent,*
    454 U.S. 263 (1981) ......................................................... 1, 17

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ........................................................ 17, 25

*Young America's Foundation v. Kaler,*
    14 F.4th 879 (8th Cir. 2021) ................................................. 8

## RULES

FED. R. CIV. P. 12(b)(1) ................................................................. 2

FED. R. CIV. P. 12(b)(6) ............................................................ 8, 9

FED. R. CIV. P. 8 ............................................................................ 1

## TREATISES

5B WRIGHT & MILLER,
    FEDERAL PRACTICE & PROCEDURE § 1350 (4th ed.) ............ 2

## OTHER AUTHORITIES

*Automatic,*
    OXFORD ENGLISH DICTIONARY, https://bit.ly/3OJGQgV ...... 3

*Incorporation by Reference,*
    BLACK'S LAW DICTIONARY (7th ed.) ..................................................................... 9

## INTRODUCTION

Over 50 years ago, the Supreme Court condemned a public university's effort to prevent student groups from affiliating with like-minded, but disfavored, off-campus entities. *Healy v. James*, 408 U.S. 169 (1972). For at least 40 years, it has consistently struck down efforts to gerrymander student organization fora to exclude disfavored groups. *See generally Widmar v. Vincent*, 454 U.S. 263 (1981); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995); *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217 (2000); *accord Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 698–99 (2010) (condemning selective enforcement).

Yet Defendants are doing all this with the three policies challenged here. Their National Affiliation Ban derecognized some student groups for affiliating with off-campus allies. Their Legal Status Ban recasts this policy, giving Student Association unbridled discretion. It also requires student groups to merge into Student Association to get recognition, losing their separate existence and their ability to organize events, own property, and defend their rights. And via the UB Recognition Policy, the University Defendants give Student Association free rein.

Student Association seeks to dodge accountability first by raising justiciability. In the process, it contradicts its own resolutions (arguing that an "automatic derecognition" is not really "automatic," 2d Am. V. Compl. (Compl.), Doc. 37, ¶ 81), overlooks the latest precedent on nominal damages, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), and ignores how its Legal Status Ban recasts the policy it repealed only after being sued, Compl., Doc. 37, ¶¶ 71–86, 110–13. These efforts fail.

Next, Student Association tries to shoehorn all of Plaintiffs' claims into the most lenient scrutiny for limited public fora. Supreme Court and Second Circuit precedent do not permit this, subjecting these three policies to strict scrutiny instead. But these policies cannot even survive the scrutiny Student Association seeks. Hence, Plaintiffs have pleaded plausible claims, more than satisfying FED. R. CIV. P. 8.

ARGUMENT[1]

## I. Student Association's Rule 12(b)(1) motion should be denied because this Court retains jurisdiction over Plaintiffs' claims.

Student Association moved to dismiss all claims against the National Affiliation Ban for lack of jurisdiction under FED. R. CIV. P. 12(b)(1). Student Ass'n Br., Doc. 41-8, at 9–13. This is a fact-based motion, given the offered extrinsic evidence. *Adson5th, Inc. v. Bluefin Media, Inc.*, 2017 WL 2984552, \*5 (W.D.N.Y. July 13, 2017) (Vilardo, J.). But this evidence, which can impact only jurisdiction, "is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing" and a live controversy. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441–42 (2d Cir. 2022). Plus, Plaintiffs' Complaint is evidence countering Student Association's narrative. *Elliot v. Cartagena*, 84 F.4th 481, 486 (2d Cir. 2023) ("'A verified complaint is to be treated as an affidavit….'" (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2022)). And even here, "it is well-settled that the complaint will be construed broadly and liberally." 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1350 (4th ed.).

### A. Plaintiffs have standing to challenge the National Affiliation Ban because it was enforced, inflicted injury, and remains in effect.

Student Association insists Plaintiffs lack standing to challenge the National Affiliation Ban, but it only addresses one standing component: injury in fact. Student Ass'n Br., Doc. 41-8, at 12–13.[2] The Complaint details facts showing Plaintiffs suffered injuries from that ban that remains in effect. Thus, they have standing.

To assess standing, this Court must evaluate the facts as they existed "when the suit was filed." *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)); *Ali v. N.Y. City Env't Control Bd.*, 670 F. App'x 26, 27 (2d Cir. 2016) ("Standing is determined based on the

---

[1]   Plaintiffs incorporate their response to University Defendants, Doc. 42.
[2]   All pinpoint citations to filed documents refer to the internal page numbering or bates-stamp number (if such exist), not the ECF page number.

litigant's position at the time he filed the complaint.").

When Plaintiffs filed suit on June 1, 2023, Pl.'s V. Compl., Doc. 1, at 1 (noting date in ECF header), Young Americans for Freedom had just experienced "automatic derecognition" because it did not comply with the National Affiliation Ban. Compl., Doc. 37, ¶¶ 81–82. This "automatic derecognition" violated Plaintiffs' rights. After all, over 50 years ago, the Supreme Court ruled, when a college derecognized a student group due to its affiliations, that "[t]here can be no doubt that denial of official recognition, without justification, to college organization burdens or abridges that [First Amendment] associational right." *Healy*, 408 U.S. at 181. This violation does not just constitute an injury (all that is needed for standing), it is an irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

In response, Student Association insists it "never actually implemented or enforced" this ban "against Plaintiffs." Student Ass'n Br., Doc. 41-8, at 13. But this contradicts Student Association's duly adopted resolution, attempting to revise history to avoid accountability. After adopting the National Affiliation Ban in response to Plaintiffs' speech, Compl., Doc. 37, ¶¶ 71–80, Student Association passed a resolution, requiring all student organizations to comply with this ban by May 31, 2023, and specifying that "failure to do so would result in automatic derecognition." *Id.* ¶ 82; Compl. Ex. 4, Doc. 37-4, at 1. Once sued, it repealed the policy and "deemed [it] never to have taken effect." Compl., Doc. 37, ¶ 101. But Student Association cannot revise history, undo past events, or deem that they never occurred. *Id.* ¶¶ 102–03. Now, it says it never implemented the ban by later removing benefits. Student Ass'n Br., Doc. 41-8, at 13. But "automatic" means a penalty "imposed as a necessary and inevitable result of a fixed rule or particular set of circumstances." *Automatic* at 7.b, OXFORD ENGLISH DICTIONARY, https://bit.ly/3OJGQgV. So "automatic derecognition" means no subsequent action was needed for this derecognition to occur.

3

Also, despite what Student Association implies with "Repealed Recognition Policy," Student Ass'n Br., Doc. 41-8, at 12–13, and states, Paul-Odionhin Decl., Doc. 41-1, ¶ 44, the National Affiliation Ban remains in effect. Rather than just banning affiliations with off-campus entities (something *Healy* condemns), Student Association now insists on subjecting them to its own unbridled discretion. The Legal Status Ban requires student groups to let Student Association review "[a]ny agreement for a … club to be recognized as a chapter of any outside organization." Compl., Doc. 37, ¶ 110. Of course, Student Association reviews these "pursuant to [its] contract policy(ies)." *Id.* But those policies provide no criteria—let alone comprehensive and objective ones—for assessing whether a student group should be allowed to be recognized as a chapter of any outside organization. *Id.* ¶¶ 111–13; Compl. Ex. 8, Doc. 37-8, at 1–3.[3] And Student Association points to nothing that limits this discretion. Paul-Odionhin Decl., Doc. 41-1, ¶¶ 37–44. So Student Association retains unfettered discretion, which is a statement of fact (not a legal conclusion) given these policies.

Thus, Plaintiffs have standing, including for injunctive and declaratory relief. First, they have "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest." *Susan B. Anthony List ("SBA List") v. Driehaus*, 573 U.S. 149, 161 (2014) (cleaned up). They wish to continue affiliating with Young America's Foundation. Compl., Doc. 37, ¶¶ 90–91. Second, their "intended future conduct is arguably … proscribed by the [policy] they wish to challenge." *SBA List*, 573 U.S. at 162. The Legal Status Ban forces them to get Student Association's permission to continue this affiliation, and it retains unlimited discretion over whether to allow it. Compl., Doc. 37, ¶¶ 110–13. Last "the threat of future enforcement … is substantial." *SBA List*, 573 U.S. at 164. "Most obviously, there is a history of past

---

[3]   One provision suggests that, if a student group wants to become a chapter of an outside entity, Student Association has to do so instead. Compl. Ex. 8, Doc. 37-8, at 2 § 6.07 ("SA (rather than the club) should be listed as the party to the contract.").

enforcement here[.]" *Id.* Student Association responded to Plaintiffs hosting Mr. Knowles by trying to stop their affiliation. Compl., Doc. 37, ¶¶ 71–80. Facing the heat of litigation, it adopted a "different requirement" that "accomplishe[s] the same objective … using different means," *id.* ¶¶ 105, 108, those new means being giving itself broad discretion over whether groups can continue their off-campus affiliations, *id.* ¶¶ 110–13. This satisfies Article III requirements for standing (and ripeness).[4]

### B. Plaintiffs' claims against the National Affiliation Ban remain live.

Student Association says Plaintiffs' claims against the National Affiliation Ban are moot after its repeal. Student Ass'n Br., Doc. 41-8, at 10–12. That's wrong since (1) Plaintiffs seek nominal damages and (2) the ban remains in effect.

#### 1. Plaintiffs' nominal-damages claims cannot become moot.

When a plaintiff seeks nominal damages for past, completed constitutional violations, that claim cannot become moot. *Uzuegbunam*, 141 S. Ct. 792. There, college officials twice censored a student. *Id.* at 796–97. As here, once sued, the officials "decided to get rid of the challenged policies" and raised mootness. *Id.* at 797.

There, it was "undisputed that [the student] experienced a completed violation of his constitutional rights." *Id.* at 802. Here, the Complaint states facts showing the same. For Plaintiffs refused to terminate their affiliation, Compl., Doc. 37, ¶ 85, and thus, they suffered "automatic derecognition," *id.* ¶ 82; *accord id.* ¶¶ 83–86. This was a completed violation of their First Amendment rights, *Healy*, 408 U.S. at 181, and an "irreparable harm." *Elrod*, 427 U.S. at 373.

Having endured a "completed violation of his … rights," *Uzuegbunam*, 141 S. Ct. at 802, the student "sought nominal damages," *id.* at 797 (cleaned up). Plaintiffs seek the same from Student Association. Compl., Doc. 37, ¶ 199; *id.* at 39 ¶ F.

---

[4]   Student Association spends a footnote equating ripeness with standing. Student Ass'n Br., Doc. 41-8, at 13 n.6. The case it cites involved a "not yet adopted" policy, *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 (2d Cir. 2008), unlike the duly adopted policies here. Compl., Doc. 37, ¶¶ 78–80, 105–10.

But the Eleventh Circuit ruled that the student's case was still moot because "nominal damages could not by itself establish standing." *Uzuegbunam*, 141 S. Ct. at 797. The Supreme Court reversed by a vote of 8–1. *Id.* at 802. It "conclude[d] that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Id.* at 801–02. As a result, that student's claims were not moot, and neither are Plaintiffs'.

### 2.  Defendants' National Affiliation Ban remains in effect, preserving Plaintiffs' declaratory and injunctive claims.

Student Association invokes the "voluntary cessation" principle, insisting its repeal of the National Affiliation Ban moots all claims. Student Ass'n Br., Doc. 41-8, at 10–11. But for this to apply, Student Association faces a "'heavy burden' of making 'absolutely clear' that it could not revert to its policy of [restricting affiliations]." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). As it has not, Plaintiffs' declaratory and injunctive claims remain live.

Student Association insists the repeal is conclusive. But the city eliminated the challenged statutory language, and the Supreme Court still concluded this "would not preclude it from reenacting precisely the same provision." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). The sentence Student Association cites, Student Ass'n Br., Doc. 41-8, at 10, notes that cessation "relat[es] to the exercise rather than the existence of judicial power." *Aladdin's Castle*, 455 U.S. at 289. Thus, "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant to return to his old ways." *Id.* at 289 n. 10 (cleaned up) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)); *accord Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91–92 (2013).

What's more, Student Association still defends the National Affiliation Ban. Student Ass'n Br., Doc. 41-8, at 22–23. Courts routinely reject mootness claims when

universities still defend the challenged policies. *E.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301, 309, 311 (3d Cir. 2008); *Univ. of Cincinnati Chapter of Young Ams. for Liberty v. Williams*, 2012 WL 2160969, *2 n.1 (S.D. Ohio June 12, 2012); *Pro-Life Cougars v. Univ. of Hous.*, 259 F. Supp. 2d 575, 581 (S.D. Tex. 2003).

Here, "[t]here is no mere risk that [Defendants] will repeat [their] allegedly wrongful conduct; [they have] already done so." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville ("Ne. Fla.")*, 508 U.S. 656, 662 (1993). For the Legal Status Ban contains a provision granting Student Association unbridled discretion over whether student groups can affiliate with off-campus entities. Compl., Doc. 37, ¶¶ 110–13; *accord supra* Argument I.A. Moving from an outright ban to an unbridled discretion review affects nothing. For it does not matter that "the new [policy] differs in certain respects from the old one." *Ne. Fla.*, 508 U.S. at 662. Otherwise, "a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Id.* Even if the new policy "disadvantage[s] [Plaintiffs] to a lesser degree than the old one," their claims remain live if the new one "disadvantages them in the same fundamental way." *Id.* Here, Plaintiffs challenged the National Affiliation Ban because restricting them from affiliating with like-minded, off-campus entities violated their constitutional rights. Subjecting the same right to an unbridled discretion review does the same "in the same fundamental way." *Id.* Hence, Plaintiffs' claims against the National Affiliation Ban remain live.

The four cases Student Association cites do not alter this, let alone "mandate" anything. Student Ass'n Br., Doc. 41-8, at 11. The Second Circuit faced a situation where the plaintiffs did "not challenge the new funding policy" and where "there [was] no indication that the former, challenged funding policy will be reinstated." *Coll. Standard Magazine v. Student Ass'n of State Univ. of N.Y. at Albany*, 610 F.3d 33, 34 (2d Cir. 2010). The Ninth and Fourth faced the same. *ASU Students for Life v. Crow*, 357 F. App'x 156, 157 (9th Cir. 2009) ("ASU Students for Life … is not challenging

this new policy. It is absolutely clear that ASU will not revert…" (cleaned up)); *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 550 (4th Cir. 2010) (noting "permanent revisions" that "plaintiffs concede … render the policy facially constitutional"). Here, Plaintiffs challenge the Legal Status Ban, including the updated affiliation ban. The Eighth Circuit confronted a new policy that contained "more defined terms and standards." *Young Am.'s Found. v. Kaler*, 14 F.4th 879, 886 (8th Cir. 2021). Here, the Legal Status Ban provides no standards for determining whether Student Association should approve or reject an affiliation request. Compl., Doc. 37, ¶¶ 110–13; *accord supra* Argument I.A. Hence, despite these cases, Plaintiffs' claims remain live.

## II.  Student Association's Rule 12(b)(6) motion should be denied because Plaintiffs pleaded plausible claims for relief.

Student Association moves under FED. R. CIV. P. 12(b)(6) to dismiss Plaintiffs' claims. Student Ass'n Br., Doc. 41-8, at 13–25. Such motions are "generally viewed with disfavor." *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 178 (S.D.N.Y. 2010). They permit this Court to review only the Complaint and its exhibits. *Taylor v. Principal Life Ins. Co.*, 2023 WL 1997040, at *1 (W.D.N.Y. Feb. 14, 2023) (Vilardo, J.) (noting the Court "may consider any 'documents … [that the] plaintiff[ ] … relied on in bringing the suit'" (quotation omitted)). So for this motion, this Court should exclude Ms. Paul-Odionhin's declaration, as well as Exhibits A and C. Paul-Odionhin Decl., Doc. 41-1; Ex. A, Doc. 41-2; Ex. C, Doc. 41-4.[5] It should do the same to Mr. Saykin's declaration and the first page of its exhibit. Saykin Decl., Doc. 41-6; Ex. A, Doc. 41-7.[6] If it does not, it must "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56," a "conversion requirement [that] is 'strictly enforced.'" *Manning v. Erhardt + Leimer, Inc.*, 2020 WL 759656, at

---

[5]   Paul-Odionhin Decl., Ex. B, Doc. 41-3, appears to be Compl. Ex. 8, Doc. 37-8. Ex. D, Doc. 41-5, appears to be Compl. Ex. 2, Doc. 37-2.
[6]   The exhibit, minus counsel's email, appears to be Compl. Ex. 5, Doc. 37-5.

*9 (W.D.N.Y. Feb. 7, 2020) (Vilardo, J.) (quotations omitted).

Student Association urges this Court to consider Paul-Odionhin Decl., Ex. C, Doc. 41-4. Student Ass'n Br., Doc. 41-8, at 5 n.4, 14. Yes, this Court can consider the complaint, its exhibits, "documents incorporated by reference in the complaint," and documents whose "terms and effect" the complaint "relies heavily upon," making them "integral to the complaint." *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010). But considering this exhibit would be error, as it does not meet these criteria. *Id.* at 113. The Complaint refers to a contract signed in 2017. Compl., Doc. 37, ¶ 83. This exhibit was signed the year before. Paul-Odionhin Decl., Ex. C, Doc. 41-4, at 2. Incorporation by reference requires "a statement that the secondary document should be treated as if it were contained within the primary one." *Incorporation by Reference*, BLACK'S LAW DICTIONARY (7th ed.). The Complaint makes no such statement. The Complaint briefly refers to a contract twice. Compl., Doc. 37, ¶¶ 83–84. "Limited … reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint," let alone render them "integral." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). This exhibit does not affect the Complaint's sufficiency, as it is not a waiver of constitutional rights.

Under FED. R. CIV. P. 12(b)(6), the "'issue is not whether [Plaintiffs] will or might ultimately prevail on [their] claim[s], but whether [they are] entitled to offer evidence in support of the allegations in [their] complaint.'" *Merrill v. Schell*, 279 F. Supp. 3d 438, 442 (W.D.N.Y. 2017) (Vilardo, J.) (quotation omitted). This Court must construe the complaint liberally, *Freudenberg*, 712 F. Supp. 2d at 179, "accept all factual allegations as true[,] and draw[ ] all reasonable inferences in [Plaintiffs'] favor," *Hawkins v. Miller*, 2023 WL 5019602, at *1 n.2 (W.D.N.Y. Aug. 7, 2023) (Vilardo, J.) (cleaned up) (quotation omitted). Thus, "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Talarico Bros. Building Corp. v. Union Carbide Corp.*, 73 F.4th 126, 140 (2d Cir. 2023) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To defeat this motion Plaintiffs' Complaint "'must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face."'" *Hawkins*, 2023 WL 5019602, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570). This does not impose a "probability requirement" but just calls for "factual content that allows [this C]ourt to draw the reasonable inference that [Student Association is] liable for the misconduct alleged." *Id.* (citing and quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556); *accord Twombly*, 550 U.S. at 555 (requiring complaints to "raise a right to relief above a speculative level").

The Complaint pleads facts about Defendants' policies, their enforcement, and the harm to Plaintiffs. As it "raise[s] a reasonable expectation that discovery will reveal evidence of illegal[ity]," this motion should be denied.[7] *Twombly*, 550 U.S. at 556.

## A. Plaintiffs pleaded plausible expressive association claims.

### 1. Student Association wrongly tries to merge the free speech and expressive association analyses.

Student Association insists Plaintiffs' two expressive association claims must be reviewed using the "same framework as a freedom of speech claim." Student Ass'n Br., Doc. 41-8, at 14. While this may be true in some cases, this is not one of them.

First, the case Student Association cites does not mandate this. It involved an "all-comers" policy, such that all student groups had to accept all students. *Martinez*, 561 U.S. at 678 (limiting the opinion to such a policy). There, the "expressive-association and free-speech argument merge: *Who* speaks on its behalf, CLS reasons, colors *what* is conveyed." *Id.* at 680. Here, the Legal Status Ban does not *just* affect what messages Plaintiffs can communicate or avoid. Compl., Doc. 37, ¶¶ 181–92. It also prevents Young Americans for Freedom from existing as a distinct group, *id.* ¶¶ 121–

---

[7]   Counsel's comment—to which Student Association objects, Student Ass'n Br., Doc. 41-8, at 2 & n.1—merely summarizes this principle.

27; defending its rights in court, *id.* ¶¶ 128–30; accessing its own funds, *id.* ¶¶ 131–37; and doing all the things that a group does to operate (*e.g.*, raise funds, hold funds, sign contracts, own property), *id.* ¶¶ 138–80. So Plaintiffs' associational rights extend beyond their free speech rights. Where "these intertwined rights" do *not* "arise in exactly the same context," *Martinez*, 561 U.S. at 681, it would be "anomalous" to reduce the scrutiny applied to each to the lowest common denominator.

*Martinez* also noted that, given the type of policy at issue, separately analyzing the expressive association claim would "invalidat[e] a defining characteristic of limited public forums," namely the ability to limit them to certain groups. *Id.* But here, the question is not whether Young Americans for Freedom belongs in Student Association's forum. It has been on campus and recognized by Student Association for at least six years. Compl., Doc. 37, ¶¶ 49, 71. The question is whether the group can continue to exist as a distinct organization (not absorbed into Student Association) and retain the rights of a distinct organization. *Id.* ¶¶ 128–80. Thus, *Martinez's* rationale provides no basis for merging the free speech and association analysis here.[8]

Second, more recent Supreme Court rulings call into question *Martinez's* merging of the analyses. Just last year, it equated the compelled speech in *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943), and *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995), with the expressive association in *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000). *303 Creative LLC v. Elenis*, 600 U.S. 570, 585–86, 588–89 (2023). Later, it observed that just as the First Amendment protects "an individual's right to speak his mind," it "[e]qually … protects acts of expressive association" and prohibits compelled speech. *Id.* at 586. Yet compelled speech cases

---

[8] *Martinez's* third reason—that student fees are a "state subsidy," *Martinez*, 561 U.S. at 682—is contradicted by all other Supreme Court student-fee cases. *Rosenberger*, 515 U.S. at 841 (finding student fees are "an exaction upon students," not university funds); *id.* at 851–52 (O'Connor, J., concurring) ("The Student Activities fund … represents not government resources … but a fund that simply belongs to the students."); *Southworth*, 529 U.S. at 229 (distinguishing student fees from government funds).

are not subject to forum analysis.

Similarly, two years after *Martinez*, the Supreme Court reaffirmed that the "right to freedom of association is a right enjoyed by religious and secular groups alike." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 189 (2012). Justice Alito emphasized that this freedom "applies with special force" to religious groups, who "are the archetype of associations formed for expressive purposes." *Id.* at 200 (Alito, J., concurring). In so doing, he was merely repeating what the Supreme Court has said for decades: that the freedom of expressive association is an outgrowth of all First Amendment rights, not just the free speech right. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) ("An individual's freedom to speak, to worship, and to petition government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort towards those ends were not also guaranteed."). Thus, just as with other First Amendment rights, "[c]ourts should not presume … that Speech Clause precedents necessarily and in every case resolve [expressive association] claims." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011).

The Second Circuit confirms this Court should reject Student Association's "least common denominator" approach. Three years after *Martinez*, it analyzed the expressive association claim of labor unions and state employees and then declined to review their First Amendment retaliation claim. *State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 132–37 & n.13 (2d Cir. 2013). In 2020, it separately reviewed the free exercise, compelled speech, and expressive association claims of a Christian adoption agency, rather than merging the last into the other two. *New Hope Fam. Servs. v. Poole*, 966 F.3d 145, 160–80 (2d Cir. 2020). Just last year, it dismissed a plaintiff's free speech and free exercise claims, while reversing dismissal of the expressive association claim. *Slattery v. Hochul*, 61 F.4th 278, 286–95 (2d Cir. 2023). So no "least common denominator theory should apply here," though Plaintiffs pleaded

plausible claims either way. *See infra* Argument II.A.2, II.C.

### 2. Defendants' policies run roughshod over the free association rights of all student groups in this forum.

Plaintiffs' expressive association claims are more than plausible because the Complaint pleads facts showing (1) Plaintiffs "engaged in expressive association," and (2) Defendants' policies "significantly affect[ ] the group's ability to advocate its viewpoints" and even to exist and function as a group. *Slattery*, 61 F.4th at 286 (citing *Dale*, 530 U.S. 640; *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 442 (3d Cir. 2020)). As the Complaint pleads facts showing that those policies "impose[ ] 'severe burdens on associational rights,'" strict scrutiny applies. *Id.* (quoting *Jacoby & Meyers, LLP v. Presiding Justices*, 852 F.3d 178, 191 (2d Cir. 2017)).

First, the Complaint pleads facts showing Plaintiffs "engaged in expressive association." *Id.* "This standard is not demanding," as the "'Supreme Court has cast a fairly wide net in its definition of what comprises expressive activity.'" *Green v. Miss U.S.A., LLC*, 52 F.4th 773, 803 (9th Cir. 2022) (Van Dyke, J., concurring) (quoting *Pi Lambda Phi*, 229 F.3d at 443). The Complaint highlights how Plaintiffs engage in expression through Young Americans for Freedom, Compl., Doc. 37, ¶¶ 49–54, 71–74. It notes how their affiliation with Young America's Foundation is critical to this and to ensuring that their group remains "the organization it was formed to be and that its members want it to be." *Id.* ¶¶ 83–85, 90–91. It notes how they want to continue associating to advance their shared views. *Id.* ¶¶ 121, 183, 192.

Second, the Complaint pleads facts showing Defendants' policies "significantly affect[ ] [their group's] ability to advocate its viewpoints" and even to exist and function. *Slattery*, 61 F.4th at 286. The Legal Status Ban prohibits student groups from having any separate legal existence from Student Association. Compl., Doc. 37, ¶¶ 107, 109, 121–27. Thus, it merges Young Americans for Freedom into Student Association, which also encompasses every other student group, including those Plaintiffs

13

would never join or support but from whom they could not then dissociate. *Id.* ¶¶ 181–92. It also bans them from having "any accounts or financial activities outside of SA," thus prohibiting groups from holding cash or raising funds, activities essential to continuing the group's expression. *Id.* ¶¶ 107, 109, 138–47. It bans them from signing contracts, a provision Student Association used to impede their events. *Id.* ¶¶ 107, 109, 148–72. It prevents them from owning property as a club. *Id.* ¶¶ 174–80. If they want to affiliate with an off-campus organization, they must first get Student Association's permission, which it can grant or deny for any reason. *Id.* ¶¶ 110–13. This ban even prohibits them from defending their own rights in court. *Id.* ¶¶ 109, 126–27. Thus, months have passed since they could access their club funds, which has impeded their ability to purchase items for expressive activities. *Id.* ¶¶ 128–37.

These burdens easily qualify as "severe," *Slattery*, 61 F.4th at 286, "direct and substantial," and "significant," *Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007) (quoting *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996)). The government unconstitutionally burdens the right of association when it "seeks to impose penalties or withhold benefits from individuals because of their membership in a disfavored group," *Roberts*, 468 U.S. at 622 (citing *Healy*, 408 U.S. at 180–84); *Tabbaa*, 508 F.3d at 101 (same, citing same), or when it "forces the group to accept members it does not desire." *Roberts*, 468 U.S. at 623; *Slattery*, 61 F.4th at 287.

Here, Defendants automatically derecognized Plaintiffs for maintaining their national affiliation, Compl., Doc. 37, ¶¶ 71–86; adopted the Legal Status Ban to accomplish the same objective, *id.* ¶¶ 105–08; and still restrict Plaintiffs' ability to affiliate, *id.* ¶¶ 110–13. Plus, the Legal Status Ban compels all groups to merge into Student Association (and thus with each other), preventing Plaintiffs from not associating with those who hold opposing views. *Id.* ¶¶ 181–92; *Roberts*, 468 U.S. at 623 ("Freedom of association … plainly presupposes a freedom not to associate."). Add to this the other burdens (*e.g.*, inability to own property, raise funds, sign contracts,

etc.), and the overall burden is "severe," especially when "weighing all reasonable inferences in [Plaintiffs'] favor." *Slattery*, 61 F.4th at 288–89. Thus, strict scrutiny applies, *id.* at 287, 289–90, and Defendants flunk it. *See infra* Argument II.E.

**B. Plaintiffs pleaded plausible compelled speech claims.**

**1. The Complaint details how Defendants' policies compel speech.**

Under the First Amendment, the government "may not compel a person to speak its own preferred message," "to speak its message when he would prefer to remain silent," or "to include other ideas with his own speech that he would prefer not to include." *303 Creative*, 600 U.S. at 587. This principle also extends to expressive association. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018) ("The right to eschew association for expressive purposes is likewise protected." (quotation omitted)). Plaintiffs pleaded plausible claims that Defendants' policies violate this "cardinal constitutional command," *id.*, because the Complaint identifies "(1) speech; (2) to which [they] object[ ]; that is (3) compelled by some governmental action." *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015).

The Complaint identifies five student groups recognized by Student Association who advance messages with which Plaintiffs "frequently disagree." Compl., Doc. 37, ¶¶ 184–87. It details how Plaintiffs would not voluntarily associate with these groups or "take steps to advance the views of these groups." *Id.* It also details how the Legal Status Ban "merges all student organizations into one." *Id.* ¶ 182. That's because it says none of them can maintain any separate existence. *Id.* ¶¶ 107, 109, 181. So even though these groups all espouse very different messages, this ban "merges all these disparate organizations into one." *Id.* ¶ 189. Not only does this compel association, but it also means that any time one group tries to speak, it is really Student Association that is speaking (as no other group legally exists). *Id.* ¶ 190. And any message thus conveyed is equally attributable to Young Americans for Freedom and its members (including Plaintiffs) "as it is also merged with the Student Association."

15

*Id.* ¶ 191. Plaintiffs have no way of distancing themselves from these other groups or other messages with which they disagree. *Id.* ¶ 192. That's compelled speech.

### 2. Compelled speech triggers strict scrutiny.

Student Association largely bypasses this compelled speech claim, turning to forum doctrine. Student Ass'n Br., Doc. 41-8, at 13–15. But because compelled speech violates a "cardinal constitutional command" and "is always demeaning" to "free and independent" people, *Janus*, 138 S. Ct. at 2464, it triggers strict scrutiny anywhere.

To Student Association, viewpoint neutrality cures the compelled speech. Student Ass'n Br., Doc. 41-8, at 18 (citing *Southworth*, 529 U.S. at 233). But Defendants' policies are not viewpoint neutral. *See infra* Argument II.C.2.b. And the viewpoint neutrality solution applies only to compelled subsidies in student fee fora. *Janus*, 138 S. Ct. at 2464–65 (applying exacting scrutiny to compelled union subsidies, without assessing viewpoint neutrality). But Defendants' policies do not just compel subsidies; they actually merge groups, something *Southworth* never addressed.

An elementary school classroom is a nonpublic forum, especially during instructional time. *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 U.S. 617, 627 (2d Cir. 2005). But when educators compelled school children to recite the Pledge of Allegiance, this violated the "fixed star in our constitutional constellation" with no analysis of whether it was reasonable or viewpoint neutral. *Barnette*, 319 U.S. at 642. *Barnette* condemned this effort to "compel [students] to utter what is not in [their] mind[s]," *id.* at 634, even after noting the K–12 teachers' "important, delicate, and highly discretionary functions." *Id.* at 637; *DeJohn*, 537 F.3d at 315–16 (noting universities have "*less leeway* in regulating student speech [and association] than … public elementary or high schools").

Similarly, license plates are government speech. *New Hope*, 966 F.3d at 173 (citing *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015)). But forcing a citizen to display one containing the state's motto is compelled speech,

*Wooley v. Maynard*, 430 U.S. 705, 715 (1977), subject to strict scrutiny, *id.* at 716–17.

As Plaintiffs have pleaded facts—which must be taken as true, *Hawkins*, 2023 WL 5019602, at *1 n.2—demonstrating compelled speech, Defendants' policies are subject to strict scrutiny, which they flunk. *See infra* Argument II.E.

### C. Plaintiffs pleaded plausible content and viewpoint discrimination claims, as well as freedom of assembly claims.

Student Association is correct that the forum at issue is a limited public forum,[9] Univ. Mot. to Dismiss Resp., Doc. 42, at 4–5, and that Plaintiffs' freedom of assembly claim is subject to the same test as speech in this forum. Student Ass'n Br., Doc. 41-8, at 15 (citing *Johnson v. Perry*, 859 F.3d 156, 171–72 (2d Cir. 2017)).[10]

### 1. Defendants' policies must survive strict scrutiny as Plaintiffs' expression falls within the purpose of the forum.

Student Association insists Defendants' policies need only be reasonable and viewpoint neutral. Student Ass'n Br., Doc. 41-8 at 16–17. This standard only applies to speech outside the forum's scope; for "speech that falls within the designated category for which the forum has been opened," "strict scrutiny'" applies. *Tyler v. City of Kingston*, 74 F.4th 57, 61–62 (2d Cir. 2023) (cleaned up). The Complaint states Plaintiffs' expression falls within the forum. Univ. Mot. to Dismiss Resp., Doc. 42, at 10–11. Thus, strict scrutiny applies, and these policies flunk it. *See infra* Argument II.E.

### 2. Defendants' policies flunk the most lenient standards for a limited public forum.

#### a. Defendants' policies are not viewpoint- (or content-) neutral and were applied in a viewpoint-based way.

While Defendants' policies must be viewpoint neutral, *Tyler*, 74 F.4th at 61,

---

[9]   That said, the "campus of a public university, *at least for its students*, possesses many of the characteristics of a public forum." *Widmar*, 454 U.S. at 267 n.5. Thus, federal courts consistently rule that the open, outdoor areas of campus are at least designated public fora for students. *E.g.*, *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 116 (5th Cir. 1992); *Justice for All v. Faulkner*, 410 F.3d 760, 769 (5th Cir. 2005); *OSU Student All. v. Ray*, 699 F.3d 1053, 1062 (9th Cir. 2012).

[10]   *Johnson* dealt only with free speech and assembly claims, not association.

especially in a student-fee forum, *Southworth*, 529 U.S. at 234, Plaintiffs detailed how the Complaint states facts showing they are viewpoint-based and were enforced in the same way. Univ. Mot. to Dismiss Resp., Doc. 42, at 11–14.[11]

Student Association insists the Legal Status Ban is viewpoint neutral because it applies to everyone. Student Ass'n Br., Doc. 41-8, at 17–18. That's general applicability, not viewpoint neutrality. The unbridled discretion inherent in this policy threatens all views and all student organizations. *Amidon v. Student Ass'n of State Univ. of N.Y. at Albany*, 508 F.3d 94, 104 (2d Cir. 2007) (noting how unbridled discretion allows "covert viewpoint discrimination" and promotes "self-censorship by timid speakers"). Student Association echoes the *Rosenberger* dissent's argument that the ban on funding religious groups was viewpoint neutral because all religions were treated the same. And the majority dismissed this. *Rosenberger*, 515 U.S. at 831–32 ("The dissent's declaration that the debate is not skewed so long as multiple voices are silenced is simply wrong; the debate is skewed in multiple ways.").

Next, Student Association claims a by-law that prohibits discrimination based on "political viewpoint" immunizes its policies from further scrutiny. Student Ass'n Br., Doc. 41-8, at 4, 17–18, 21. It says the Second Circuit blessed this approach. *Id.* at 21 (citing *Coll. Standard*, 610 F.3d at 33–35). Not so. In that case, the Second Circuit merely stated what the defendants did; it did not rule that such a statement, by itself, resolved all viewpoint discrimination claims. *Coll. Standard*, 610 F.3d at 34. It also observed that the plaintiffs, unlike those here, did "not challenge the new funding policy." *Id.* Three years earlier, the Second Circuit ruled that a "general requirement that funding decisions be viewpoint-neutral" was "insufficient" to demonstrate

---

[11]  These facts also demonstrate Plaintiffs plausibly pleaded content discrimination claims as viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829. Compelled speech is also content-based. *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988) ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech.").

viewpoint neutrality, as "the bare statement without meaningful protections is inadequate to honor [*Southworth's*] commands." *Amidon*, 508 F.3d at 104. This is particularly true here where the by-law prohibits discrimination on "political viewpoints," not ideological or other ones. Univ. Mot. to Dismiss Resp., Doc. 42, at 11–12.

Third, Student Association points to the factors in its Contracts Policy. Student Ass'n Br., Doc. 41-8, at 21–22. Thus, it implicitly concedes that all the other Legal Status Ban provisions the Complaint identifies as granting unbridled do so. The Complaint pleads facts showing Student Association has unbridled discretion:

1. *To let a student group affiliate with an off-campus entity*, for none of the factors it touts provide any guidance—let alone a comprehensive list of objective criteria—for deciding whether a specific club can affiliate with an outside organization, Compl., Doc. 37 ¶¶ 110–13, 264;

2. *To recognize a student group*, as no policy provides a comprehensive list of objective criteria student groups must meet to be recognized, *id.* ¶¶ 114–15, and no policy requires Student Association to recognize any club that meets all criteria for recognition, *id.* ¶¶ 262–63;

3. *To let a group conduct a fundraiser*, *id.* ¶¶ 143–47, 265;

4. *To allow a group to conduct a financial transaction*, as the factors Student Association touts provide no guidance as to whether to approve or deny a proposed financial transaction, *id.* ¶¶ 153–59, 173;

5. *To permit a group to retain its own property*, as all property it purchases with student fees remains a "property of … Student Association … on discretionary loan to for use of the club" and Student Association can reclaim that property if it determines—in its unbridled discretion—that the group is not using it "in a proper and justifiable manner," *id.* ¶¶ 177–80; and

6. *To let a group enter into a contract*, *id.* ¶¶ 148–52, 155–73, 265–66.

Of these six, Student Association challenges only the last. Yet, each of these areas of unbridled discretion is enough for Plaintiffs to have pleaded plausible claims.

What's more, the Second Circuit has already ruled that factors alone do not save a policy from unbridled discretion claims. "Just as written criteria alone do not ensure that an official's discretion is adequately 'bridled,'" the factors in the Contract policy do not show that Student Association's discretion is limited. *Amidon*, 508 F.3d at 104 (quoting *Beal v. Stern*, 184 F.3d 117, 126 n.6 (2d Cir. 1999)). As in *Amidon*, the Contracts Policy (*i.e.*, Compl. Ex. 8, Doc. 37-8) contains "criteria [that] are non-

exclusive." *Amidon*, 508 F.3d at 104. That is, nothing in this policy requires Student Association to approve all contracts that satisfy the written factors or that prohibits it from relying on other, unwritten factors. This creates "a disconcerting risk that [it] could camouflage its discriminatory [decisions] through post-hoc reliance on unspecified criteria." *Id.* Plus, some of the factors (*e.g.*, "All terms of each contract must be reasonable under the circumstances," Compl. Ex. 8, Doc. 37-8, at 1) "are too vague and pliable to effectively provide the constitutional protection of viewpoint neutrality required by *Southworth*." *Amidon*, 508 F.3d at 104. So whether Student Association is deciding whether to approve a contract, a financial transaction, or an affiliation request, the factors in this policy are "incapable of providing guidance." *Id.*

Fourth, Student Association defends the exceptions to its National Affiliation Ban. Student Ass'n Br., Doc. 41-8, at 22–23. Gone is its earlier insistence that general applicability (*i.e.*, applying to all groups) is the hallmark of viewpoint neutrality. *Id.* at 17–18. Now it insists its purpose behind these exceptions was noble. *Id.* at 22. Of course, this contradicts the facts stated in the Complaint, which detail how Student Association adopted this policy in response to Plaintiffs' expression and then automatically derecognized Young Americans for Freedom. Compl., Doc. 37-1, ¶¶ 71–86. And those facts must be taken as true here. *Hawkins*, 2023 WL 5019602, at *1 n.2. Ms. Paul-Odionhin's declaration should be ignored, *Taylor*, 2023 WL 1997040, at *1, but it merely shows that the National Affiliation Ban discriminated against multiple groups, compounding the effect of a policy that flouts over a half century of Supreme Court law. Univ. Mot. to Dismiss Resp., Doc. 42, at 8–10.

The Complaint details how Student Association gerrymandered the National Affiliation Ban, exempting at least four groups that address the same range of issues as Young Americans for Freedom. Compl., Doc. 37-1, ¶¶ 93–96. Student Association says these exceptions were limited to groups "engage[d] in inter-collegiate competition or functions that often require them to be part of an outside organization."

Student Ass'n Br., Doc. 41-8, at 22. But this requires Student Association to assess which groups are "required" to be part of outside organizations, which impermissibly involves the "appraisal of facts, the exercise of judgement, and the formation of an opinion." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). Yet the policy also exempts groups assigned to the "Academic, Engineering, or Sports Councils." Compl., Doc. 37, ¶ 94. And Student Association had no guidelines for assigning groups to councils. *Id.* ¶¶ 97–98. Hence, Plaintiffs plausibly pleaded that this National Affiliation Ban was viewpoint-based from its inception to its execution.

In addition, Student Association's purpose behind these exemptions is beside the point. This argument boils down to: "Trust us; we may interfere [and have discretion to interfere], but not *impermissibly*." *Dambrot v. Cent. Mich. Univ.*, 839 F. Supp. 477, 482 n.7 (E.D. Mich. 1993). This Court should not "entrust the guardianship of the First Amendment to the tender mercies of" Student Association and the University Defendants who gave that body a blank check. *Id.*; *United States v. Stevens*, 559 U.S. 460, 480 (2010) ("But the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). Plus, when it comes to viewpoint and content discrimination, the government's purpose or "lack of animus" is irrelevant; the effect of its actions is all that counts. *Reed v. Town of Gilbert*, 576 U.S. 155, 165–68 (2015).

Last, Student Association demands that Plaintiffs identify other speakers treated better than them. Student Ass'n Br., Doc. 48-1, at 23–25. But the Complaint pleads facts showing that Student Association automatically derecognized Young Americans for Freedom, while allowing at least four similar groups to remain recognized. Compl., Doc. 37, ¶¶ 81–86, 94–96. And it details how the Legal Status Ban is preventing Plaintiffs from accessing club funds, while other groups can still access their funds. *Id.* ¶¶ 128–37. Discovery may reveal more examples of disparate

treatment, but Student Association wrongly insists Plaintiffs' case should be dismissed because they don't know all the information in Student Association's archives.

*McCullen v. Coakley*, 573 U.S. 464 (2014), involved what a plaintiff must show at trial, not in the pleadings. *Id.* at 475 (noting two bench trials). *Tyler v. City of Kingston*, 593 F. Supp. 3d 27, 30 (N.D.N.Y. 2022), involved a sign ban, a manner regulation that changed the forum. That's a far cry from multiple layers of unbridled discretion. Nor does the Supreme Court require preferably treated comparators. *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 348, 393–94 (1993) (finding viewpoint discrimination after lower courts and defendants never suggested "a lecture or film about child rearing and family values would not be a [permitted] use"); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 108 (2001) (same, based on what "could" occur in the forum). And this has no impact on Plaintiffs' unbridled discretion claims. *Forsyth Cnty.*, 505 U.S. at 133 n.10 ("[T]he success of a facial challenge on the grounds that an ordinance delegates overly broad discretion … rests not on whether the administrator has exercised his discretion in a content- [or viewpoint-] based manner, but whether there is anything in the ordinance preventing him from doing so.").

In short, Plaintiffs plausibly pleaded that Defendants' policies are viewpoint-based, and thus, Student Association's motion should be denied.

### b. Defendants' policies are not reasonable given the speech-facilitating purposes of the forum.

Defendants' policies are not even "reasonable in light of the purposes served by the forum." *Cornelius v. NAACP Leg. Def. Fund*, 473 U.S. 788, 806 (1985). For the Complaint details how the purpose of Student Association's forum is to facilitate student expression, something that New York regulations confirm. Univ. Mot. to Dismiss Resp., Doc. 42, at 14–15. Student Association agrees. Student Ass'n Br., Doc. 41-8, at 18 (noting this forum "ensures that the opportunities for intellectual and social development through extracurricular activities are available to all students"). Plaintiffs

detailed how Defendants' policies are not reasonably related to this speech-facilitating purpose. Univ. Mot. to Dismiss Resp., Doc. 42, at 15–17.

Student Association cites its need to "ensure fiscal integrity and compliance with … policies, protect the student activity fee, and limit the risk of liability," saying this is "an adequate explanation." Student Ass'n Br., Doc. 41-8, at 19; *id.* at 22–23. Not at all. For these policies lack even a connection with their goals. Derecognizing groups because they affiliate with off-campus entities (and sponsor disliked events), Compl., Doc. 37, ¶¶ 71–86; subjecting these affiliations to unbridled discretion, *id.* ¶¶ 110–13; or requiring Student Association to sign up as the chapter of the off-campus group, Compl. Ex. 8, Doc. 37-8, at 2 § 6.07; Student Ass'n Br., Doc. 41-8 at 19, does nothing to ensure fiscal integrity, policy compliance, or policy awareness. Preventing groups from conducting fundraisers, holding cash, or owning property doesn't either. Nor does banning them from defending their civil rights.[12] Merging all groups into Student Association *increases* its risk of liability, as whenever any group acts foolishly, Student Association will be on the hook, as the only group with legal existence.

But to demonstrate reasonableness, Student Association must show, not that the policies are reasonably related to their stated goals (or *post hoc* rationalizations), but that they are reasonable "in light of the purposes served by the forum." *Cornelius*, 473 U.S. at 806. This it does not try to do. Reciting the policies' goals does not show they are consistent with facilitating speech. These mandates impede student speech and association, rather than facilitate it. Thus, they are unreasonable.

In short, as Defendants' policies are neither reasonable nor viewpoint neutral, they flunk even the lowest level of scrutiny in a limited public forum. Thus, Plaintiffs have pleaded plausible content and viewpoint discrimination claims.

---

[12]  Student Association wrongly asserts this is "largely academic" because officers can sue. Student Ass'n Br., Doc. 41-8, at 18 n.7. But the form it mandates that officers sign ends with: "I shall be responsible for my violation of this agreement." Compl. Ex. 5, Doc. 37-5, at 7. Thus, if an officer sues, he is exposing himself to discipline.

**D. Plaintiffs pleaded plausible unconstitutional conditions claims.**

Under the unconstitutional conditions doctrine, even if a person is not entitled to a particular benefit, the government "may not deny [it] to [him] on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The same justices indicated that this doctrine applies to student groups. *Healy*, 408 U.S. at 183 ("Freedom[s] … are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference.").

The Complaint details how Defendants' policies condition Young Americans for Freedom's recognition, Compl., Doc. 37, ¶¶ 107, 109, and access to its funds, *id.* ¶¶ 128–37, on Plaintiffs giving up (or subjecting to unbridled discretion) their rights to:

1. Affiliate with Young America's Foundation; *id.* ¶¶ 71–86, 110–13, 289–95;
2. To exist as an independent organization; *id.* ¶¶ 107, 109, 121–27, 293;
3. To raise and hold funds; *id.* ¶¶ 107, 109, 143–47, 265;
4. To enter into contracts; *id.* ¶¶ 107, 109, 148–52, 155–73, 265–66, 294–95;
5. To conduct financial transactions; *id.* ¶¶ 107, 109, 153–59, 173, 265;
6. To own the group's own property; *id.* ¶¶ 177–80; and
7. To defend their civil rights; *id.* ¶¶ 107, 109, 124–30.

Each of these establishes a plausible unconstitutional conditions doctrine claim.

Student Association points to subsidy cases. Student Ass'n Br., Doc. 41-8, at 20 (citing *Rust v. Sullivan*, 500 U.S. 173 (1991); *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 400 (1984)). But they don't apply to student fee fora. *Southworth* distinguished *Rust* as involving the government's ability to spend money "to advocate and defend its own policies," whereas the student fee system "springs from the initiative of the students" and does not involve university funds. *Southworth*, 529 U.S. at 229. Plus, Defendants' policies implicate much more than just student fees.

Student Association then reprises its general applicability argument (*but see supra* Argument II.C.2.a) before insisting Plaintiffs could seek recognition elsewhere. Yet this is the only forum that allocates student fees. Compl., Doc. 37, ¶ 64; Univ.

Mot. to Dismiss Resp., Doc. 42, at 5–6. Curiously, Student Association seeks to evade a claim that it requires student groups to give up benefits to get recognition by saying that Plaintiffs could get recognition elsewhere by giving up their ability to seek student fee funding. This just underscores the plausibility of Plaintiffs' claim.

### E. Defendants' policies fail strict scrutiny.

Strict scrutiny applies because Defendants' policies (1) burden association, *Slattery*, 61 F.4th at 287, 289–90; (2) compel speech, *Wooley*, 430 U.S. at 716–17; (3) restrict speech within the forum, *Tyler*, 74 F.4th at 61–62; and (4) discriminate on content and viewpoint, *Reed*, 576 U.S. at 171. So they must prove that each "furthers a compelling interest" and is "narrowly tailored to achieve [it]," *id.*, meaning there must be "no less restrictive means of achieving that end," *Slattery*, 61 F.4th at 289.

Student Association insists its policies protect the student fee, promote fiscal integrity, and ensure groups know and comply with policies. Student Ass'n Br., Doc. 41-8, at 18–19, 22–23. None of these interests are compelling. Nor has it shown that Plaintiffs' expression implicates them. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1881 (2021). Nor can they demonstrate that the *only* way to achieve these ends is to restrict or prohibit student groups from (1) affiliating with off-campus entities, (2) existing as independent groups, (3) raising and holding funds, (4) entering contracts, (5) conducting financial transactions, (6) owning property, and (7) defending their civil rights. They could, for example, just conduct more informational seminars about what their policies require and then punish violations when they arise.

### CONCLUSION

Both of Student Association's motions to dismiss should be denied. Plaintiffs have standing and their claims remain live, giving this Court jurisdiction. And the Complaint pleads facts—which must be taken as true here and construed in Plaintiffs' favor, *Hawkins*, 2023 WL 5019602, at *1 n.2— showing that Defendants' policies violate Plaintiffs' rights and flunk any level of constitutional scrutiny.

Respectfully submitted this 23rd day of February, 2024.

/s/ *Travis C. Barham*

DENIS A. KITCHEN
**DENIS A. KITCHEN, P.C.**
8899 Main Street
Williamsville, New York 14221
Telephone: (716) 631–5661
denis@kitchenlaw.com

TYSON C. LANGHOFER*
Virginia Bar No. 95204
JONATHAN CALEB DALTON*
Virginia Bar No. 83790
**ALLIANCE DEFENDING FREEDOM**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707–4655
Facsimile: (571) 707–4656
tlanghofer@ADFlegal.org
cdalton@ADFlegal.org

TRAVIS C. BARHAM*
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road N.E., Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
tbarham@ADFlegal.org

* Admitted *pro hac vice.*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, I electronically filed the foregoing using the CM/ECF system, which automatically sends an electronic notification with this filing to all attorneys of record.

Respectfully submitted this 23rd day of February, 2024.

*/s/ Travis C. Barham*

TRAVIS C. BARHAM*
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road N.E., Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
tbarham@ADFlegal.org

* Admitted *pro hac vice.*

*Attorney for Plaintiffs*

27