UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNIVERSITY AT BUFFALO
YOUNG AMERICANS FOR
FREEDOM; JUSTIN HILL; JACOB
CASSIDY; AND AMELIA SLUSARZ

                Plaintiff,

  vs.

UNIVERSITY AT BUFFALO
STUDENT ASSOCIATION INC.;
BRIAN HAMLUK in his official
capacity as the University at Buffalo
Vice President for Student Life;
TOMAS AGUIRRE in his official
capacity as the University at Buffalo
Dean of Students; and PHYLLIS
FLORO in her Official Capacity
as the University at Buffalo
Director of Student Engagement,

                Defendants.

1:23-CV-00480-LJV

Hon. Lawrence J. Vilardo

---

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANTS, BRIAN HAMLUK, TOMAS AGUIRRE,
and PHYLLIS FLORO'S MOTION TO DISMISS**

                LETITIA JAMES
                Attorney General of the State of New York
                Attorney for Defendants, BRIAN HAMLUK,
                TOMAS AGUIRRE, and PHYLLIS FLORO
                BY:

                s/ *Michael T. Feeley*
                MICHAEL T. FEELEY
                Assistant Attorney General of Counsel
                Main Place Tower, Suite 300
                350 Main Street
                Buffalo, New York   14202
                (716) 853-8400
                Michael.Feeley@ag.ny.gov

## Table of Contents

**Preliminary Statement**……………………………………………………………….5


**Argument**

    **Point I- PLAINTIFFS SUGGEST THIS COURT EXCLUDE CONSIDERATION OF DOCUMENTS ON WHICH THE COMPLAINT CLEARLY RELIES**………………………………..……………….8

    **Point II- PLAINTIFFS MAKE NO EFFORT TO EXPLAIN THEIR FAILURE TO SEEK RECOGNITION BY A UNIVERSITY RECOGNIZING AGENT OTHER THAN SA**…………………………………………..9

    **Point III - UB POLICY DOES NOT PERMIT SA TO ENGAGE IN VIEWPOINT DISCRIMINATION IN FUNDING DECISIONS INVOLVING MANDATORY STUDENT FEES**………………………..……………13

## **Table of Authorities**

**Cases**                                                                                                                      **Page(s)**

*Amidon v. Student Ass'n,* 508 F.3d 94 (2d Cir. 2007)……………………………………….7 - 8

*Board of Regents of the University of Wisconsin v. Southworth*,
529 U.S. 217 (2000)……………………………………………………………………...…7

*Brass v. Am. Film Techs., Inc*., 987 F. 2d 142, 150 (2d Cir. 1993)……………...……5

*Cortec Indus., Inc. v. Sum Holding L.P*., 949 F.2d 42, 47-48 (2d Cir. 1991),
cert. denied, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992)………………………...…….5

*Husain v. Springer*, 494 F. 3d 108 (2d Cir. 2007)……………………………….…8

*Papish v. Board of Curators of University of Missouri*,
410 U.S. 667 (1973)……………………………………………………………………...6

*Widmar v. Vincent*, 454 U.S. 263 (1981)……………………………………….……….6

**Statutes and Regulations**

   8   N.Y.C.R.R. 302.14……………………………………………………………….7

**Preliminary Statement**

Defendants, BRIAN HAMLUK, TOMAS AGUIRRE, and PHYLLIS FLORO, submit this Reply Memorandum of Law in further support of their Motion to Dismiss. For the reasons outlined below, the Complaint fails to state a cause of action since claims regarding the actions of State University of New York at Buffalo (hereinafter "UB") [1] employees acting in their official capacities are barred by sovereign immunity under the Eleventh Amendment and must be dismissed. Further, to the extent that Plaintiff's seek prospective relief under the doctrine of *Ex Parte Young* against the moving defendants in their official capacities, the Second Amended Verified Complaint fails to even state a cause of action for First Amendment violations in that plaintiffs have failed to set forth facts sufficient to support claims of violation of First Amendment Right to Expressive Association, First Amendment Right to Freedom of Speech, and First Amendment Right to Assembly and the Complaint must be dismissed on that basis.

## Argument

### POINT I

**PLAINTIFFS SUGGEST THIS COURT EXCLUDE CONSIDERATION OF DOCUMENTS ON WHICH THE COMPLAINT CLEARLY RELIES**

Plaintiffs urge this Court to exclude from its consideration the list of student organizations that have been recognized by "University Recognizing Agent[s]" other than SA. Ex. C. to Floro Declaration, Doc. 40-5. No basis for such a limitation exists. Plaintiffs clearly relied on a list of the Student Organizations and the University Recognizing Agent for each organization in drafting their complaint. Compl. paras. 93 – 96. If plaintiffs did not rely on a

---

[1] Short References to entities cited in the Memorandum of Law will be employed like fashion in this Reply Memorandum.

student organization recognition list how else could the plaintiffs aver that the policies of the SA, and not any other University Recognizing Agent, applied to the Economics Club, the Environmental Network Club, the Philosophy, Politics and Economics Club, and the Political Science Undergraduate Student Association.  *Id*.  Plaintiffs specifically allege that the National Affiliation Ban imposed by the SA exempted the clubs above and those clubs could only have been recognized by the SA if that were so.  *Id*.  Plaintiffs' very precise allegations concerning the SA policies to be applied to those clubs makes plain that plaintiffs, through accessing websites or other widely available student information, possessed and utilized a list of Recognized Student Organizations and the corresponding University Recognizing Agent that recognized each club in bringing suit herein.  Indeed, one might logically expect the Environmental Network Club to be recognized by the Department of Environment and Sustainability as was Alpha Kappa Chi, not the SA.  Compare Ex. C. to Floro Declaration, Doc. 40-5 to Compl. paras. 93 – 95.

In determining a motion under Fed. R. Civ. P. 12 (b)(6) in the Second Circuit:

> "consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or <u>to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit</u>."

*Brass v. Am. Film Techs., Inc*., 987 F. 2d 142, 150 (2d Cir. 1993)(emphasis added), citing *Cortec Indus., Inc. v. Sum Holding L.P*., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992).

In considering the list of University Recognizing Agents for Student Organizations recognized by other than the SA, this Court may rely upon and consider the same information and documents that the plaintiffs quite obviously utilized in drafting their complaint - a list of Student Organizations and the corresponding University Recognizing Agents.

## POINT II

## PLAINTIFFS MAKE NO EFFORT TO EXPLAIN THEIR FAILURE TO SEEK RECOGNITION BY A UNIVERSITY RECOGNIZING AGENT OTHER THAN SA

The State University of New York at Buffalo Student Club and Organization University-Wide Recognition Policy, Exhibit A to the Declaration of Phyllis Floro, Doc. 40-3, provides reasonable regulations for the operation and recognition of Recognized Student Organizations at UB. Compliance with these regulations permits access to the limited public forum of much of the University premises and facilities. *Papish v. Board of Curators of University of Missouri*, 410 U.S. 667, 670 (1973)

The list of entities other than SA that serve currently as a University Recognizing Agent is set forth at Exhibit C to the Declaration of Phyllis Floro, Doc. 40-5. Plaintiffs have not pleaded nor is it reasonable to conclude that an application to a "University Recognizing Agent" other than SA would be denied. Indeed, plaintiffs have pleaded no such efforts nor provided any reason to believe that such an application would be denied. Plaintiffs' complaint and responding memorandum of law continually elides lack of recognition by SA alone with a resultant lack of recognition by all "University Recognizing Agents," even by those to whom Plaintiffs have never applied. It is clear that there is great deal of difference between the two. Moreover, plaintiffs continue to analytically merge a lack of funding by student fees with a speech ban. This is also an oversimplification of applicable free speech principles.

Fundamentally, no free speech ban can be established until the plaintiffs have shown that efforts at recognition to participate in the limited public forum University-wide have either been fully denied or are entirely barred. A university may "exclude even First Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity of other

6

students to obtain an education." *Widmar v. Vincent*, 454 U.S. 263, 277 (1981).  The list of entities other than SA that serve currently as a University Recognizing Agent includes thirty-three (33) different Recognized Student Organizations that have a National Affiliation so there is clearly no National Affiliation ban that extends to those Student Organization that seek to be recognized by other than the SA on the State University of New York at Buffalo campus. Exhibit C to the Declaration of Phyllis Floro, Doc. 40-5.

## POINT III

### UB POLICY DOES NOT PERMIT SA TO ENGAGE IN VIEWPOINT DISCRIMINATION IN FUNDING DECISIONS INVOLVING MANDATORY STUDENT FEES

The SA Bylaws on file with UB expressly prohibit viewpoint discrimination in determining student activity funding.  (Exhibit B to Phyllis Floro Declaration, Section 7.04 (c)). Doc. 40-4. It is one of the methods by which UB complies with the regulations concerning Student Activity Fees as set forth in 8 N.Y.C.R.R. 302.14, and case law mandating viewpoint neutrality in the allocation of student activity fees at the college level.

Somewhat oddly, Plaintiffs also contend in opposition that this document, the SA Bylaws, Doc. 40-4, may not be considered by the Court when their earlier Amended Verified Complaint in this action appended the SA Bylaws to it, containing the exact same verbiage of the cited SA Bylaw, 7.04(c).  Doc. 21-4.  As set forth in Point I above, materials relied on by the plaintiffs and/or in plaintiffs' custody may be considered by the Court.  This Bylaw states clearly that "Funding decisions may not take into account the political viewpoints of clubs or their members." Doc. 21-4 and Doc. 40-4.

UB is not permitting *through its policies* a violation of the requirement of viewpoint neutrality for the distribution of mandatory student fees set forth in *Board of Regents of the*

*University of Wisconsin v. Southworth,* 529 U.S. 217, 232-33 (2000), and applied in *Amidon v. Student Ass'n,* 508 F.3d 94 (2d Cir. 2007)("A pool of student activity fees to fund private speech is a limited public forum to which forum principles apply….[t]here may be restrictions on speech in a limited public forum so long as they are viewpoint-neutral and reasonable in light of the forum's purpose, and do not serve as a façade for viewpoint discrimination" *id*., at 100 (citations omitted)).

> The Second Circuit has stated this principle succinctly when it observed that:
>> "as long as the availability of funds to student groups *is not restricted based on their viewpoint*, the college's administration of a mandatory student activity fee complies with neutrality requirement demanded by the First Amendment."

*Husain v. Springer*, 494 F. 3d 108, 130 (2d Cir. 2007)(italics in original) citing *Board of Regents v. Southworth*, supra, at 232-33 (2000).

Notably, the Second Circuit proceeded in *Amidon v. Student Ass'n*, supra, to hold that a referendum to be voted upon by the students was not sufficient to assure that the availability of funds to student groups was not restricted based on their viewpoint. The *Amidon* Court did not, however, dictate how such an allocation was to occur other than stating that it was to be viewpoint neutral. Thus, other than holding that a student referendum was not a viewpoint neutral allocation method for student fees, *Amidon* does not provide guidance in this case. No referendum is at issue here in the allocation of student fees.

In this case it is not the viewpoints of the plaintiffs that are preventing the allocation to the plaintiff group of funds raised by student activity fees but the structure of the plaintiff group. As administrators acting in their official capacity, the moving defendants already have on file from SA *a policy* expressly prohibiting the viewpoint discrimination that plaintiffs claim as the basis for this action. Thus, since it is contended that the only relief sought against these moving

8

defendants in this official capacity claim is a policy that is viewpoint neutral, plaintiffs already have the relief they seek.  As a consequence, the Complaint should be dismissed as against the moving defendants.

## CONCLUSION

Defendants, BRIAN HAMLUK, TOMAS AGUIIRRE, and PHYLLIS FLORO, ask that the Court dismiss the action for all the reasons stated herein and in the previous submissions on this motion.

Dated: Buffalo, New York
March 13, 2024

**LETITIA JAMES**
Attorney General of the State of New York
Attorney for Defendants, BRIAN HAMLUK,
TOMAS AGUIRRE, and PHYLLIS FLORO

BY:
 s/ *Michael T. Feeley*
MICHAEL T. FEELEY
Assistant Attorney General of Counsel
Main Place Tower, Suite 300
350 Main Street
Buffalo, New York   14202
(716) 853-8400
Michael.Feeley@ag.ny.gov