UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNIVERSITY AT BUFFALO YOUNG AMERICANS
FOR FREEDOM, *et al.*,

                Plaintiffs,

  v.                                            Civil No.: 1:23-cv-00480-LJV

UNIVERSITY AT BUFFALO STUDENT
ASSOCIATION INC., *et al.*,

                Defendants.         ORAL ARGUMENT REQUESTED

---

**DEFENDANT UNIVERSITY AT BUFFALO STUDENT ASSOCIATION INC.'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>ITS MOTION TO DISMISS THE SECOND AMENDED VERIFIED COMPLAINT</u>**

 

**HODGSON RUSS LLP**
*Attorneys for Defendant University at Buffalo
Student Association Inc.*
Aaron M. Saykin
Ryan K. Cummings
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
Telephone:  716.856.4000

**TABLE OF CONTENTS**

POINT I.    ALL CLAIMS INVOLVING THE REPEALED POLICY
            SHOULD BE DISMISSED ................................................................................. 1

    A.   The Repealed Policy Involving National Organizations is Not "in Effect". ........... 1

    B.   Plaintiffs Have Not Been Harmed by the Repealed Policy. ................................. 2

    C.   The Repealed Policy was Constitutional. ............................................................ 2

POINT II.   PLAINTIFFS SUFFERED NO HARM
            FROM OTHER CITED POLICIES ................................................................... 3

POINT III.  UBYAF'S CONTRACT IS INCORPORATED
            INTO THE COMPLAINT ................................................................................. 3

POINT IV.   THE REMAINING CLAIMS SHOULD BE DISMISSED ............................. 4

    A.   Strict Scrutiny Does Not Apply to Any of Plaintiffs' Claims. .............................. 4

    B.   The Challenged Policies are Constitutional on Their Face. .................................. 8

        1.   The policies are viewpoint neutral and reasonable.. ................................... 8

        2.   There is no unbridled discretion.. ............................................................... 9

    C.   Plaintiffs Fail to State a Claim for an As-Applied Challenge. ............................. 10

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023)..................................................................................................6

*Amidon v. Student Ass'n of State Univ. of New York at Albany*,
    508 F.3d 94 (2d Cir. 2007).....................................................................................9, 10

*Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*,
    529 U.S. 217 (2000)........................................................................................5, 6, 7, 9

*Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*,
    458 U.S. 176 (1982)..................................................................................................9

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000)...............................................................................................6, 8

*Carter v. HealthPort Technologies, LLC*,
    822 F.3d 47 (2d Cir. 2016).......................................................................................2

*Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*,
    561 U.S. 661 (2010)........................................................................................5, 6, 7, 9

*Coll. Stnd. Mag. v. Student Ass'n of State Univ. of New York at Albany*,
    610 F.3d 33 (2d Cir. 2010).......................................................................................10

*FCC v. League of Women Voters of Calif.*,
    468 U.S. 364 (1984)..................................................................................................8

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
    565 U.S. 171 (2012)..................................................................................................7

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
    585 U.S. 878 (2018)..................................................................................................7

*Keeton v. Anderson-Wiley*,
    2012 WL 13163578 (S.D. Ga. June 22, 2012)..........................................................8

*Lehnert v. Ferris Faculty Assn.*,
    500 U.S. 507 (1991)..................................................................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................2

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ............................................................................................................8

*Sidik v. Royal Sovereign Int'l Inc.*,
    348 F. Supp. 3d 206 (E.D.N.Y. 2018) ................................................................................3

*Tyler v. City of Kingston*,
    74 F.4th 57 (2d Cir. 2023) ...................................................................................................8

POINT I.
ALL CLAIMS INVOLVING THE REPEALED POLICY SHOULD BE DISMISSED

A.     **The Repealed Policy Involving National Organizations is Not "in Effect".**

Plaintiffs repeatedly assert that the repealed SA Policy—for which they commenced this action—"remains in effect." Doc. 43 at *2, 4, 5, 6. This statement is demonstrably false. One month after Plaintiffs sued, SA repealed the portion of the New Club Recognition Policy prohibiting SA clubs from being a chapter or otherwise part of a national organization (SAC, Ex. 3, No. 7; Ex. 5), with the Policy otherwise reverting to its prior form.[1] SAC, Ex. 7. They simultaneously replaced the repealed portion (No. 7) with a vanilla requirement for all club officers to sign a form certifying that they have reviewed SA, University at Buffalo, and SUNY policies and will follow them. Id. at *6. The SA resolution repealing the portion of the Policy states that the replacement policy is a "different means" to carry out the goal of the repealed one. Id.

Yet Plaintiffs give the Court the false impression that the repealed portion of the Recognition Policy is ongoing. They conflate the replacement policy (which is literally just a certification form) with a years' old policy prohibiting SA clubs from existing as separate legal entities (the "Legal Status Provision"). Doc. 43 at *5-7. Plaintiffs baselessly call the replacement policy a "repeat" of the repealed policy and an "updated [national] affiliation ban." Id. at *7, 8. This, again, is false. **The Legal Status Provision has existed since 2015**; it is not the replacement policy. See Paul Odionhin Decl. (Doc. 41-1 ¶¶ 14-16), Ex. A; SAC., Ex. 6. Plaintiffs signed a Chapter Agreement in 2016 acknowledging this Provision. Doc. 41-4. After the repeal, the New Club Recognition Policy reverted to its prior form. There is no risk of future harm or "ban" under the replacement policy. It is just a certification form, added to the Club Officers Policy. Plaintiffs

---

[1]     Plaintiffs call this Policy a "National Affiliation Ban." But it did not prohibit affiliation. It prohibited clubs from being a chapter or otherwise part of a national organization.

1

do not challenge the substance of this requirement, as it applies equally to all clubs.

B. **Plaintiffs Have Not Been Harmed by the Repealed Policy.**

An injury in fact requires an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The SAC alleges only one harm from the repealed Policy based on its reference to "automatic derecognition" of clubs that do not comply. But SA has provided an affidavit confirming that SA never actually implemented the derecognition of UB YAF (or any affected club) and, critically, never took a single action or step to that effect, with the club not being deprived of a single benefit of recognized club status. Doc. 41-1 ¶¶ 37-44. **This is unrebutted proof that there was never any harm to Plaintiffs**. Plaintiffs respond with no proof of specific harm to controvert SA's evidence. *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016). They merely refer to their verified allegation in the SAC, hoping the Court will infer some unidentified harm based on the "automatic" language. That is conjecture, not concrete or particularized proof. And it does not contradict SA's proof, which explains what happened in detail. All portions of all claims regarding the repealed Policy should be dismissed.

C. **The Repealed Policy was Constitutional.**

Plaintiffs argue that the portions of their claims involving the repealed Policy are not moot because they seek a trial for nominal damages. But this does not relieve them of their obligations to establish injury-in-fact standing and to state a claim for a First Amendment violation. They have done neither. As noted in SA's opening brief, the repealed Policy did not discriminate against any viewpoint. It was viewpoint neutral. It would have equally affected a conservative club like UB YAF and, among other clubs, the College Democrats, Amnesty International, the Model U.N., and the UNICEF Unite Club. *See* Doc. 41-1 ¶ 29; SAC, Ex. 3, No. 7. The rationales for adopting it are plainly reasonable to ensure compliance with SA, University, and SUNY policies. *See* SAC

2

Ex. 5, at *5-6; *see also* Rosenberger, 515 U.S. at 829–30 (universities may exclude classes of speech, as opposed to viewpoints, to preserve limits of forum it created).

## POINT II.
## PLAINTIFFS SUFFERED NO HARM FROM OTHER CITED POLICIES

Plaintiffs argue SA's Contracts Policy gives it unbridled discretion when reviewing chapter agreements for clubs.  **But SA approved UB YAF's Chapter Agreement in 2016**.  Doc. 41-4.  It is still in effect.  SA also approved UB YAF's contract for speaker Michael Knowles.  Doc. 41-1 ¶¶ 23-24; SAC ¶¶ 163-71.  Plaintiffs have alleged no concrete and particularized harm (or any actual harm) from the Contracts Policy.  Plaintiffs also challenge the "new" version of the New Club Recognition Policy (which simply reverted to the old version, in place for years, when SA repealed the language prohibiting SA clubs from being a chapter or otherwise part of a national organization).  *Compare* SAC Ex. 3 *to* Ex. 7.  This policy applies to "**New Clubs,**" as its title indicates.  SAC, Ex. 7.  UB YAF is not a new club.  It was never harmed by the New Club Recognition Policy, and it identifies no harm.  The only policy from which Plaintiffs allege any actual harm is the Legal Status Provision but, as set forth below, the claims related to it fail anyway.

## POINT III.
## UBYAF'S CONTRACT IS INCORPORATED INTO THE COMPLAINT

UB YAF's Chapter Agreement with its national organization is integral to claims in the SAC and should be incorporated by reference.  *See* Sidik v. Royal Sovereign Int'l Inc., 348 F. Supp. 3d 206, 213 (E.D.N.Y. 2018) (incorporating contract as "specifically referenced in paragraph 73 of the complaint").  Plaintiffs are suing SA over, among other things, a (repealed) Policy requiring UB YAF's derecognition.  In their SAC, Plaintiffs plead that UB YAF has a Chapter Agreement with the National YAF, that this agreement (and UB YAF's refusal to disaffiliate with the National YAF) forms the basis for UB YAF's derecognition under the (repealed) Policy, and that without such an agreement UB YAF "cannot exist as the organization it was formed to be and that its

3

members want it to." SAC ¶¶ 82-85.

Plaintiffs misrepresent their pleaded allegations, claiming the SAC merely "refers to a contract signed in 2017"—suggesting the contract attached to SA's motion, executed December 12, 2016, may not be the correct one.  Doc. 43 at *9.  The SAC says nothing about a contract "**signed** in 2017".  It says:  "Since 2017, [UB YAF] has had a contract with Young America's Foundation to be a chapter of the national organization and to use [its] name."  SAC ¶¶ 82. Tellingly, Plaintiffs do not actually deny that this is the Chapter Agreement.

The Chapter Agreement **acknowledges UB YAF's consent to the Legal Status Policy that it challenges here.**  Doc. 41-4 (§ 10) ("clubs shall not be separate legal entities from SA"). Both UB YAF and its national organization sponsor agreed in writing to be bound by these terms. Id.  The contract refutes Plaintiffs' argument that the Legal Status Policy prohibits UB YAF's association with the national organization.  UB YAF has been able to operate as both a chapter of the national organization and a SA member club **for seven years**.  This refutes Plaintiffs' claim that the alleged burdens on their expressive associational rights are "severe," s*ee* Doc. 43 at *14-15, and that they currently exist as an organization distinct from SA.  See id. at *11.

## POINT IV.
## THE REMAINING CLAIMS SHOULD BE DISMISSED

A. <u>**Strict Scrutiny Does Not Apply to Any of Plaintiffs' Claims.**</u>

Plaintiffs ignore twenty-four years' worth of Supreme Court jurisprudence to argue that the policies at issue are subject to strict scrutiny.  The law is clear that strict scrutiny does not apply "in a public university setting" such as this, regardless of whether the claims are fashioned as involving expressive association (claims 1 and 2), compelled speech (3), viewpoint discrimination (4), freedom of assembly (5), or the unconstitutional conditions doctrine (6).  They are governed by the viewpoint neutrality test.  Plaintiffs cite no cases that call for a different result.

In 2000, the Supreme Court ruled against a group of public college students who challenged

4

the university's mandatory student activity fee policy as violating their First Amendment rights of free speech, free association, and free exercise because the policy required them "to pay fees which are subsidies for speech they find objectionable, even offensive," *i.e.*, the "expressive activities" of certain clubs. *Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 230 (2000). Critically, the Supreme Court overturned the decisions of both the district court and Seventh Circuit which had incorrectly "found our compelled speech precedents controlling," having improperly applied a higher burden under a "mixed strict-scrutiny/germaneness analysis" established in *Lehnert v. Ferris Faculty Assn.*, 500 U.S. 507 (1991). *Id.* at 227. Of the *Lehnert* test, the Court held: "the standard becomes all the more unmanageable in the public university setting. . . ." *Southworth*, 529 U.S. at 232. The Court instead held that the "[u]niversity must provide some protection to its students' First Amendment interests. . . The proper measure, and the principal standard of protection for objecting students, we conclude, is **the requirement of viewpoint neutrality** in the allocation of funding support." *Id.* at 233 (emphasis added).

In 2010, the Supreme Court decided *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661 (2010). There, the question was: "May a public law school condition its official recognition of a student group—and the attendant use of school funds and facilities—on the organization's agreement to open eligibility for membership and leadership to all students?" *Id.* at 668. A religious student club sued, arguing that this "all-comers" policy "**compelled** a group to include unwanted members" and impaired its First Amendment rights to "**free speech, expressive association**, and free exercise of religion." *Id.* at 682, 688 (emphasis added). Like Plaintiffs here, they argued for the application of strict scrutiny, fashioning their claims as "compelled" speech and association. The Court rejected their argument and upheld the restriction as Constitutional. It held that "our limited-public-forum precedents"—

5

*i.e.*, the restriction must be reasonable in light of the purposes of the forum and viewpoint-neutral— "supply the appropriate framework for assessing both [plaintiff's] speech and association rights." *Id.* at 680. It explained that "speech and expressive association rights are closely linked" and "[t]he same ground rules must govern both speech and association challenges in the limited-public-forum context, lest strict scrutiny trump a public university's ability to 'confin[e] a [speech] forum to the limited and legitimate purposes for which it was created.'" *Id.* at 680-681. The Court also noted that the religious club had the ability to "opt out" of recognized status. *Id.* at 682.

Both *Southworth* and *Martinez* are decidedly similar to the present case. *Martinez* involves a challenge to a policy allegedly compelling a recognized student club to associate with members holding differing viewpoints and limiting the club's right to free speech and expressive association. **It reads just like the SAC**, and the same analysis applies here. For more than two decades, the clear standard articulated in *Southworth*, and followed by *Martinez*, has guided the decision making of public colleges and universities, which are a unique limited public forum. Citing no cases that apply strict scrutiny to them—let alone cases like *Martinez* involving student club recognition status—Plaintiffs ask this Court to set aside clear Supreme Court precedent and apply cases involving different types of forums. They ask the Court to follow the precedent (applying strict scrutiny) in *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). But *Martinez* distinguishes *Dale*, specifically choosing not to apply it to the university and its student government because, inter alia, the student club could choose to "operate outside of" the registered club program. *Martinez*, 561 U.S. at 682. The same is true for UB YAF. If unhappy with SA's viewpoint-neutral Legal Status Policy (or any of the challenged policies), it can opt out as a SA-recognized club and seek recognition from another University "recognizing agent." *See* SAC, Ex. 1, p. 4.

They also cite *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), claiming that it "calls into

6

question *Martinez's* merging of analyses." Doc. 43 at *11. This case does no such thing. The only reference to *Martinez* is in the dissenting opinion, and it has nothing to do with the level of scrutiny applied to a public college or university. In fact, the case does not even involve a limited public forum. Plaintiffs similarly cite *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012), which is a workplace retaliation case involving a private employer and does not even remotely resemble the case here.

Similarly, the "severe burden" test does not apply to Plaintiffs' claims regarding expressive association (1 and 2). The Supreme Court in *Martinez* has already addressed the correct test for "intertwined rights" "in a public university setting." Moreover, the plaintiffs in *Martinez* made almost the same exact allegations that Plaintiffs make here—*i.e.*, they were unfairly forced to associate with members they do not desire and were denied benefits. Also, these burdens are not "severe." The Legal Status Provision has existed since 2015, and the UB YAF Chapter Agreement incorporated into the Complaint confirms that Plaintiffs have existed and operated as both a chapter of a national organization and a SA club for seven years without complaint, until recently.

Strict scrutiny likewise does not apply to Plaintiffs' claim for compelled speech (3). Plaintiffs rely on *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878 (2018). But *Janus* does not involve a public university setting or the analysis of its "intertwined rights." Instead, it involves statutorily required union dues, which the Court described as "compelled subsidization of private speech." The Supreme Court in *Southworth* already addressed the scrutiny level for such a claim in a public university setting, where the plaintiffs had challenged the mandatory student fee as funding "speech they find objectionable." The Court declined to apply a higher level of scrutiny because "the standard becomes all the more unmanageable in the public university setting." *Southworth*, 529 U.S. at 232. Thus, lower courts apply the viewpoint

7

neutrality and reasonableness standard to compelled speech claims in such a setting. *See, e.g.*, *Keeton v. Anderson-Wiley*, 2012 WL 13163578, at *17 (S.D. Ga. June 22, 2012). Plaintiffs conclude with *Tyler v. City of Kingston*, 74 F.4th 57, 62 (2d Cir. 2023), for the proposition that strict scrutiny applies to all "speech that falls within the designated category for which the forum has been opened." *Id.* But that case, like *Dale*, does not involve a public college or university or "intertwined rights" under the First Amendment.

Plaintiffs do not argue that strict scrutiny applies to their unconstitutional conditions doctrine claim (6). The doctrine permits restrictions on speech and associational rights if they are viewpoint neutral, reasonable, and provide for alternative channels of expression. *Rust v. Sullivan*, 500 U.S. 173, 196-97 (1991); *FCC v. League of Women Voters of Calif.*, 468 U.S. 364, 400 (1984).

**B.     The Challenged Policies are Constitutional on Their Face.**
    **1.     The policies are viewpoint neutral and reasonable.**

To paraphrase the Office of the Attorney General, it is the structure of the Plaintiffs' group, not its viewpoints, that are the cause of its gripes. *See* Doc. 40-1. The policies at issue do not consider viewpoints at all. They are viewpoint neutral. The Legal Status Provision, Contracts Policy, and New Club Recognition Policy (post-repeal) apply to all clubs equally. Only the repealed Policy (prohibiting clubs from being a chapter or otherwise part of a national organization) had exceptions, but those exceptions had *nothing* to do with viewpoint. They equally affected UB YAF and the College Democrats, Amnesty International, and the Model U.N.

The challenged policies are also reasonable in light of the purposes of the forum. They were established to ensure compliance **with the policies of the University that created the forum** and to protect and preserve the student fees that fund student club activities in the forum. SAC, Ex. 5 at 5-6. Plaintiffs' arguments boil down to a complaint that the SA policies are not reasonable **to them**, or that other policies would be more reasonable. That is not the test. "Cognizant that

8

judges lack the on-the-ground expertise and experience of school administrators, however, we have cautioned courts in various contexts to resist 'substitut[ing] their own notions of sound educational policy for those of the school authorities which they review.'" *Martinez*, 561 U.S. at 686 (quoting *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982)).  If the university policies in *Southworth* and *Martinez* are reasonable and Constitutional, then the policies here are too.  The latter case involved allegations of compelled association and speech under an "all comers" policy—under which clubs who disagreed with the policy could opt out of recognition.  The former involved similar allegations regarding the payment of a mandatory student fee.  Requiring clubs to be members of SA is reasonable, as is the Contracts Policy that flows from it.  Plaintiffs are not prohibited from associating, or compelled to associate, with anyone.  They are their own chapter of a national organization; they host their own speakers; and they are not required to publish speech of other, distinct clubs within the same legal entity.

 2. **There is no unbridled discretion.**

Plaintiffs purport to identify six pleaded "facts" showing that SA has unbridled discretion. Doc. 43 at *19.  Either they were not harmed by these factors, or they affect every club without exception. For No. 1, SA has not prohibited UB YAF from affiliating with its national organization (that policy was repealed and UB YAF remains a recognized SA club and a local chapter).  For No. 2, UB YAF is a recognized SA club (the policy that would have caused its de-recognition was repealed), and it is not a new club that was denied recognition (which is why the New Club Recognition Policy does not even apply to it).  There was no discretion in either policy; it was mandatory but for a handful of excepted clubs for a specific reason.  For Nos. 3-6, there also is no discretion; the policy applies to all SA clubs.  For No. 6 in particular, UB YAF's contract for speaker Michael Knowles was approved.  Plaintiffs have failed to identify a contract that was not.

SA does not have unbridled discretion under the Contracts Policy.  Citing *Amidon v.*

9

*Student Ass'n of State Univ. of New York at Albany*, 508 F.3d 94 (2d Cir. 2007), Plaintiffs argue that a prohibition against viewpoint discrimination in SA's By-laws, alone, does not insulate it from liability. But *Amidon* involved **a student referendum**, with no criteria, to advise the student association members of public opinion on funding amounts. The court noted that its decision turned on the unique qualities of such a referendum, which "injects a substantial risk of undetectable viewpoint discrimination into the allocation process." The court also clarified that it did not disagree with the holding in another circuit court, which found no unbridled discretion because the student association had a by-law prohibition against viewpoint discrimination, coupled with other protections. *See id.* at 104. Here, SA has a policy with specific criteria for contract approval (SAC, Ex. 8). This policy, when considered in conjunction with the By-law's prohibition on discrimination, is enough. *Coll. Stnd. Mag. v. Student Ass'n of State Univ. of New York at Albany*, 610 F.3d 33, 33-35 (2d Cir. 2010) (requirement for viewpoint neutrality within the regulations mooted claim of unbridled discretion).

C.      **Plaintiffs Fail to State a Claim for an As-Applied Challenge.**

As explained in SA's opening brief, Plaintiffs fail to state a claim for an as-applied challenge to the Legal Status, Contracts, and New Club Recognition Policies because they do not allege that they were treated differently in comparison to others under these policies. Doc 41-8 at *23-25. In response, Plaintiffs argue only that the Legal Status Provision "is preventing Plaintiffs from accessing club funds, while other groups can still access their funds." *See* Doc. 43 at *21. This is a sleight of hand. Plaintiffs do not allege that another similarly situated club, purporting to exist as a separate entity, has been treated differently. They are instead referring to clubs that do not exist as separate entities. This is not an allegation of disparate treatment.

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice.

Dated: March 14, 2024

         **HODGSON RUSS LLP**
         *Attorneys for Defendant University at Buffalo Student Association Inc.*

By: _____
       Aaron M. Saykin
       Ryan K. Cummings
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
Telephone:  716.856.4000
asaykin@hodgsonruss.com
rcummings@hodgsonruss.com

11