UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNIVERSITY AT BUFFALO YOUNG AMERICANS FOR FREEDOM; JUSTIN HILL; JACOB CASSIDY; AND AMELIA SLUSARZ<br><br>      Plaintiffs,<br><br> vs.<br><br>UNIVERSITY AT BUFFALO STUDENT ASSOCIATION INC.; BRIAN HAMLUK in his official capacity as the University at Buffalo Vice President for Student Life; TOMAS AGUIRRE in his official capacity as the University at Buffalo Dean of Students; and PHYLLIS FLORO in her Official Capacity as the University at Buffalo Director of Student Engagement,<br><br>      Defendants. | 1:23-CV-00480-LJV<br><br>Hon. Lawrence J. Vilardo |

---

**RESPONDING MEMORANDUM OF LAW
OF DEFENDANTS, BRIAN HAMLUK, TOMAS AGUIRRE, and PHYLLIS FLORO,
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

                LETITIA JAMES
                Attorney General of the State of New York
                Attorney for Defendants, BRIAN HAMLUK,
                TOMAS AGUIRRE, and PHYLLIS FLORO
                BY:

                s/ *Michael T. Feeley*
                MICHAEL T. FEELEY
                Assistant Attorney General of Counsel
                Main Place Tower, Suite 300
                350 Main Street
                Buffalo, New York  14202
                (716) 853-8400
                Michael.Feeley@ag.ny.gov

## Table of Contents

                                                                                                                            **Page**

**Preliminary Statement**……………………………………………………………5


**Argument**

        **Plaintiffs are not entitled to a
Preliminary Injunction**……………………………………...…………..7

        **A.   Plaintiffs have not shown a likelihood of success on the merits**……7

                **1.   Plaintiffs' attempt to apply strict scrutiny to almost
every interaction at issue in this case is not supported
by the facts or the law**……..……………………………….……..8

                **2.   Plaintiffs have made no factual showing that the
plaintiff student group is barred**……………………….....……..9

                **3.   The failure to allocate funds to a student organization** …...…..10
**does not constitute a direct ban on speech and is not
subject to strict scrutiny**

                **4.   UB policy does not permit SA to engage in viewpoint** ……..…12
**discrimination in funding decisions concerning
mandatory student fees**

        **B.   Plaintiffs have not made a showing of irreparable harm**….……….13

**Conclusion**……………………………………………………………………15

## **Table of Authorities**

**Cases**                                                                                                                                          **Page(s)**

*Amidon v. Student Ass'n,* 508 F.3d 94 (2d Cir. 2007)……………………………………10, 12

*Avalon Const. Corp. v. Kirch Holding Co.*, 256 N.Y. 137 (1931)………………..……..13

*Beal v. Stern*, 184 F.3d 117 (2d Cir. 1999)……………………………………………….7

*Bello v. Roswell Park Cancer Inst.*, 5 N.Y.3d 170 (2005)………………………..……13

*Blum v. Schlegel*, 18 F.3d 1016 (2d Cir. 1994)…………………………………………..7

*Board of Regents of the University of Wisconsin v. Southworth*,
529 U.S. 217 (2000)………………………………………………………………….....7

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30 (2d Cir. 1991)…………13

*Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003)…………14

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*
598 F.3d 35 (2d Cir. 2010)………………………………………………………………8

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)……………………8

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)…...…13

*Fighting Finest v. Bratton*, 95 F.3d 224 (2d Cir. 1996)………………………………….9

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112 (2d Cir. 2005)……………………….13

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*,
847 F.3d 133, 143 (2d Cir. 2016)………………………………………………………..7

Giatas v. Dimitri, 1998 U.S.App.Div. LEXIS 22353 (2d Cir. 1998),
cert. den., 525 U.S. 1026 (1998)…………………………………………………………8

Good News Club v. Milford Cent. Sch., 533 U.S. 98 (2001)……………………………8

*Husain v. Springer*, 494 F. 3d 108 (2d Cir. 2007)………………………………….....11

*Kamerling v. Massanari*, 295 F.3d 206 (2d Cir. 2002)………………………………….13

*Loudon v. Taxing Dist.*, 104 U.S. 711 (1881)……………………………………....14

**Cases**                                                                                                                    **Page(s)**

*Martin v. Warren*, 482 F. Supp. 3d 51 (W.D.N.Y. Aug. 26, 2020)……………………….7

*Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006)……………..……8

*Meinrath v. Singer Co.*, 87 F.R.D. 422 (S.D.N.Y. 1980)…………………….……………14

*New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)…………………………..7

*Nken v. Holder*, 556 U.S. 418, 435 (2009)……………………………………………...7

*Papish v. Board of Curators of University of Missouri*,
410 U.S. 667 (1973)……………………………………………………………………8, 9

*Polymer Tech. Corp. v. Mimran*, 37 F.3d 74 (2d Cir. 1994)………………………..…..13

*Rachlin & Co. v. Tra-Mar, Inc.*, 33 A.D.2d 370 (1st Dep't 1970)………………...…14

*Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983)……..…11

*Robar v. Vill. of Potsdam Bd. of Trs.*, 490 F. Supp. 3d 546
(N.D.N.Y. Sept. 21, 2020)………………………………………………………………8

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995)……….…..8

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)…………………………………………7

*Spang Industries, Inc. v. Aetna Casualty & Surety Co.*,
512 F.2d 365 (2d Cir. 1975)…………………………………………………………….14

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
60 F.3d 27, 34-35 (2d Cir. 1995)……………………………………………………….8

*Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*,
177 F. Supp. 3d 810 (S.D.N.Y. 2016)…………………………………………………13

*Widmar v. Vincent*, 454 U.S. 263 (1981)……………………………………...……….8

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)……………………………..7

**Statutes and Regulations**

   8   N.Y.C.R.R. 302.14………………………………………………………………12

**Preliminary Statement**

Defendants, BRIAN HAMLUK, TOMAS AGUIRRE, and PHYLLIS FLORO, submit this Responding Memorandum of Law in opposition to the motion of plaintiffs for a preliminary injunction. Doc. 46. For the reasons outlined below, and in support of the previously submitted motion of these answering defendants for dismissal (Docs. 40 and 44), which are incorporated herein by reference, the motion of the plaintiffs for a preliminary injunction wholly fails to demonstrate an entitlement to this extraordinary remedy. In particular, the submissions of plaintiffs on this motion fail to demonstrate that they will sustain irreparable harm and fail to demonstrate a likelihood of success on the merits.

Somewhat surprisingly, the submissions of plaintiffs completely ignore and never even mention the alternative methods by which Recognized Student Organizations may be recognized by "University Recognizing Agent[s]" other than co-defendant, UNIVERSITY AT BUFFALO STUDENT ASSOCIATION INC. (hereinafter "SA"), such as by faculty departments and other entities as set forth and discussed extensively in the Motion to Dismiss of Defendants, BRIAN HAMLUK, TOMAS AGUIRRE, and PHYLLIS FLORO. Docs. 40, and in particular, 40-2, 40-4, 40-5 and 40-6. Instead, plaintiffs simply conflate any recognition issues the plaintiff student group has confronted with SA as being with the State University of New York at Buffalo (hereinafter "UB") as a whole.

Nothing in the record on this motion or in the Second Amended Verified Complaint (hereinafter "Compl.")(Doc.37) suggests that the plaintiff student group would be unable to attain recognition from a University Recognizing Agent at UB aside from SA. Dozens of other Recognized Student Organizations have done so for this academic year. Docs. 40-2 and 40-5. About this prospective method by which the plaintiff student group could avail itself of the

opportunity to participate in the UB limited public forum and with which plaintiffs are clearly familiar from the earlier filings in this case, plaintiffs' submissions on their motion for a preliminary injunction simply say: nothing.

It is not these answering defendants who are barring the speech of the plaintiff student group but its failure to even attempt to seek recognition from a different University Recognizing Agent than SA.  Of course, recognition by SA comes with a potential for the allocation of student fees, which is the real issue in this case.

Indeed, plaintiffs' argument in support of a preliminary injunction rests largely on the erroneous proposition that a failure to subsidize its speech is tantamount to a direct restriction of that speech.[1]  The student fee spending scenarios alleged by plaintiffs to constitute a direct restriction of their speech are too attenuated factually to constitute any limit at all.  Further, when an economic injury such as the deprivation of access to sums of money is at issue, as here, it is rarely irreparable.  In New York, the legal remedy for a failure to provide money is the provision of that money after a trial at a later date, perhaps with interest.  Such relief is clearly available after trial in this Court, so the alleged loss is not irreparable.

Consequently, it is submitted respectfully that the motion for a preliminary injunction should be denied.

---

[1] Both the First Amendment and Voltaire's likely apocryphal maxim are wholly silent as to who should pay any broadcasting costs in connection with "your right to say it."

# Argument

**PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION**

For a movant to obtain a preliminary injunction, a party seeking a preliminary injunction, must establish the following elements: (1) that there is either a likelihood of success on the merits; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; (3) the balance of equities tip in their favor; and (4) that the public interest would not be disserved by the relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 847 F.3d 133, 143 (2d Cir. 2016); *Blum v. Schlegel*, 18 F.3d 1016 (2d Cir. 1994) (affirming the district court's denial of preliminary injunctive relief); *Salinger v. Colting*, 607 F.3d 68, 74 (2d Cir. 2010).

The final two factors of this analysis "the balance of equities and the public interest merge when…the Government is the opposing party." *Martin v. Warren*, 482 F. Supp. 3d 51, 68 (W.D.N.Y. Aug. 26, 2020); *citing Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winters* at 24. The *Winters* Court continued "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.*

### A. Plaintiff has not shown a likelihood of success on the merits

The initial step of inquiry requires that Plaintiffs demonstrate that they can show that there is a likelihood of success on the merits. The movant must show a "clear" or "substantial" likelihood of success on the merits. *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *citing Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999). A heightened 'substantial likelihood' standard is required when the requested injunction would provide the plaintiffs with all the relief

7

that is sought and could not be undone by a judgment favorable to defendants on the merits at trial. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.* 598 F.3d 35, n. 4 (2d Cir. 2010); *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34-35 (2d Cir. 1995)). That is precisely the circumstance presented here – if Plaintiffs' request for preliminary relief is granted.

When a party seeks a preliminary injunction alleging a First Amendment violation, the likelihood of success on the merits is a determinative factor. *Robar v. Vill. of Potsdam Bd. of Trs.*, 490 F. Supp. 3d 546, 573-574 (N.D.N.Y. Sept. 21, 2020); *quoting Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998). Because Plaintiff cannot establish a likelihood of success on the merits, this request for preliminary relief must be denied.

1. **Plaintiffs' attempt to apply strict scrutiny to almost every interaction at issue in this case is not supported by the facts or the law**

It is well established that a college or University may impose reasonable rules pertaining to the use of and access to its facilities by student groups. The State may be justified "in reserving [its forum] for certain groups or for the discussion of certain topics." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). A state's reservation of a limited public forum to certain groups will be upheld if the restriction is content-neutral and reasonable in light of the purpose of the forum. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001). Compliance with University regulations permits access by Recognized Student Organizations to the limited public forum of much of the UB premises and facilities. *Papish v. Board of Curators of University of Missouri*, 410 U.S. 667, 670 (1973). A university may "exclude even First Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity of other students to obtain an education." *Widmar v. Vincent*, 454

U.S. 263, 277 (1981). A Court may determine whether such rules are reasonable as a matter of law, despite the effect the application of the rule may have on free expression. *Giatas v. Dimitri*, 1998 U.S.App.Div. LEXIS 22353*4 (2d Cir. 1998), cert. den., 525 U.S. 1026 (1998). See, also, *Fighting Finest v. Bratton*, 95 F.3d 224 (2d Cir. 1996)("[w]here the speaker does not come within that purpose [of a limited public forum], however, the State is subject to only minimal constitutional scrutiny," *id*., at 229). . Thus, the application of a reasonable campus rule as to access to this limited public forum is entirely permissible when merely reasonable and content-neutral and is not subject to strict scrutiny analysis.

The State University of New York at Buffalo Student Club and Organization University-Wide Recognition Policy, Exhibit A to the Declaration of Phyllis Floro, Doc. 40-3, provides reasonable regulations for the operation and recognition of Recognized Student Organizations at UB. Compliance with these regulations permits access to the limited public forum of much of the University premises and facilities. *Papish v. Board of Curators of University of Missouri*, supra, at 670 (1973). In no way have plaintiffs established that the requirements imposed are unreasonable, nor that the they are "clearly" or "substantially" likely to prevail when the merits are examined.

**2. Plaintiffs have made no factual showing that the plaintiff student group is barred**

Fundamentally, no free speech ban can be established until the plaintiffs have shown that efforts at recognition to participate in the limited public forum University-wide have either been fully denied or are entirely barred. A university may "exclude even First Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity of other students to obtain an education." *Widmar v. Vincent*, 454 U.S. 263, 277 (1981). Plaintiffs make no effort to show that other avenues of recognition that do not involve SA have been attempted,

9

rejected or are futile.  Plaintiffs simply ignore that possibility.

The list of entities other than SA that serve currently as a University Recognizing Agent is set forth at Exhibit C to the Declaration of Phyllis Floro, Doc. 40-5.  Plaintiffs have not pleaded nor is it reasonable to conclude that an application to a "University Recognizing Agent" other than SA would be denied.  Indeed, plaintiffs have pleaded no such efforts nor provided any reason whatsoever to believe that such an application would be denied.  Plaintiffs' complaint and motion continually elide lack of recognition by SA alone with a resultant lack of recognition by all "University Recognizing Agents," even by those to whom Plaintiffs have never applied.  It is clear that there is great deal of difference between the two as numerous affiliates of National Organizations are recognized this academic year as student groups by "University Recognizing Agents" other than SA.  Plaintiffs have not demonstrated in any manner or fashion that plaintiff student group is barred by UB.

### 3. The failure to allocate funds to a student organization does not constitute a direct ban on speech and is not subject to strict scrutiny

Plaintiffs also merge the concept of financial support or a subsidy for broadcast costs of speech with a bar on speech throughout the complaint and motion.  In this way, plaintiffs wrap together the potential to obtain student fees for the plaintiff student group from SA with a non-existent ban on speech from the University itself, and then allege that strict scrutiny applies to virtually all of its activities.

The standard for the allocation of student fees is the requirement of viewpoint neutrality for the distribution of mandatory student fees set forth in *Board of Regents of the University of Wisconsin v. Southworth,* 529 U.S. 217, 232-33 (2000), and applied in *Amidon v. Student Ass'n,* 508 F.3d 94 (2d Cir. 2007)("A pool of student activity fees to fund private speech is a limited public forum to which forum principles apply….[t]here may be restrictions on speech in a

limited public forum so long as they are viewpoint-neutral and reasonable in light of the forum's purpose, and do not serve as a façade for viewpoint discrimination" *id*., at 100 (citations omitted)).  The standard applied is plainly not strict scrutiny.

    The Second Circuit has stated this principle succinctly when it observed that:

> "as long as the availability of funds to student groups *is not restricted based on their viewpoint*, the college's administration of a mandatory student activity fee complies with neutrality requirement demanded by the First Amendment."

*Husain v. Springer*, 494 F. 3d 108, 130 (2d Cir. 2007)(italics in original) citing *Board of Regents v. Southworth*, supra, at 232-33 (2000).

    In general, subsidy for speech or speech related activities is not required at all.  In *Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983), the Supreme Court held that the exclusion of lobbying organizations from the tax exemption for nonprofits did not violate the First Amendment. *Id*. at 549 (explaining that the "decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny"). The Court concluded that the tax exemption was a subsidy because it had "much the same effect as a cash grant." *Id*. at 544.

    The government does not violate a plaintiff's rights "by declining to subsidize its First Amendment activities." *Regan*, 461 U.S. at 548. "The [Supreme] Court has never held that Congress must grant a benefit . . . to a person who wishes to exercise a constitutional right." *Id*. at 545.  Plaintiffs have failed to articulate how the failure to subsidize their speech and any costs of further broadcasting that speech are required to be supported under the First Amendment.  As the foregoing and both discussions of the applicable standard in *Southworth* and *Amidon* demonstrate, student fee funding is most certainly not a determination subject to strict scrutiny.

### 4. UB policy does not permit SA to engage in viewpoint discrimination in funding decisions concerning mandatory student fees

The SA Bylaws on file with UB expressly prohibit viewpoint discrimination in determining student activity funding. (Exhibit B to Phyllis Floro Declaration, Section 7.04 (c)). Doc. 40-4. It is one of the methods by which UB complies with the regulations concerning Student Activity Fees as set forth in 8 N.Y.C.R.R. 302.14, and case law cited above mandating viewpoint neutrality in the allocation of student activity fees at the college level.

Plaintiffs' earlier filed Amended Verified Complaint in this action appended the SA Bylaws to it, containing the exact same verbiage of the cited SA Bylaw, 7.04(c). Doc. 21-4. This Bylaw states clearly that "Funding decisions may not take into account the political viewpoints of clubs or their members." Doc. 21-4 and Doc. 40-4.

Notably, the Second Circuit proceeded in *Amidon v. Student Ass'n*, supra, to hold that a referendum to be voted upon by the students was not sufficient to assure that the availability of funds to student groups was not restricted based on their viewpoint. The *Amidon* Court did not, however, dictate how such an allocation was to occur other than stating that it was to be viewpoint neutral. Thus, other than holding that a student referendum was not a viewpoint neutral allocation method for student fees, *Amidon* does not provide guidance in this case. No referendum is at issue here in the allocation of student fees.

In this case it is not the viewpoints of plaintiffs that are preventing the allocation to the plaintiff group of funds raised by student activity fees but the structure of the plaintiff group. As administrators acting in their official capacity, the moving defendants already have on file from SA *a policy* expressly prohibiting the viewpoint discrimination that plaintiffs claim as the basis for this action. Thus, since it is contended that the only relief sought against these moving defendants in this official capacity claim is a policy that is viewpoint neutral, plaintiffs already

have the relief they seek. As a consequence, the Preliminary Injunction motion should be denied as against these answering defendants.

### B. Plaintiffs have not made a showing of irreparable harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks omitted). Plaintiffs must demonstrate that their injury "is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley*, 559 F.3d at 118 (quotation marks omitted). And "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Faiveley*, 559 F.3d at 118; *Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*, 177 F. Supp. 3d 810, 812 (S.D.N.Y. 2016) ("As a general rule, irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial." (quotation marks omitted)).

It is axiomatic that when an alleged injury "could be adequately compensated with money damages," a preliminary injunction should not issue. *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 82 (2d Cir. 1994). Only injuries that are "actual and imminent," *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002), and "cannot be remedied at the end of trial if the movant were to prevail," *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) (emphasis omitted), may constitute irreparable harm. As a general matter, economic harm is rarely irreparable. *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991).

New York law holds that the recovery of money with interest, if interest is provided by statute, is the standard remedy for sums wrongfully withheld. *Avalon Const. Corp. v. Kirch Holding Co.*, 256 N.Y. 137 (1931); *Bello v. Roswell Park Cancer Inst.*, 5 N.Y.3d 170, 172-174

(2005); *Rachlin & Co. V. Tra-Mar, Inc*., 33 A.D.2d 370, 374 (1st Dep't 1970), and *Meinrath v. Singer Co*., 87 F.R.D. 422, 426 (S.D.N.Y. 1980), citing *Loudon v. Taxing Dis*t., 104 U.S. 711, 774 (1881).[2]  Plaintiffs make no showing that an award of money will not make them whole.

Plaintiffs' claim of irreparable harm appears to be based on a presumption that every attenuated alleged infringement of a First Amendment right necessarily is irreparable. But, "[the Second Circuit] ha[s] not consistently presumed irreparable harm in cases involving allegations of the abridgement of First Amendment rights." *Bronx Household of Faith v. Bd. of Educ*., 331 F.3d 342, 349 (2d Cir. 2003).  "Where a plaintiff alleges injury from a rule or regulation that *directly* limits speech, the irreparable nature of the harm may be presumed." *Id*. (emphasis added). But where "a plaintiff alleges injury from [an action] that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of [First Amendment] rights." *Id*. at 350.

Plaintiffs argue essentially that the plaintiff student group now has less money to engage in broadcast expenditures than which it employed to support its speech in prior years.  Plaintiffs do not argue that speech has been *directly* prevented.  Indeed, plaintiffs concede that nothing has been done to interdict their status as a recognized student organization this academic year aside from the denial of funding for their speech by SA.  Doc. 46-3, paras. 13-14.

As a consequence, there is no demonstrable causal link between plaintiffs' alleged denial of free speech and any denial of funding for that speech.  The alleged relationship between student funding of the plaintiff student group and free speech is simply too attenuated to support a claim of irreparable harm.  Plaintiffs are not required to be paid the broadcast costs for the

---

[2] Certain, and rare, actions on contract with "special circumstances" may also include consequential damages. *Spang Industries, Inc. v. Aetna Casualty & Surety Co*., 512  F.2d 365 (2d Cir. 1975)

plaintiff student group and the injunction will not result in any change of recognized student group status as that is evidently not being called into question by SA. Moreover, plaintiffs have offered no explanation, nor do they even mention the opportunity to pursue other available avenues of recognition at UB for the plaintiff student group, as discussed above at Point (A)(2). Thus, there is no basis to find that plaintiffs will suffer irreparable harm in the absence of a preliminary injunction.

## CONCLUSION

Defendants, BRIAN HAMLUK, TOMAS AGUIIRRE, and PHYLLIS FLORO, ask that the Court deny the motion of plaintiffs for a preliminary injunction for all the reasons stated herein.

Dated: Buffalo, New York
April 10, 2024

**LETITIA JAMES**
Attorney General of the State of New York
Attorney for Defendants, BRIAN HAMLUK,
TOMAS AGUIRRE, and PHYLLIS FLORO

BY:
s/ *Michael T. Feeley*
MICHAEL T. FEELEY
Assistant Attorney General of Counsel
Main Place Tower, Suite 300
350 Main Street
Buffalo, New York  14202
(716) 853-8400
Michael.Feeley@ag.ny.gov