**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNIVERSITY AT BUFFALO YOUNG AMERICANS FOR FREEDOM**; **JUSTIN HILL**; **JACOB CASSIDY**; and **AMELIA SLUSARZ**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**UNIVERSITY AT BUFFALO STUDENT ASSOCIATION, INC.**; **BRIAN HAMLUCK** in his official capacity as the University at Buffalo Vice President for Student Life; **TOMÁS AGUIRRE** in his official capacity as the University at Buffalo Interim Dean of Students; and **PHYLLIS FLORO** in her Official Capacity as the University at Buffalo Director of Student Engagement,<br><br>*Defendants*. | **CASE NO.: 1:23-cv-00480**<br><br>**THE HONORABLE<br>LAWRENCE J. VILARDO** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

Introduction .................................................................................................................. 1

Argument ...................................................................................................................... 3

I. Plaintiffs promptly sought preliminary injunctive relief. ................................ 3

II. Plaintiffs are likely to succeed in showing that Defendants are currently violating their constitutional rights. ................................................................ 5

    A. Defendants are violating Plaintiffs' right to freedom of association. .......... 6

        1. Defendants' policies are subject to strict scrutiny. ................................ 6

        2. Defendants' policies fail any standard of review because they are not viewpoint-neutral. ........................................................................ 7

        3. Defendants policies fail any standard of review because they are unreasonable. ....................................................................................... 8

    B. Defendants are unconstitutionally compelling Plaintiffs to speak. ............ 8

    C. Defendants are imposing unconstitutional conditions on Plaintiffs. .......... 9

III. Plaintiffs are suffering irreparable injury because of Defendants constitutional violations. ................................................................................... 9

IV. All other preliminary injunction factors favor the Plaintiffs. ......................... 10

Conclusion .................................................................................................................... 10

Certificate of Service ................................................................................................... 12

TABLE OF AUTHORITIES

**CASES**

*Board of Regents of the University of Wisconsin System v. Southworth,*
    529 U.S. 217 (2000) .......................................................................................... 9

*Boy Scouts of America v. Dale,*
    530 U.S. 640 (2000) .......................................................................................... 8

*Christian Legal Society v. Martinez,*
    561 U.S. 661 (2010) .......................................................................................... 9

*City of Lakewood v. Plain Dealer Publishing Company,*
    486 U.S. 750 (1988) .......................................................................................... 7

*Connection Distributing Company v. Reno,*
    154 F.3d 281 (6th Cir. 1998) ........................................................................... 10

*Cornelius v. NAACP Legal Defense & Education Fund, Inc.,*
    473 U.S. 7886 (1985) ........................................................................................ 8

*Hansen v. Town of Smithtown,*
    342 F. Supp. 3d 275 (E.D.N.Y. 2018) ............................................................... 6

*Hotel Employees & Restaurant Employees Union, Local 100 of New York v. City
    of New York Department of Parks & Recreation,*
    311 F.3d 534 (2d Cir. 2002) .............................................................................. 6

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston,*
    515 U.S. 557 (1995) .......................................................................................... 9

*National Council of Arab Americans v. City of New York,*
    331 F. Supp. 2d 258 (S.D.N.Y. 2004) ............................................................... 5

*New York Progress & Protection PAC v. Walsh,*
    733 F.3d 483, 488 (2d Cir. 2013) .................................................................... 10

*Robar v. Village of Potsdam Board of Trustees,*
    490 F. Supp. 3d 546 (N.D.N.Y. 2020) ............................................................. 10

*Rosenberger v. Rector & Visitors of University of Virginia,*
    515 U.S. 819 (1995) ........................................................................................ 10

*Shuttlesworth v. City of Birmingham,*
    394 U.S. 147 (1969) .......................................................................................... 8

*Travis v. Owego-Apalachin School District,*
    927 F.2d 688 (2d Cir. 1991) .............................................................................. 7

*Tyler v. City of Kingston,*
    74 F.4th 57 (2d Cir. 2023) ............................................................................ 6, 7

*Winters v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................. 3

**OTHER AUTHORITIES**

University at Buffalo, *Clubs, Activities, and Events,* https://bit.ly/4aFp3AK ............. 7

**INTRODUCTION**

Defendants are currently enforcing their policies to bar Young Americans for Freedom and its officers equal access to the benefits of their recognized student organization program because Plaintiffs refuse to relinquish their First Amendment right to "exist as separate entities." Student Ass'n Resp., Doc. 52, at 23.[1] Defendants' acts have already caused irreparable injury by stopping Young Americans for Freedom from engaging in constitutionally protected speech and other protected activities that, but for Defendants' application of their policies, Young Americans for Freedom would have pursued. *See* Pls.' Prelim. Inj. Br., Doc. 46-1, at 5 (detailing activities). No relief can restore Plaintiffs' lost opportunities to exercise their constitutional rights on campus and advance their group's mission. But their requested injunction will stop their ongoing injuries.

Defendants do not dispute that they are now applying the Legal Status Ban to stop Young Americans for Freedom from accessing the student activity fee funds already allocated to their group because of their refusal to sign an acknowledgment that they will comply with the policies and surrender their right to defend their First Amendment interests. They just argue that, because part of their unconstitutional policy has been in the Student Association's bylaws for years, Young Americans for Freedom can get no relief now. *See* Student Ass'n Resp., Doc. 52, at 6–7.

But that just ignores everything that has happened in this case. Young Americans for Freedom first brought suit (and quickly filed a preliminary injunction motion) to challenge Student Association's adoption of the National Affiliation Ban. The National Affiliation Ban was the resolution passed by Student Association that facially discriminated between different student groups, automatically derecognizing groups like Young Americans for Freedom on May 31, 2023. 2d. AM. V. Compl.

---

[1] All pinpoint citations to filed documents refer to the internal page numbering or bates-stamp number (if such exist), not the ECF page number.

1

("Compl."), Doc. 37, ¶ 81. *See also* Compl. Ex. 4, Doc. 37-4, at 1. Student Association approved this resolution to target Young Americans for Freedom's affiliation with Young America's Foundation, which was instrumental in bringing Michael Knowles to campus. Defendants' responses completely omit the fact that Student Association President Paul-Odionhin said of the National Affiliation Ban, "We all know why we're doing this"—admitting its discriminatory character. Compl., Doc. 37, at ¶¶ 76–77.

After being automatically derecognized on May 31, Young Americans for Freedom filed suit. After they did so, Student Association repealed the policy, but also took two actions demonstrating that Plaintiffs are entitled to preliminary relief. First, they did not simply repeal the National Affiliation Ban; they "*replaced* [it] with a different requirement." Compl. Ex. 5, Doc. 29-7, at 5 (emphasis added). That "different requirement" was that officers sign a form surrendering their clubs' associational rights and their ability to defend them (referred to throughout this litigation as the Legal Status Ban). *See id.* at 7.

Student Association emphasizes that these rules were already in the bylaws. But this is irrelevant because Student Association was not enforcing them. See 2d. Hill Decl., at ¶ 8–10. Young Americans for Freedom and other groups regularly enter agreements on their own behalf when, for example, setting up social media accounts. *Id.* at ¶ 10. And Student Association's own funding procedures cause groups to engage in financial activity on their own behalf. *Id.* at ¶ 9.

On top of this, Defendants' second act after Plaintiffs brought suit shows the true nature of this "different requirement." Compl. Ex. 5, Doc. 29-7, at 5. Their repeal of the National Affiliation Ban came after the "automatic" derecognition deadline (a deadline Student Association extended once while keeping its "automatic" character). *See* Compl. Exs. 4 & 5, Docs. 37-4 & 37-5. Ignoring this, they later said the policy was "repealed and deemed to never have taken effect." Compl. Ex. 5, Doc. 37-5, at 5. In other words, Defendants claim the power to ignore the plain wording of their policy

2

and ignore what actually occurred. *They* assert the unbridled discretion to make their policies mean whatever they want, regardless of the plain language.

*This* is why Young Americans for Freedom needs relief from the Legal Status Ban now. It was expressly adopted and enforced to replace a requirement that was designed to strip them of their right to associate with Young America's Foundation. It is now being used to accomplish a *de facto* derecognition: excluding Plaintiffs' from the forum because they are unwilling to surrender *all* of their associational freedoms. It has already caused them to lose irreplaceable opportunities to speak and advance their message. And it is being enforced against them by a body that claims unbridled discretion to decide what its policies mean and when they apply.

## ARGUMENT

Plaintiffs are entitled to a preliminary injunction if they can show (1) they are likely to succeed on the merits, (2) they are suffering irreparable injury, (3) the balance of equities tips in their favor, and (4) the injunction is in the public interest. *See Winters v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs did not unreasonably delay in seeking injunctive relief and all factors weigh in their favor. Thus, the Court should grant their motion.

### I.  Plaintiffs promptly sought preliminary injunctive relief.

Student Association spends much of its factual discussion and three pages of argument claiming that Young Americans for Freedom's motion should be denied because of undue delay in seeking relief. *See* Student Ass'n Resp., Doc. 52, at 1–9. Its discussion culminates: "And even after filing their complaint, amending twice, and repeated rejection of compromise offers, Plaintiffs did not seek preliminary relief. It was only after Defendants moved to dismiss their Second Amended Complaint—and fully briefed it—that Plaintiffs suddenly sought emergency relief." *Id.* at 9.

This is not true. Young Americans for Freedom filed a motion for preliminary injunction on June 26, 2023, soon after filing their initial Complaint. *See* Pls.' Prelim.

Inj. Mot., Doc. 15, at 1. To be sure, that motion addressed the National Affiliation Ban, which the Student Association repealed on July 3, 2023. *See* Compl., Doc. 37 ¶ 101. But the Student Association expressly "replaced" that Ban "with a different requirement" of enforcing the Legal Status Ban. *See* Compl. Ex. 5, Doc. 37-5, at 5.

The reason they "replaced" the National Affiliation Ban with a new requirement is that their old policies have admittedly *not* been consistently enforced. Student Association does *not* subject their "over 400 clubs" to oversight over "agreements of any nature and promises of any kind."[2] That would mean Student Association would be approving or denying thousands of minute decisions a year, including terms of service agreements for every free online platform each club elects to use. Student Association was not and is not doing this. *See* 2d. Hill Decl. at ¶ 10. As the resolution itself reports, "SA clubs and their officers and/or members sometimes violate SUNY, UB, and/or SA rules or policies because they are either unaware of them, or believe that they can disregard them." *Id.* Defendants cannot fault any club for this belief; they're to responsible for it. Student Association's nonenforcement of the Legal Status Ban and its own claim to be able pick and choose what its policies mean and when they apply is to blame.

Young Americans for Freedom sought preliminary injunctive relief when the Student Association adopted a policy—the National Affiliation Ban—as a direct response to their expression and association. *See* Compl., Doc. 37 ¶ 77 (reporting Student Association President's statement that "We all know why we're doing this" with reference to the National Affiliation Ban). When the Student Association repealed that policy and expressly replaced it with a new commitment to enforcing previously unenforced policies that are framed in expansive terms permitting them to accomplish the same viewpoint discrimination against the Plaintiffs' speech, Plaintiffs first

---

[2] *See* University at Buffalo, *Clubs, Activities, and Events*, https://bit.ly/4aFp3AK.

sought to reach an agreement without filing another motion. *See* Barham Decl., Doc. 46-4 ¶¶ 4–16. When that failed, Plaintiffs filed this motion.

As Defendants admit, any delay must also be accompanied by prejudice to Defendants. *See* Student Ass'n Resp., Doc. 52, at 8. Defendants cite *National Council of Arab Americans v. City of New York*, 331 F. Supp. 2d 258, 265 (S.D.N.Y. 2004), to try to demonstrate prejudice related to the timing of the briefing. *Id.* But in that case, the plaintiffs delayed their challenge to a permitting decision until "a mere 15 days before the proposed demonstration" and left Defendants "less than a week to respond to Plaintiffs' motion for preliminary injunction." *Nat'l Council*, 331 F. Supp. 2d at 264. While Young Americans for Freedom does need relief before the end of this semester, Pl.'s Br., Doc. 46-1, at 5, that's over six weeks after Plaintiffs filed this motion, and that only happened after they made multiple attempts to reach a compromise with Student Association. And Defendants had more than two weeks to respond according to the Court's initial scheduling order, then they received an extension. *See* Doc. 46 & 49.

Plaintiffs have promptly challenged the actions of all Defendants that threaten their rights. Defendants suffered no prejudice, so Plaintiff's motion should not be denied on account of any alleged undue delay.

## II. Plaintiffs are likely to succeed in showing that Defendants are currently violating their constitutional rights.

Defendants maintain an RSO program in which the full benefits of recognized organization status are only available to groups recognized by the Student Association and complying with all Student Association policies. *See* Compl., Doc. 37, at ¶¶ 61–66. But those policies are violating Young Americans for Freedom's right to freedom of speech and association, unconstitutionally compelling them to speak, and conditioning their equal access to the forum on their willingness to surrender their constitutional rights. Thus, Plaintiffs are likely to succeed in showing that all

Defendants are violating their constitutional rights.

### A. Defendants are violating Plaintiffs' right to freedom of association.

The parties agree that the RSO program is a limited public forum. *See* Pls.' Prelim. Inj. Br., Doc. 46-1, at 15; Student Ass'n Resp., Doc. 52, at 10; Univ. Defs.' Resp., Doc. 51, at 8. But strict scrutiny applies to restrictions on speech in a limited public forum that otherwise "falls within the designated category for which the forum has been opened." *Tyler v. City of Kingston*, 74 F.4th 57, 62 (2d Cir. 2023) (cleaned up). In addition, the Legal Status Ban fails any level of scrutiny because it is not viewpoint-neutral and it is unreasonable.

#### 1. Defendants' policies are subject to strict scrutiny.

In a limited public forum, the government is "'free to impose a blanket exclusion on certain types of speech, but once [they] allow[ ] expressive activities of a certain genre, [they] may not selectively deny access for other activities of that genre.'" *Id.* at 61 (quoting *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 545–46 (2d Cir. 2002)) (cleaned up). Defendants try to evade this rule in a single sentence by noting that *Tyler* did not "involve a public college or university or 'intertwined rights' under the First Amendment." Student Ass'n Resp., Doc. 52, at 23.

This misses the point. Defendants admit that "'the level of scrutiny to which the restriction is subjected depends on how the property is categorized as a forum for speech.'" *Id.* at 10 (quoting *Hansen v. Town of Smithtown*, 342 F. Supp. 3d 275, 288 (E.D.N.Y. 2018)) (cleaned up). The *forum* controls the standard. Defendants cite no authority for the claim that a limited public forum on campus is different from a limited public forum anywhere else. Once a limited public forum is created, the rules applicable to that type of forum apply. That includes the rule requiring strict scrutiny applied in *Tyler*, which itself relied on a school case. *See Tyler*, 74 F.4th at 61 (quoting *Travis v. Owego-Apalachin School Dist.*, 927 F.2d 688, 692 (2d Cir. 1991)).

6

Young Americans for Freedom's speech and association fall within the purposes of the forum. *See* Pls.' Prelim. Inj. Br., Doc. 46-1, at 15–16. Defendants' demands that Plaintiffs totally relinquish their private association, merge with the Student Association, and forego the right to defend their constitutional rights as a condition of accessing the forum are subject to strict scrutiny. *See Tyler*, 74 F.4th at 61–62. The Legal Status Ban fails this standard, so it is unconstitutional and should be enjoined. *See* Pls.' Prelim. Inj. Br., Doc. 46-1, at 12–13.

### 2. Defendants' policies fail any standard of review because they are not viewpoint-neutral.

Restrictions on expression within a limited public forum must be viewpoint-neutral. *Tyler*, 74 F.4th at 61. The Legal Status Ban fails for two reasons.

First, Defendants now insist that Young Americans for Freedom's officers sign onto the Legal Status Ban as a "replace[ment]" for the repealed National Affiliation Ban. *See* Compl. Ex. 5, Doc. 37-5, at 5. But the Legal Status Ban has not been consistently enforced. *See supra* Part I. The National Affiliation Ban itself was adopted in response to Plaintiffs' association and viewpoint. *See* Compl., Doc. 37 ¶¶ 75–77. The viewpoint-based National Affiliation Ban was "replaced with a different requirement"—subscription to the not enforced Legal Status Ban—to empower the Student Association to keep enforcing viewpoint-based restriction of association.

Second, the Legal Status Ban confers unbridled discretion on the Student Association. A grant of unbridled discretion contravenes the rule against viewpoint discrimination. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763–64 (1988). Defendants argue that there's no unbridled discretion because all groups are covered by the terms of the policies. *See* Student Ass'n Resp., Doc. 52, at 12. But the constitutional problem of unbridled discretion is not that an entire group is *subject* to the rules, it's that the entity that *implements* the rules gets to decide against whom, when and how to apply them. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147,

7

153 (1969). In addition to their inconsistent past application, Defendants' own arguments confirm that the Student Association claims the power to decide whether and when policies *they* designated as "automatic" actually come into effect. *See* Student Ass'n Mot. to Dismiss Br., Doc. 41-8, at 11. That all groups are at the mercy of Student Association's discretion compounds, rather than mitigates, the harm.

### 3. Defendants' policies fail any standard of review because they are unreasonable.

Any policy is unconstitutional if it is unreasonable in light of the forum's purpose. *See Cornelius v. NAACP Leg. Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). The Legal Status Ban undermines the purposes of the forum, for the reasons described in Plaintiffs' opening brief. *See* Pls.' Prelim. Inj. Br., Doc. 46-1, at 18–21.

The University's own policy also shows why the Legal Status Ban is unreasonable. The University's Recognition Policy provides, "*Each organization* and their University Recognizing Agent will be responsible for *its own financial, legal and contractual obligations*. The University assumes no responsibility for such actions." Compl. Ex. 1, Doc. 37-1, at 3 (emphasis added). The University's policy shows how to simultaneously respect constitutional interests and preserve the financial, legal, and contractual interests of all parties concerned: *keep organizations separate*. The Legal Status Ban's approach—force all groups to relinquish their legal identity and become a part of the Student Association—actually *undermines* the Student Association's interests in avoiding liabilities or being implicated in policy violations while simultaneously eviscerating every group's constitutional right to associate (or not associate). *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).

### B. Defendants are unconstitutionally compelling Plaintiffs to speak.

On compelled speech, Defendants ignore the nature of the Legal Status Ban and baldly assert, "[Plaintiffs] are not required to publish the speech of other, distinct clubs within the same legal entity." Student Ass'n Resp., Doc. 52, at 13. They do not

8

explain how it is possible for there to be "distinct clubs within the same legal entity" when the Legal Status Ban stops clubs from doing everything that makes them "distinct." And they miss the fact that compelled speech is not limited to cases that involve literal re-publication of another person's speech. Rather, the Supreme Court is clear that it involves *association* with other groups expressing *their own* message with which one prefers not to associate. *See Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Grp. of Bos.*, 515 U.S. 557, 574 (1995). The Legal Status Ban effectively conscripts every student club to march in the same parade, and that compulsion "is enough to invoke [Plaintiffs'] right[s] as a private speaker to shape [their] expression by speaking on one subject while remaining silent on another." *Id.*

### C. Defendants are imposing unconstitutional conditions on Plaintiffs.

Defendants claim to operate the sort of student organization program authorized by *Christian Legal Society v. Martinez*, 561 U.S. 661 (2010) and *Board of Regents of the University of Wisconsin System v. Southworth*, 529 U.S. 217 (2000). *See* Student Ass'n Resp., Doc. 52, at 12; Univ. Defs.' Resp., Doc. 51, at 11. But the Legal Status Ban goes far beyond either case by conditioning eligibility for access to the forum on surrendering *all* associational freedoms. To become *recognized* by the single recognizing agent empowered to grant full benefits of the program, one must forgo being a bona fide *organization*. This demand to surrender all associational freedoms is an unconstitutional condition. *See also* Pls.' Prelim. Inj. Br., Doc. 46-1, at 22–23.

### III. Plaintiffs are suffering irreparable injury because of Defendants constitutional violations.

Defendants claim there's no irreparable injury because Plaintiffs are not (necessarily) barred from recognition by any agent, but all they are suffering is denial of access to their allocated activity fee funds.[3] *See* Univ. Defs.' Resp., Doc. 51, at 9–10.

---

[3] Defendants admit they are denying access to the full range of student organization benefits but attribute this to the lack of an acknowledgment form rather than the

9

First, exclusion from student activity fee funds because of viewpoint or association is irreparable injury in and of itself. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). In *Rosenberger*, the Supreme Court held that denying funding was not just a financial harm, it was "exclusion of a class of speech" from a forum. *Id.* Here, Defendants use their policies to discriminate against Young Americans for Freedom's message and demand that they give up *all* associational rights in order to access the forum. Their current enforcement of their policies has already compelled Plaintiffs to forgo multiple opportunities for speaking—the very same type of opportunity that the Supreme Court held was a *constitutional* injury to deny in *Rosenberger*. *Id. See also* Pls.' Prelim. Inj. Br., Doc. 46-1, at 7–8.

### IV. All other preliminary injunction factors favor the Plaintiffs.

"The Government . . . 'does not have an interest in the enforcement of an unconstitutional law.'" *Robar v. Vill. of Potsdam Bd. of Trs.*, 490 F. Supp. 3d 546, 574 (N.D.N.Y. 2020) (quoting *New York Progress & Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)).). And "'it is always in the public interest' to protect First Amendment liberties." *Id.* (quoting *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)). Plaintiffs are likely to succeed on the merits of their First Amendment claim, the remaining factors favor entering the injunction.

### Conclusion

Defendants demand Plaintiffs surrender all of their associational rights as a condition of accessing a public forum and are applying their policies to cause ongoing, irreparable injury. Plaintiffs respectfully request that the Court grant their motion.

---

Legal Status Ban. Student Ass'n Opp., Doc. 52, at 5. This misses the point: Plaintiffs will sign an acknowledgment so long as they do not have to comply with the Legal Status Ban or otherwise give up their constitutional rights. They submitted a signed form with a statement to this effect. *See* Barham Decl., Doc. 46-4, at ¶ 4. Defendants' refusal to accept these forms and to agree to any other alternative is what drove Plaintiffs to file this motion. *See* Pls.' Prelim. Inj. Br., Doc. 46-1, at 5–7.

Respectfully submitted this 17th day of April, 2024.

| | |
|---|---|
| DENIS A. KITCHEN<br>**DENIS A. KITCHEN, P.C.**<br>8899 Main Street<br>Williamsville, New York 14221<br>Telephone: (716) 631–5661<br>denis@kitchenlaw.com | */s/ Travis C. Barham*<br>TYSON C. LANGHOFER\*<br>Virginia Bar No. 95204<br>JONATHAN CALEB DALTON\*<br>Virginia Bar No. 83790<br>**ALLIANCE DEFENDING FREEDOM**<br>44180 Riverside Parkway<br>Lansdowne, Virginia 20176<br>Telephone: (571) 707–4655<br>Facsimile: (571) 707–4656<br>tlanghofer@ADFlegal.org<br>cdalton@ADFlegal.org<br><br>TRAVIS C. BARHAM\*<br>Georgia Bar No. 753251<br>**ALLIANCE DEFENDING FREEDOM**<br>1000 Hurricane Shoals Road N.E., Ste. D-1100<br>Lawrenceville, Georgia 30043<br>Telephone: (770) 339–0774<br>Facsimile: (770) 339–6744<br>tbarham@ADFlegal.org<br><br>\* Admitted *pro hac vice.*<br><br>*Attorneys for Plaintiffs* |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2024, I electronically filed the foregoing using the CM/ECF system, which automatically sends an electronic notification with this filing to all attorneys of record.

Respectfully submitted this 17th day of April, 2024.

*/s/ Travis C. Barham*
TRAVIS C. BARHAM*
Georgia Bar No. 753251
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road N.E., Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
tbarham@ADFlegal.org

* Admitted *pro hac vice.*

*Attorney for Plaintiffs*